IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN CODY, *aka Bobby Thomson*, | ) | CASE NO. 1:18CV1787 |
| | ) | |
| Petitioner, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| ED SHELDON, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner John Cody ("Petitioner" or "Cody") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  Doc. 1.  Cody is detained at the Mansfield Correctional Institution, having been found guilty by a Cuyahoga County, Ohio, Court of Common Pleas jury on 12 counts, including engaging in a pattern of corrupt activity, complicity to theft, complicity to money laundering, tampering with records, and identity fraud.  *State v. Cody,* Case No. CR-12-565050-A (Cuyahoga Cty. Common Pleas Ct., filed December 17, 2013).  The trial court merged the applicable counts and sentenced Cody to an aggregate prison term of 27 years.[1]  Doc. 42-1, p. 318 (Exhibit 43).

On August 2, 2018, Cody filed his Petition for Writ of Habeas Corpus setting forth thirteen grounds for relief.  Doc. 1-1, pp. 9-15.  In July 2019, with leave of Court, Cody alleged an additional five grounds for relief.  Doc. 41.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth more fully below, Cody's grounds for relief are procedurally defaulted and/or fail on the merits.  Thus, the undersigned recommends that his Petition for Writ of Habeas Corpus (Doc. 1) be

---

[1] Cody was initially convicted of 23 counts; the convictions on eleven counts were vacated on appeal, along with the aggregate 12-month sentence for those eleven counts.  Doc. 42-1, p. 526 (Exhibit 59).

**DISMISSED** in part and **DENIED** in part.[2]

## I. Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).

The petitioner has the burden of rebutting that presumption by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

The following summary of underlying facts is taken from the opinion of the Cuyahoga

County Court of Appeals, Eighth Appellate District of Ohio:

> {¶ 2} This case arises from an investigation regarding the United States Naval Veteran's Association ("USNVA"), a charity organized and created by a person holding himself out to be Bobby Thompson. Through the investigation, it was discovered that the USNVA was a sham, fabricated by a person named John Donald Cody, who manipulated unsuspecting individuals across the United States to donate to this charity, unlawfully procuring millions of dollars.

> {¶ 3} In mid–2010, the state of Ohio began its investigation into the USNVA after a story was published in the St. Petersburg Times that the charity was fictitious. Through its investigation, the state revealed that Ohio residents had been solicited by various professional fundraisers contracted by USNVA to donate money to the USNVA. It was discovered that approximately $2 million was solicited on behalf of the USNVA from resident-donors in the state of Ohio.

> {¶ 4} As a result of the investigation, on October 13, 2010, Appellant was indicted in Cuyahoga C.P. No. CR–10–543025 on charges of engaging in a pattern of corrupt activity involving the USNVA, money laundering, and aggravated theft. In December 2010, another indictment was issued against Appellant in Cuyahoga C.P. No. CR–10–545577 on 22 additional charges, including engaging in a pattern of corrupt activity, aggravated theft, money laundering, tampering with records, and identity fraud.

> {¶ 5} A warrant was subsequently issued for Appellant's arrest. In April 2012, Appellant was finally apprehended in the state of Oregon. After Appellant was in custody in Ohio, a new indictment was issued against him in July 2012, Cuyahoga C.P. No. CR–12–565050. Appellant was charged with one count each of engaging in a pattern of corrupt activity pertaining to the criminal enterprise of the USNVA, complicity to commit theft, tampering with records, complicity to tamper with records, identity fraud (a felony of the second degree), and possessing criminal tools; and seven counts of complicity to commit money laundering, and 11 counts of identity fraud (felonies of the fifth degree). The

---

[2] The grounds in the petition that are procedurally defaulted results in a dismissal; the grounds in the petition that are addressed on the merits result in a denial.

previous indictments issued in Case Nos. CR–10–543025 and CR–10–545577 were dismissed and the surviving indictment in Case No. CR–12–565050 ultimately was tried before a jury that heard testimony from 47 witnesses and viewed over 200 exhibits.

{¶ 6} At the close of evidence, the court granted Appellant's renewed Crim.R. 29 motion for judgment of acquittal as it pertained to Count 24, possessing criminal tools. The court concluded that the state of Ohio lacked jurisdiction to pursue this charge because, although the criminal tools were found in Appellant's possession when he was arrested, they were located in the state of Oregon.

{¶ 7} The jury returned a guilty verdict on the 23 remaining counts. After considering merger, the trial court imposed a total sentence of 28 years in prison and ordered that Appellant spend every Veteran's Day in solitary confinement.

*State v. Cody*, 34 N.E.3d 189, 191 (Oh. Ct. App. 2015).

### A. State Trial Court Proceedings

Upon his arrest, Cody was arraigned, assigned counsel, and pleaded not guilty in the two cases against him. Doc. 42-1, pp. 39, 40 (Exhibits 5, 6). On July 12, 2012, the trial court referred Cody to the court's psychiatric clinic for an evaluation. Doc. 42-1, pp. 41-42 (Exhibit 7).

On July 25, 2012, Cody was indicted by the Cuyahoga County Grand Jury for a third time in a superseding indictment on 24 counts: one count of engaging in a pattern of corrupt activity (R.C. §2923.32(A)(1)) (Count 1); one count of complicity to theft (R.C. §2913.02(A)(3)) (Count 2); seven counts of complicity to money laundering (R.C. §1315.55(A)(1)) (Counts 3-9); one count of tampering with records (R.C. §2913.42(A)(2) (Count 10); one count of complicity to tampering with evidence (R.C. §2913.42(A)(2)) (Count 11); twelve counts of identity fraud (R.C. §2913.49(B) (Counts 12-23); and one count of possession of criminal tools (R.C. §2923.24) (Count 24). Doc. 42-1, pp. 45-66. Cody, through counsel, entered a plea of not guilty. Doc. 42-1, p. 67 (Exhibit 9).

On August 21, 2012, the parties stipulated to the competency reports returned in Cody's psychiatric evaluation. Doc. 42-1, p. 68 (Exhibit 11).

On August 24, 2012, Cody, through counsel, filed a motion to dismiss based on speedy trial delay pursuant to R.C. §2945.71. Doc. 42-1, pp. 69-75 (Exhibit 12). The trial court denied Cody's motion. Doc. 42-1, p. 146 (Exhibit 14).

On motion by the state, the trial court dismissed the two 2010 indictments and proceeded on the charges in Case No. CR-12-565050. Doc. 42-1, pp. 147-149 (Exhibits 15, 16).

On January 30, 2013, Cody filed a waiver of attorney and sought to represent himself. Doc. 42-1, p. 151 (Exhibit 18). After a hearing, the trial court permitted Cody to proceed pro se and appointed his current counsel as advisory counsel. Doc. 42-1, p. 152 (Exhibit 19); Doc. 43-1, pp. 125-145 (Tr. Vol. 1).[3]

On February 11, 2013, proceeding pro se, Cody filed a motion to dismiss Counts 13-24 on grounds of lack of jurisdiction, a motion to dismiss with prejudice for lack of effective counsel, and a "Motion to Dismiss: Internal Revenue Code: §501(c)(19)" on Counts 1, 2, and 3-9. Doc. 42-1, pp. 153, 162, 181 (Exhibits 20-22).[4] The trial court denied Cody's motion based on alleged lack of effective counsel. Doc. 42-1, p. 241 (Exhibit 27).

On February 22, 2013, Cody filed a motion to dismiss for tampering with evidence, arguing that the state failed to preserve the U.S. Navy Veterans Association website. Doc. 42-1, pp. 242-245 (Exhibit 28). He also filed a "Demand and Motion to Compel Subpoenas Sub Duces Tecum Re: ACS, CPS and CSI," requesting that the trial court issue an order compelling the state to produce the documents it received from subpoenas issued to the Professional Fundraisers Associated Community Services and Community Support Inc. Doc. 42-1, p. 268 (Exhibit 31).

---

[3] Cody filed many pretrial motions as a pro se litigant. *See State v. Cody*, 2017-Ohio-1543, ¶11, n. 4 (observing that Cody filed over 120 pro se motions); see also Doc. 42-4 (Cuyahoga County Court of Common Pleas docket, Case No. CR-12-565050). Respondent discussed only the relevant filings, which the undersigned includes in this section of background facts.

[4] On March 1, 2013, Cody filed a second motion to dismiss Counts 2 and 3-9. Doc. 42-1, p. 186 (Exhibit 23).

On August 26, 2013, a month before trial, Cody, on the record, relinquished his position as pro se counsel and his advisory counsel was assigned as counsel of record.  Doc. 42-1, p. 282 (Exhibit 34); Doc. 43-2, pp. 217-225 (Tr. Vol. 2).

On August 28, 2013, Cody's attorney filed a motion to continue trial, Doc. 42-1, p. 283, which the state opposed, Doc. 42-1, p. 285 (Exhibits 35, 36).  The trial court denied Cody's motion for a continuance.  Doc. 42-1, p. 288 (Exhibit 37).

On September 30, 2013, the state filed a motion to quash defense subpoenas issued to various current and former state elected officials, including Mike DeWine, Richard Cordray, John Boehner, Steve Chabot, Steve LaTourette, Deborah Pryce, Steve Stivers, Kirk Schuring, and Jim Petro.  Doc. 42-1, p. 289 (Exhibit 38).  The trial court granted the state's motion to quash.  Doc. 42-1, p. 304 (Exhibit 39).

Following trial, the jury found Cody guilty of Counts 1-23 as charged in the indictment and Count 24 (possession of criminal tools) was dismissed by the court.  Doc. 42-1, p. 305 (Exhibit 40).

On December 10, 2013, Cody, through counsel, filed a motion for a new trial, arguing that the jury improperly considered the fact that he did not testify.  Doc. 42-1, p. 307 (Exhibit 41).  On December 16, 2013, the trial found Cody's motion for new trial not well taken and denied it.  Doc. 43-22, pp. 4534-4535 (Tr. Vol. 22).  The court proceeded to sentencing and ordered Cody to serve ten years on Count 1; eight years on Count 2 to run consecutively with Count 1; 24 months on each of Counts 3-9, served concurrently to each other but consecutively to Counts 1 and 2; 24 months on Counts 10-11, served concurrently to each other but consecutively to Counts 1, 2 and 3-9; five years on Count 12, served consecutively with Counts 1, 2, 3-9 and 10-11; and 12 months on Counts 13-23, served concurrently to each other but consecutively to Counts 1, 2, 3-9, 10-11 and 12, for an aggregate sentence of 28 years in prison.

The court also ordered Cody to spend every Veteran's Day in solitary confinement.  Doc. 42-1, p. 318 (Exhibit 43).

### B. Direct Appeal

On December 23, 2013, Cody, through new counsel, appealed to the Eighth District Court of Appeals, Cuyahoga County, Ohio.  Doc. 42-1, p. 320 (Exhibit 44).  In his merit brief, he raised the following three assignments of error:

> 1. The trial court erred, and violated due process, when it entered convictions for eleven counts of identity fraud for which it did not have jurisdiction. (Fifth and Fourteenth Amendments, United States Constitution; Sections 10 and 16, Article I, Ohio Constitution. R.C.2901.11. December 17, 2013 Journal Entry of Sentence).
>
> 2. The trial court violated the Appellant's rights to due process and a fair trial when it allowed the admission of irrelevant and overly prejudicial testimony and documentary evidence referencing a potential future charitable organization Appellant was establishing. Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution; Evid.R. 402; 403 (Tr. at 1215-1217; 1965-1967; 2223-2243; 3841-3861; 3711-3716; 3832-3858; Exh. 26-1).
>
> 3. The trial court erred when it imposed a day of solitary confinement on each Veteran's Day (Tr. at 4550; Dec. 16, 2013 Journal Entry).

Doc. 42-1, p. 329 (Exhibit 45).  The state filed a brief in response conceding Cody's third assignment of error but opposing his first two assignments of error.  Doc. 42-1, pp. 354-381 (Exhibit 46).  The Ohio Court of Appeals ordered the parties to brief whether the trial court committed plain error in its instruction to the jury regarding the state's burden of proof on Counts 13-23 and the parties filed supplemental briefs as ordered.  Doc. 42-1, pp. 395-445 (Exhibits 48, 49, 50, 51).

On June 11, 2015, the Ohio Court of Appeals sustained Cody's first and third assignments of error and overruled his second assignment of error, thereby affirming in part, vacating in part, and remanding to the trial court for a new judgment entry.  Doc. 42-1, pp. 448-464 (Exhibit 52); *State v. Cody*, 34 N.E.3d 189 (Oh. Ct. App. 2015).

On June 19, 2015, Cody, pro se, appealed to the Ohio Supreme Court.  Doc. 42-1, p. 465

(Exhibit 53).  In his memorandum in support of jurisdiction, he set forth the following

propositions of law:

> 1. The Court of Appeals Lacked Jurisdiction to make any hypothetical ruling, or even to address the subject at all, on any Evid. R. 401-404(B) issues; and the fact evidence came in as relevant to dismissed Counts 13-24 [identity fraud (others) and Possession of Criminal Tools] required jurisdictional remand to the Common Pleas Court for retrial as to how that evidence was to come in, or if it should come in at all.

> 2. Where an Appellate Court creates a new Evid. R. 101, 105, 401-404(B) issue which stems from a preliminary holding or finding, a criminal defendant may retain a constitutional right to trial on such issue(s) by a common pleas court and jury, under the 6th and 14th Amendments to the United States Constitution, and Art. I, §§5 and 10 of the Ohio Constitution.

> 3. The Trial Court Lacked Subject Matter Jurisdiction to Proceed on CR-12-565050 A, At All, because the entire indictment was void at the moment of its presentment by the Grand Jury.

> 4. If the Appellate Court had jurisdiction to decide the hypothetical evidentiary issues it did in Section III of its Opinion, the Harmless Error Standard, not the Plain Error Standard, should have applied, and the case remanded for new trial.

> 4(A). Assuming the Appellate Court had authority to rule on the 403/404(B) issues raised, the introduction of that evidence amounted to character assassination of the Defendant unfairly prejudicing a trial against him, and therefore new trial was mandated.

Doc. 42-1, pp. 469-470 (Exhibit 54) (brackets in original).  On October 28, 2015, the Ohio

Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).

Doc. 42-1, p. 523 (Exhibit 56).

On January 6, 2016, Cody, pro se, filed a petition for writ of certiorari in the United

States Supreme Court.  Doc. 42-1, p. 524 (Exhibit 57).  On May 20, 2016, his petition was

denied.  Doc. 42-1, p. 525 (Exhibit 58).

**C. Remand from the Ohio Court of Appeals**

On December 7, 2015, pursuant to the Ohio Court of Appeals' decision, the trial court

issued a journal entry vacating Counts 13-23 and the concurrent 12-month aggregate sentence for

those counts.  Doc. 42-1, p. 526 (Exhibit 59).

### D. First State Petition for Post-Conviction Relief

On June 30, 2014, while his direct appeal was pending, Cody, pro se, filed a petition to

vacate or set aside judgment of conviction or sentence pursuant to R.C. §2953.21.  Doc. 42-1, p.

527 (Exhibit 60).  In his petition, he raised the following claims:

> 1. Ineffective Assistance of Defense Counsel Mr. Patituce – Denial of 6th/14th Amendment Rights, U.S. Const.; Sec. 10, Art. I, Ohio Const. Rights.
>
> 2. Lack of territorial jurisdiction and venue on Counts 3-9 (Money Laundering) and Counts 13-23 (Identity Fraud), as required by the federal and Ohio constitutional fair trial and due process mandates, and the Ohio jurisdictional/venue statutes (2901.11/2901.12) (5th/14th/6th Amend, U.S. Const; Sec 16, Art I, Sec. 5, Art. I, Ohio Const. – Right of Due Process, Right to Fair Trial.
>
> 3. Lack of State provided required discovery (off the record, outside the record) relating to Petitioner's Notice of [CIA] Defense: in violation of Brady v. Maryland and the federal and Ohio Constitutions' Due Process clauses, (5th/14th Amends., U.S. Const.; Sec 16, Art I, Ohio Const.), and the Right to Effective Counsel, Compulsory Process (6th Amend. U.S., Const.; Sec. 10, Art. I, Ohio Const.) and Right to a Fair Trial (6th Amend., U.S. Const.; Sec. 5, Art. I, Ohio Const.)
>
> 4. Denial of Due Process Rights (5th/Fourteenth Amends, U.S. Const.; Sec. 16, Art. I), Denial of Right to U.S. Const; 5 Art. I Ohio Excessive Fines/Cruel and Unusual Const. Sec. 9, Art. I Ohio Const.) conditions imposed on Defendant pre-trial while in custody by agents of the State dehors record, and trial counsel's ineffectiveness in not raising these issues sufficiently with the Court. Also claim's constitutional basis includes violations of 14th Amend., U.S. Const. and Ohio Const. prescriptions for Equal Protection of the Law.
>
> 5. Violation of Due Process Clauses (5th/14th Amendments, U.S. Const. and Ohio Const. prescriptions for Equal Protection of Amendments, U.S. Const., Sec. 16 Art. I, Ohio Const.), because the Attorney General's Office brought and maintained the prosecution for reasons forbidden by the U.S. and Ohio Constitutions, to wit: prosecutorial misconduct involving (a) Vindictive Prosecution, (b) Selective Prosecution, U.S. v. Armstrong, 517 U.S. 456, 463 (1996), U.S. v. Lupton, 2008 U.S. Dist. LEXIS 87217 (Ea. Dist. Wis.); prosecutorial misconduct (suppression of exculpatory Brady material….

Doc. 42-1, pp. 528-132 (Exhibit 60) (brackets in original).

The state filed a memorandum in opposition to the petition for post-conviction

relief/motion for summary judgment.  Doc. 42-1, p. 552 (Exhibit 61).  On October 16, 2014, the

trial court denied Cody's petition to vacate or set aside judgment of conviction or sentence.  Doc.
42-2, p. 187, and, on October 20, 2014, issued an order granting the state's motion for summary
judgment with supporting Findings of Fact and Conclusions of Law finding Cody's claims
meritless and barred by res judicata, Doc. 42-2, pp. 188-210 (Exhibit 65).

On November 18, 2014, Cody, pro se, appealed to the Ohio Court of Appeals, Eighth
District.  Doc. 42-2, p. 211 (Exhibit 66).  In his merit brief, Cody raised the following nine
assignments of error:

> 1. The trial court abused its discretion when it ruled, as to Claim No. 1, that Petitioner
> presented insufficient cognizable evidence and insufficient applicability of the evidence
> to warrant post-conviction relief, and to state a constitutional claim.
>
> 2. The trial court abused its discretion in denying Petition Claim No. 2 for dismissal of
> Counts 13-23, and 3-9 of the indictment on grounds of lack of jurisdiction.
>
> 3. The trial court abused its discretion in dismissing Petition Claim No. 3, holding
> Petitioner presented insufficient cognizable evidence and insufficient applicability of the
> evidence to warrant a hearing of postconviction relief, and failed to state a constitutional
> claim.
>
> 4. The trial court abused its discretion not holding a hearing on Petitioner's claims of
> discrimination, disproportionality and excessivity of sentence.
>
> 5. The trial court abused its discretion in not holding a hearing on Petitioner's claims of a
> vindictive, and politically selective prosecution.
>
> 6. The trial court abused its discretion in granting the State's motion for summary
> judgment.
>
> 7. The trial court abused its discretion in applying the State's lack of credibility standards
> to the case.
>
> 8. The trial court abused its discretion in making numerous fundamental erroneous
> conclusions of law which, whether considered separately claim-by-claim and issue-by-
> issue, or as a whole as cumulative error, permeating the entire judgment of dismissal,
> require remand for correction and re-decision.
>
> 9. The trial court abused its discretion in providing Appellant with no meaningful appeal
> given its adoption of the structuring of the PFF/CL.

Doc. 42-2, pp. 249-253 (Exhibit 67).  On July 9, 2015, the Ohio Court of Appeals overruled

Cody's assignments of error and affirmed the judgment of the trial court.  Doc. 42-2, pp. 430-446

(Exhibit 69); *State v. Cody*, 2015 WL 4133281 (Oh. Ct. App. July 9, 2015); 2105-Ohio-2764.

On July 22, 2015, Cody, pro se, filed a timely notice of appeal to the Ohio Supreme

Court.  Doc. 42-2, p. 447 (Exhibit 70).  In his memorandum in support of jurisdiction, he set

forth the following propositions of law:

> 1. Res Judicata did not apply to Appellant's never-before-made claims of lack of subject matter (territorial) jurisdiction on Counts 3-9 (money laundering) of the indictment and they should be dismissed for that lack. Neither res judicata nor mootness applied to Appellant's claims he should be granted a new trial related to lack of subject matter jurisdiction on Counts 13-24 (Identity Fraud; Possession of Criminal Tools) of the indictment; and Appellant should be granted new trial related to that lack.

> 2. Appellant was denied a meaningful appeal because he was not given the State's <u>Brady</u> materials to review for preparation.

> 3. A court may not intuit lack of a PCRP affidavit's credibility absent specific references to evidence in the record.

> 4. A Post Conviction Relief Petition ("PCRP") hearing should be had on an ineffective assistance of counsel ("I.A.C.") claim where the claim is different from any made, if any, on direct appeal and the trial court ("T.C.") does not cite to compelling and overwhelming evidence of trial counsel's competence from the record. Res judicata does not bar a PCRP claim where facts essential to the claim occurred <u>dehors</u> record.

> 5. A simultaneous PCRP grant of a summary dismissal under R.C. 2953.21(C), and a summary judgment under 2953.21(D), voids the judgment because the two are mutually inconsistent and logically impossible to be granted simultaneously, contrary to the PCRP statute and due process of law; and leaving the Appellant nothing meaningful to appeal from.

> 6. PCRP Claim 1 stated a cognizable claim because the Affidavit stated uncontradicted and essential <u>dehors</u> record evidence Appellant was assaulted by sheriff's deputies and placed in due-process-violative pre-trial holding, and inmate cells; that his counsel did not request a continuance because of his resultant physical condition so that he could testify at trial; and the decision's reasons given for Appellant's lack of credibility on this subject were not cognizable. PCRP Claim 5 stated a cognizable claim because the Affidavit stated essential <u>dehors</u> record evidence that the prosecuting Ohio Attorney General, Mick DeWine ("DeWine"), knew the United States Navy Veterans Association ("USNVA") was a CIA/Bush White House connected organization; that DeWine had asked for campaign contributions from Appellant and USNVA, and was dissatisfied with the results, and the essential evidence of an excessive sentence as a factor in a vindictive prosecution not occurring by definition, until date of sentence; and the decision's reasons

given for Appellant's lack of credibility on this subject were not cognizable. PCRP Claim
3 stated a cognizable claim because the Affidavit stated essential <u>dehors</u> record evidence
of DeWine's personal knowledge of USNVA's CIA and Bush White House connections;
and argued cogently therefrom (a) <u>Brady</u>-violative suppression by the State of
Appellant's CIA connection and (b) motivation therefor constituting prosecutorial
misconduct; and the Decision's reasons given for Appellant' lack of credibility on this
subject were not cognizable.

Doc. 42-3, pp. 10-14 (Exhibit 71).  On October 28, 2015, the Ohio Supreme Court declined to

accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  Doc. 42-3, p. 51 (Exhibit

73).

### E. Ohio App. Rule 26(B) Application to Reopen Direct Appeal

On June 30, 2015, Cody, pro se, filed a notice of intent to file an application to reopen his

direct appeal on grounds of ineffective assistance of appellate counsel pursuant to Oh.App.R.

26(B).  Doc. 42-3, p. 52 (Exhibit 74).  In his application, he alleged ineffective assistance of

appellate counsel and raised the following assignments of error:

1. Appellate Counsel failed to argue the State suppressed outcome determinative required
<u>Brady</u> disclosures, related due process violations, and the forced ineffectiveness of trial
counsel.

2. Appellate Counsel failed to argue it was error for the trial court to deny Defendant any
witnesses at trial in violation of the 5th Amendment's right to equal protection, the 6th
Amendment's right to compulsory process, and the 14th Amendment's right to due
process of law.

3. Appellate Counsel failed to argue automatic reversal was required because the
Defendant was forced to stand trial while incompetent, violating the standards of <u>Pate v.
Robinson</u>, 383 U.S. 375 (1966) and <u>State v. Were</u>, 94 Ohio St. 3d 173 (2002).

4. Appellate Counsel failed to argue that the trial court's order (JE 3.19.2013) placing the
Defendant, after he had been appointed counsel pro se, and through 12.16.2013, in
solitary "no contact" confinement in the Cuyahoga County jail pre-trial, and other court
and jail imposed conditions pertinent to that confinement, exacerbated the Defendant's
mental state of dysfunctional incompetence to stand trial, in violation of the
Constitution's prohibition against cruel and unusual punishment, because that placement
and those conditions met that standard and the trial court had a penchant for punishing
the defendant with solitary confinement [see, Sentencing order, JE 12.17.2013; this
Court's holding that portion of the sentence outside the boundaries of Ohio permissible
sentences, direct appeal, <u>State v. Thompson</u> (caption as retained by Ohio Supreme Court ,

2015-Ohio-4468), 2015-Ohio 2261]; Bell v. Wolfish, 441 U.S. 520 (1979). The trial court's solitary "no contact" order bore no stated rationale; it had no purpose and/or was overly punitive or was an exaggerated response to a fictional or perceived concern.

5. Appellate counsel failed to argue Defendant was denied his right to testify on his own behalf under the 6th and 14th Amendments U.S. Constitution, pursuant to his holdings of Sheens v. Haskis, 4 Fed. Appx. 236 (6th Cir., 2001), and/or to argue trial counsel's ineffectiveness related thereto.

6. Appellate Counsel failed to argue the requirements of Faretta v. California, 422 U.S. 806 (1975) and State v. Smith, 2012-Ohio-5420 (Cuyahoga cty., 2012) were not met in the appointment of Defendant as counsel pro se or, in the alternative, if Defendant were effectively appointed, he was forced involuntarily and unintelligently to relinquish that appointment in violation of due process.

7. Appellate counsel failed to argue that the trial court's failure to rule on pre-trial motions in CR-12-565050A denied the Defendant his right to a fair trial and due process of law, pursuant to U.S v. Ruiz, 2536 U.S. 622 (2002) et. al because the defendant prosecution when they make legitimate requests by motion sufficiently in advance of trial requesting ruling on fundamental questions as to how the trial is to proceed, and its parameters, are entitled to court guidance in preparation where one side of the case alone, took 6 weeks of evidence presentation.

8. Appellate counsel failed to argue Count 12 should be dismissed for insufficiency of the evidence, judgment contrary to the weight of the evidence and lack of subject matter jurisdiction under Stassheim v. Daily, 331 U.S. 280 (1911).

9. Appellate counsel failed to argue that the tried indictment should have been dismissed for denial of Quick and Speedy Trial, a violation of the Defendant's due process rights pursuant to the 6th and 14th Amendments, Article I §10 of the Ohio Constitution; State v. Sloane, 2009-Ohio App. LEXIS 1022 (Mahoning cty., 2009); and State v. Johnson, 2013-Ohio-856 (Butler cty., 2013). The mental competency examination ordered for CR-10-545577A did not carry over, and could not have carried over, into CR-12-565050A because the subject matter of the examination as to the charges was fundamentally different for the two cases, and because the trial court could not have intended for such a carryover into a case which did not exist at the time of the order.

10. Appellate counsel failed to argue that, if the trial court's order for a mental competency examination did not carry over from 10-545577A to 12- 565050-A, then Defendant's due process rights to a competency exam and R.C. § 2945.371(G) finding in 12-565050A were not met.

11. Appellate counsel failed to argue evidence of Defendant's protected medical and dental information at trial should have been stricken.

12. Appellate counsel failed to argue it was contrary to Ohio law on allied offenses not to run the sentences on Count 2 with Counts 3-9 as concurrent.

13. Appellate counsel failed to argue that a superfine and costs imposed on the Defendant were contrary to law and void per se.

14. Appellate counsel failed to argue that the trial court's sentence was contrary to Ohio law, and to the equal protection and due process clauses of both Constitutions because it failed to make a singular review of consistency and proportionality with the Co-Defendant's sentence. Alternatively, if the underlying argument is rejected, or not heard on Re-Opening causing Blanca Contreras' cases are not part of the record herein, thus causing Appellant to lose this claim, Appellate counsel, by not moving for inclusion, caused Appellant to suffer the prejudice described in the supporting Affidavit.

Doc. 42-3, pp. 56-64 (Exhibit 75) (brackets in original).  On April 21, 2017, the Ohio Court of

Appeals denied Cody's application to reopen as meritless.  Doc. 42-3, pp. 198-216 (Exhibit 77);

*State v. Cody*, 2017 WL 1507211 (Oh. Ct. App. April 21, 2017); 2017-Ohio-1543.

On May 24, 2017, Cody, pro se, appealed to the Ohio Supreme Court.  Doc. 42-3, p. 217

(Exhibit 78).  In his memorandum in support of jurisdiction, he set forth the following

propositions of law:

1. In violation of due process of law, the State suppressed exculpatory and outcome-determinative Brady disclosures relating to the Defendant's Bush White House, military intelligence and Central Intelligence Agency affiliation and the United States Navy Veterans Association we[b]site, www.Navyvets.org; and the trial court and the State suppressed defense evidence and forced the ineffectiveness of trial counsel in violation of both the due process and equal protection clauses of both the U.S. and Ohio Constitutions; and by the trial court's failure to provide the Defendant with sufficient, necessary and reasonable legal resources to mount a defense, or for appointed trial defense counsel to perform his necessary investigatory activities, in violation of both the due process and equal protection clauses of both the U.S. and Ohio Constitutions. Appellate Counsel failed to raise or argue the above in violation of counsel's Strickland responsibilities.

2. In violation of the 6th Amendment and 14th Amendment's right to due process of law (and of those rights pursuant to the Ohio Constitution), of the 5th Amendment's right to equal protection (and of those rights pursuant to the Ohio Constitution), and of the 6th Amendment's right to compulsory process (and of that right pursuant to the Ohio Constitution), the trial court denied the Defendant any defense witnesses at trial by failing to provide the Defendant with requested subpoenas sub duces tecum, by denying motions for all requested defense witnesses to be served with subpoenas, by quashing all defense expert witnesses; and Appellate Counsel failed to raise or argue the above in violation of his Strickland responsibilities.

13

3. Automatic reversal and new trial were required because the Defendant was forced to stand trial while legally incompetent, violating the due process and equal protection standards of <u>Pate v. Robinson</u>, 383 U.S. 375 (1966) and <u>State v. Were</u>, 94 Ohio St. 3d 173 (2002) et al.; Appellate Counsel failed to raise or argue the above in violation of his <u>Strickland</u> responsibilities. This proposition and its basis spill over into the following Proposition, and are also incorporated therein.

4. In violation of the Defendant's rights of due process of law under the 14th and 6th Amendments pursuant to <u>Gibson v. Washoe</u>, 290 F. 3d 1175, 1188 n. 9 (9th Cir., 2002) and <u>Alberti v. Klevenhagen</u>, 79 F. 2d 1220, 1224 (5th Cir., 1986), et al. (and of those rights pursuant to the Ohio Constitution); and/or in violation of his rights against cruel and unusual punishment under the 8th Amendment pursuant to <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979) et al. (and of those rights pursuant to the Ohio Constitution), the trial court's "no contacts" order [JE, 3.19.2013] placing the Defendant, after he had been appointed counsel pro se, in solitary confinement in the Cuyahoga County Jail pre-trial through 12.16.2013, and other court and jail imposed conditions pertinent to that confinement, contributed to the causation of the Defendant's mental state of dysfunctional incompetence to stand trial, to plea bargain and to relinquish his right to self-representation on 8.26.2013; contributorily caused his attempted suicide; blocked his fundamental right to access counsel of choice pursuant to <u>Sullivan v. Louisiana</u>, et al. and to access his courts pursuant to <u>Bounds v. Smith</u>, 430 U.S. 817 (1977) et al.; and to obtain discovery on his own behalf pursuant to <u>D'Ambrosio v. Bagley</u>, 527 F. 3d 489 (6th Cir., 2008) et al.; the order bore no stated rationale; it had no purpose and/or was overly punitive or was an exaggerated response to a fictional or perceived concern; and Appellate Counsel failed to raise or argue the above in violation of his <u>Strickland</u> responsibilities.

5. The Defendant was denied his right under the 6th and 14th Amendments to the U.S. Constitution (and his parallel rights under the Ohio Constitution) to testify on his own behalf at trial by the trial court and/or the forced or unforced ineffectiveness of trial counsel related thereto, pursuant to the holdings of <u>Sheens v. Haskis</u>, 4 Fed. Appx. 236 (6th Cir., 2001) et al.; and Appellate Counsel failed to raise or argue the above in violation of his <u>Strickland</u> responsibilities.

6. Automatic reversal is required because Defendant's due process and equal protection rights pursuant to the U.S. and Ohio Constitutions were violated because a satisfactory colloquy and examination to be pro se counsel pursuant to the requirements of <u>Faretta v. California</u>, 422 U.S. 806 (1975) and <u>State v. Smith</u>, 2012-Ohio-5420 (Cuyahoga cty., 2012) was not held prior to the appointment by the trial court of the Defendant as counsel pro se, or, in the alternative, if Defendant were effectively appointed counsel, he relinquished involuntarily and unintelligently that appointment on 8.26.2013 in violation of those same rights; and Appellate Counsel failed to raise or argue the above in violation of his <u>Strickland</u> responsibilities.

7. There was a lack of subject (territorial) jurisdiction, insufficiency of the evidence, and verdict contrary to the weight of the evidence, all in violation of the due process of law clauses of the U.S. and Ohio Constitutions on count 12, Identity Fraud on Bobby

Thompson of Washington State, because the Defendant never met any of the elements of the crime in Ohio other than the use of the generic name Bobby Thompson and that was insufficient to tie that act with the actual victim identified by the State; and Appellate Counsel failed to raise or argue the above in violation of his <u>Strickland</u> responsibilities.

8. Defendant was never given a constitutionally mandated (pursuant to the due process and equal protection clauses of the U.S. and Ohio Constitution) mental health and insanity examination as also required by R.C. 2945.371(G) in Defendant's case No. CR-12-565050-A because he was never given such an examination tailored, on the insanity issue, to the times, facts and specific charges of 12-565050-A, and no required finding was ever made; and Appellate Counsel failed to raise or argue the above in violation of his <u>Strickland</u> responsibilities.

9. In violation of Defendant's right of due process of law and of a fair trial under the U.S. and Ohio Constitutions, and of his rights pursuant to R.C. 2317.02 and 2317.02 (B)(5)(a), Defendant's dentist, Dr. Gary Steen, and Defendant's hair restorative surgeon, Dr. Francis Rieger, gave testimony as to Defendant's protected medical and dental information, the only evidence at trial as to how the Defendant, over a 12 year indictment period of stealing "hundreds of millions" of dollars, spent any of his ill-gotten gains on what might be perceived as personal inurement, and the testimony was not stricken; and Appellate Counsel failed to raise or argue the above in violation of his <u>Strickland</u> responsibilities.

10. It was contrary to Ohio law on allied offenses for the trial court to run the sentence on Count 2 (Agg. Theft/Complicity) with Counts 3-9 (Money Laundering) consecutively; Appellate Counsel failed to raise or argue the above in violation of his <u>Strickland</u> responsibilities.

11. The appellate court erred preliminarily to the Opinion's decision, in denying Cody's motion to supplement the record [JE: 8.4.2015; denied in pertinent part, [JE: 9.25.2015] to include the items of the State's <u>Brady</u> disclosures not in the record, and in the same proceeding, finding that Cody was merely speculating as to what was and was not in the disclosure (as the court's basis for denying Cody's constitutional claims for reversal found in his App. R. 26(B) application assignments: as to discovery of Cody's intelligence agency files (Proposition I, herein); and in accepting a state's "affirmation", without any record reference, to what the State included on disclosure on the highly exculpatory www.Navyvets.org site (Proposition I; Opinion, ¶ 9; and finding in the same proceeding (without record reference to the actual disclosure) that Cody's claims as to what was in the disclosure (which Cody saw only temporarily in his solitary confinement for reading on a computer monitor) were "incredible" (Opinion, ¶¶ 8, 9), i.e. not worthy of any belief. There were violations of substantive (and perhaps also procedural) due process under the 6th and 14th Amendments, and under the parallel provisions of the Ohio Constitution because, although occurring on a procedural motion, the onerous outcome against Cody on the application was substantively unfair; and Appellate Counsel failed to raise or argue the above in violation of his <u>Strickland</u> responsibilities.

12. The appellate court erred as a matter of procedural and substantive due process in

violation of the 6th and 14th Amendments to the U.S. Constitution, preliminarily to the Opinion's decision, in striking Cody's first application's affidavit (the Appellate Rules stated the affidavit was to contain the factual bases for the applicant's claims and could contain citations to authorities). These Cody made in a 503 pp. long affidavit. There was no authority in Ohio for striking such an affidavit, without which the appellate court lost jurisdiction, based on its length. New law was created uniquely, for Cody. Based upon Cody's hindsight, that, since his pre-trial (commencing around October, 2012) pro se representations of record of his "CIA and Bush White House affiliation-based-defenses" were being denied by the state, and the trial court was pre-trial making rulings cited in this memorandum having the effect of substantially denying Cody these defenses at trial, Cody had the foresight to realize this stonewall (suppressing these affiliations at-law) posture of the prosecution and trial court would continue throughout the trial proceeding, at minimum, Cody added to the first affidavit on the factual bases showing that affiliation substantially greater than he had theretofore. These factual bases were stricken, and all of Cody's other factual bases to establish these defenses were ignored by the appellate court in finding Cody's claims of CIA or Bush White House affiliations "incredible," as its basis for denying the application's assignment I (Referenced in Proposition I).

Doc. 42-3, pp. 219-229 (Exhibit 79) (brackets in original).  On July 26, 2017, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  Doc. 42-3, p. 276 (Exhibit 81).

### F. Delayed Post-Conviction Proceedings

On June 13, 2018, Cody filed a motion for leave to file a delayed motion for new trial. Doc. 42-3, p. 278 (Exhibit 83).  He argued that he was unavoidably prevented from discovering evidence of prosecutorial misconduct and evidence of an official document from the CIA indicating that he had a classified affiliation with it.  Doc. 42-3, p. 278.  He simultaneously filed a pleading titled "In Limine Motion for New Trial/Request for R.C. 2953.21 et seq. Post-Conviction Relief."  Doc. 42-3, p. 279.

On July 5, 2018, Cody filed a "Petition to Vacate or Set Aside Judgment of Conviction or Sentence (hereinafter "PCRP")" pursuant to R.C. 2953.21, again arguing that he was unavoidably prevented from discovering evidence disclosing his alleged CIA classified affiliation because of prosecutorial misconduct in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  Doc. 42-3, pp. 386-421 (Exhibit 87).  He also asserted a violation of *McCoy v.*

*Louisiana*, -- U.S. --, 138 S. Ct. 1500 (2018), arguing that his trial attorney interfered with his autonomous right to pursue his chosen "CIA defense" strategy.  Doc. 42-3, p. 419.

In orders issued on July 30, 2018, the trial court denied all three filings.  Doc. 42-3, pp. 491-492 (Exhibit 88).

On August 6, 2018, Cody filed a "Petition to Vacate Judgment of Conviction and Sentence made 12.16.2013 ("PCRP3")" alleging that his sentence was void because the trial court did not follow mandatory sentencing requirements under Ohio law.  Doc. 42-3, pp. 493-494 (Exhibit 89).  On August 14, 2018, the trial court denied Cody's petition.  Doc. 42-3, p. 542 (Exhibit 90).

On August 23, 24, and September 12, 2018, Cody appealed the trial court's rulings to the Ohio Court of Appeals, Eighth District.  Doc. 42-3, pp. 543, 550, 559 (Exhibit 91).  The Ohio Court of Appeals, *sua sponte*, consolidated his three appeals.  Doc. 42-3, p. 568 (Exhibit 92).  In his consolidated merits brief, he raised the following assignments of error:

> 1. It was error for the trial court not to conclude at law, on the facts and law presented to it, that it had no jurisdiction to make the 12.16.2013 oral "judgment of conviction and sentence" it did, in the courtroom.
>
> 2. It was error for the trial court not to conclude at law, on the facts and law presented to it, that it had no jurisdiction to make the 12.17.2013 written judgment journalized.
>
> 3. It was error for the trial court not to conclude at law that it had no jurisdiction to issue the entry of (re)sentence it made by journal entry on 12.7.2015 (a) with or (b) without the defendant being present.

Doc. 42-3, pp. 571, 585, 587-588, 590 (Exhibit 93).  In addition to these assignments of error, he separately enumerated the following "Segments":

> 1. Brady violations occurred in the denial to Cody at trial of exculpatory evidence showing, or tending to show, he had a covert classified intelligence affiliation with (a) the CIA; and/or the Bush 43 office of the president; Cody is therefore entitled to a new trial, or a vacation of the CR-12-565050-A judgment.
>
> 2. Fair trial violations occurred in the denial to Cody at trial of exculpatory evidence

17

showing, or tending to show, Cody had a covert, classified intelligence affiliation with (a) the CIA; and/or (b) the Bush 43 office of the president; Cody is therefore entitled to a new trial, or a vacation of the CR-12-565050-A judgment.

3. A denial of Cody's 1st Amendment right of access to the courts occurred in the denial to Cody at trial (and in all subsequent proceedings attaching his conviction) of exculpatory evidence showing, or tending to show, Cody had a covert, classified intelligence affiliation with (a) the CIA; and/or the Bush 43 office of the president; Cody is therefore entitled to a new trial, or a vacation of the CR-12-565050-A judgment.

4. A denial of Cody's 1st Amendment freedom of expression right, pursuant to <u>McCoy v. Louisiana</u> occurred in the denial to Cody at trial of exculpatory evidence showing or tending to show, Cody had a covert classified intelligence affiliation with (a) the CIA; and/or (b) the Bush 43 office of the president; Cody is therefore entitled to a new trial, or a vacation of the CR-12-565050-A judgment.

5. Denial of Cody's right to counsel and to the effective assistance of trial counsel and to the effective assistance of trial counsel (Patituce) for his defense occurred in the denial to Cody at trial of exculpatory evidence showing, or tending to show, Cody had a covert, classified intelligence affiliation with (a) the CIA; and/or (b) the Bush 43 office of the president; Cody is therefore entitled to a new trial, or a vacation of CR-12-565050-A judgment.

6. Prosecutorial misconduct occurred in the suppression of exculpatory evidence showing, or tending to show, Cody has a covert, classified intelligence affiliation with (a) the CIA; and/or (b) the Bush 43 office of the president; Cody is therefore entitled to a new trial, or a vacation of the CR-12-565050-A judgment.

7. Fair trial violation occurred at trial in the prosecutorial misconduct involving the suppression of exculpatory evidence showing, or tending to show, Cody had a covert, classified intelligence affiliation with (a) the CIA; and/or the Bush 43 office of the president; Cody is therefore entitled to a new trial, or a vacation of the CR-12-565050-A judgment.

8. Denial of Cody's 1st Amendment right of access to the courts occurred at trial (and in all subsequent proceedings attacking his conviction) in the prosecutorial misconduct involving suppression of exculpatory evidence showing, or tending to show, Cody had a covert, classified intelligence affiliation with (a) the CIA; and/or the Bush 43 office of the president; Cody is therefore entitled to a new trial, or a vacation of the CR-12-565050-A judgment.

9. Denial of Cody's 6th Amendment right to the assistance of counsel, and the effective assistance of counsel with his defense, occurred at trial in the prosecutorial misconduct involving the suppression of exculpatory evidence showing, or tending to show, Cody had a covert, classified intelligence affiliation with (a) the CIA; and/or (b) the Bush 43 office of the president; Cody is therefore entitled to a new trial, or a vacation of the CR-12-565050-A judgment.

10. Cody was denied at trial the effective assistance of counsel (Patituce) with his defense because Patituce failed to properly investigate and develop evidence showing or tending to show, Cody had a covert, classified intelligence affiliation with (a) the CIA; and/or the Bush 43 office of the president; Cody is therefore entitled to a new trial, or a vacation of the CR-12-565050-A judgment.

11. A McCoy v. Louisiana violation of Cody's autonomous right to a defense strategy he willed and wanted occurred in Patituce's denial of providing Cody that strategy, related to one or more of the violations alleged in claims (1)-(10), supra; Cody is therefore entitled to a new trial, or a vacation of CR-12-565050-A judgment.

Doc. 42-3, pp. 572-575 (Exhibit 93).

On July 11, 2019, the Ohio Court of Appeals issued its opinion.  Doc. 42-4, p. 73

(Exhibit 96).  Finding Cody's assignments of error difficult to decipher, the appellate court broke

down his arguments into these two assignments of error:

1. Cody argues that he was not properly informed of his sentence on Count 1, engaging in a pattern of corrupt activity.

2. Cody argues that there is "new evidence" that is both "material" and "outcome determinative" and he should be granted a new trial and postconviction relief.

Doc. 42-4, pp. 77-78 (Exhibit 96); *State v. Cody*, 2019 WL 3046584 (Oh. Ct. App. July 11,

2019); 2019-Ohio-2824, ¶15.  The Ohio Court of Appeals found that the first claim was barred

by res judicata and the second claim was untimely; overruled both assignments of error; and

affirmed the judgment of the trial court.  Doc. 42-4, pp. 78-85.  On August 19, 2019, Cody

appealed to the Ohio Supreme Court, which declined to accept jurisdiction pursuant to

S.Ct.Prac.R. 7.08(B)(4).  *See announcement*, 2019-Ohio-4211.

On April 10, 2019, Cody filed another petition to vacate or set aside judgment of

conviction or sentence to present a claim under a recent Supreme Court case *Timbs v. Indiana*.

Doc. 42-4, p. 86 (Exhibit 97).  He presented the following claim:

1. Statement of constitutional claim: The 12.17.2013 CR-12-565050-A trial judgment sentencing impositions of a fine of $6,000,000 +; court costs of approximately $300,000; and the seizure of cash assets of the defendant of $980,500 were each, separately (and as

also considered collectively), excessive in violation of the prohibition against excessive fines clause of the 8th Amendment to the United States Constitution.

Doc. 42-4, p. 88.  On April 15, 2019, the trial court denied Cody's petition for post-conviction

relief.  Doc. 42-4, p. 97 (Exhibit 98).

On August 16, 2019, Cody appealed to the Ohio Court of Appeals, requesting it accept

his late filing; the Ohio Court of Appeals accepted his appeal as timely and that appeal remains

pending at this time.[5]

### G. Federal Habeas Petition

On July 24, 2018, Cody, pro se, filed his Petition for a Writ of Habeas Corpus.  Doc. 1.

He listed the following grounds for relief:

**Ground One:** Where subject matter jurisdiction of the trial court was found not to exist on 12 out of 24 counts of Cody's indictment, the due process clauses and fair trial concepts of the United States Constitution entitled the defendant to new trial on the remaining convicted-upon counts without the jury considering evidence upon the dismissed counts, if at all, with the taint of a criminal conviction attached to each, and such consideration having taken place, not in the context of res gestae, but only in the context of relevance to criminal guilt as charged on those dismissed counts, on the ground that, under the circumstances of Cody's case, and defense he forwent involuntarily, (but in part) because of that consideration, he was unduly prejudiced by the circumstances of the presentation of the evidence on Counts 13-24 at trial.

**Ground Two:**[6] Cody's prerogative pursuant to the 6th Amendment to decide upon the objective of his defense was violated by the activities of the prosecution, the trial court, and/or trial counsel Patituce, or one or more of them acting in complicity with another, or one or more than one other, requiring vacation of the 12.16.2013 judgment without the necessity of Cody showing prejudice.

**Ground Three:** In violation of the 6th Amendment and the 14th Amendment's right to due process of law, of the 5th Amendment's right to compulsory process, the trial court denied the Defendant any of his 'CIA defense' witnesses at trial by failing to provide the Defendant with pro se requested defense witnesses to be served with subpoenas; by quashing all pro se defense expert witnesses; by forcing the Defendant, through the above, and by the pressures of solitary confinement, to accept appointed counsel who was refusing, as a matter of trial strategy contrary to the will of the Defendant, to pursue the

---

[5] *See* Cuyahoga County Clerk of Courts, Case Information, Case No. CA-19-108913.

[6] Cody refers to this ground as the "McCoy v. Louisiana Megaground."  Doc. 1-1, p. 10.

CIA defenses, including demanding these witnesses; and Appellate Counsel failed to raise or ague the above in violation of his Strickland responsibilities.

**Ground Four:** The Defendant was denied his right under the 6th and 14th Amendment to the U.S. Constitution to testify on his own behalf at trial by the trial court and/or by the forced or unforced ineffectiveness of trial counsel related thereto, pursuant to [clearly established federal law as explained by] Sheens v. Haskins, 4 Fed. Appx. 236 6th Cir. 2001) et al., and Appellate Counsel failed to raise or argue the above in violation of his Strickland responsibilities.

**Ground Five:** Automatic reversal is required because Defendant's due process and equal protection rights pursuant to the U.S. Constitution were violated because a satisfactory colloquy and examination to be pro se counsel pursuant to the … requirements of Faretta v. California, 422 U.S. 806 (1975) was not held prior to the appointment by the trial court of the Defendant as counsel pro re; or, in the alternative, if Defendant were effectively appointed counsel, he relinquished involuntarily and unintelligently that appointment on 8.26.2013 in violation of those same rights to an appointed counsel who was refusing at trial to aggressively pursue Defendant's "CIA defense", because of prosecutorial statements that the facts of that defense lacked credibility, contrary to the will of the Defendant as to trial strategy; and Appellate Counsel failed to raise or argue the above in violation of his Strickland responsibilities.

**Ground Six:** In violation of the Defendant's rights of due process of law under the 14th and 6th Amendments pursuant to [clearly established federal law as explained by] Gibson v. Washoe, 290 F. 3d 1175, 1188 n. 9 (9th Cir. 2002) and Alberti v. Klevenhagen, 790 F. 2d 1220, 1224 (5th Cir. 1986) et al., and/or in violation of his rights against cruel and unusual punishment under the 8th Amendment pursuant to Bell v. Wolfish, 441, U.S. 520 (1979) et al., the trial court's "no contact" order [JE 3.19.2013] placing the Defendant, after he had been appointed counsel pro se, in solitary confinement in the Cuyahoga County Jail pretrial through 12.16.2013, and other court and jail imposed conditions pretrial to that confinement, contributed to the causation of the Defendant's mental state of dysfunctional incompetence to stand trial; to plea bargain; and to his relinquishment of his right to self-representation on 8.26.2013; contributorily caused his attempted suicide; blocked his fundamental right to access counsel of choice pursuant to Sullivan v. Louisiana, et al., and to access his courts pursuant to Bounds v. Smith, 430 U.S. 817 (1977), et al., and to obtain discovery on his own behalf pursuant to [clearly established federal law as explained by] D'Ambrosio v. Bagley, 527 F. 3d 489, (6th Cir. 2008), et al.,. the 'no contact' order bore no stated rationale; it had no purpose and/or was overly punitive or was an exaggerated response to a fictional or perceived concern; and Appellate Counsel failed to raise or argue the above in violation of his Strickland responsibilities.

**Ground Seven:** Automatic reversal and new trial were required because the Defendant was denied an incompetency continuance as ordered by the trial court, violating the due process and equal protection standards of Pate v. Robinson, 383 U.S. 375 (1966), et al. Appellate Counsel failed to raise or argue the above in violation of his Strickland responsibilities.

**Ground Eight:** Defendant was never given a constitutionally mandated (pursuant to the due process and equal clauses of the U.S. Constitution) mental health and insanity examination, in Defendant's case No. CR-12-565040A, because he was never given such an examination tailored, on the insanity issue, to the times, facts and specific charges of 12-565050A, and no required finding was ever made; and Appellate Counsel failed to raise or argue the above in violation of his <u>Strickland</u> responsibilities.

**Ground Nine:** There was a lack of subject matter (territorial) jurisdiction and insufficiency of the evidence in violation of the due process of law clauses of the U.S. Constitution, on Count 12, Identity Fraud on Bobby Thompson of Washington State, because the Defendant never met any of the elements of the crime in Ohio other than the use of the generic name "Bobby Thompson" and that was insufficient to tie that use with an actual victim identified by the State as required; and Appellate Counsel failed to raise or argue the above in violation of his <u>Strickland</u> responsibilities.

**Ground Ten:** Trial Counsel Patituce provided numerous instances of I.A.C., pre-trial and at trial, and violation of the autonomous decision making required by <u>Faretta</u> and <u>McCoy</u> as to trial strategy, which can only be evidenced by the <u>dehors</u> record evidence provided by Cody's two PCRP trial court affidavits; and those instances require new trial under <u>Strickland</u>; or new trial under <u>McCoy</u>.

**Ground Eleven:** This claim is a lack of subject matter (territorial) jurisdiction for the Indictment Counts 3-9 (Money Laundering) of which Cody was convicted. Cody requests dismissal with prejudice of those counts. Subject matter jurisdiction is a fundamental 14th Amendment due process right. *Clendenning v. Newpage*, 2010 U.S. Dist. LEXIS 11289, HN 17 (S.D. Ohio, 2010). Lack of territorial jurisdiction is a structural error requiring dismissal with prejudice. <u>Strasshein v. Daily</u>, 221 U.S. 280 (1911) (requiring a sufficient territorial nexus with the actus reus of the crim[e]s for subject matter jurisdiction to apply); <u>U.S. v. Gatewood</u>, 173 F. 3d 983 (6th Cir. 1999). Ohio's long-arm territorial jurisdictional statutes must be strictly construed against the state of Ohio. <u>Clendenning</u>, supra, at HN 17; <u>State v. Human</u>, 381 N.E. 2d 969 (Oh. S. Ct. 1978), citing §18, Art. IV. Ohio Constitution.

**Ground Twelve:** The State failed to disclose exculpatory material and information relating to Cody's CIA defense, and classified intelligence affiliation with the CIA and the Bush 43 office of the President, known personally to Mike DeWine, constituting (a) a <u>Brady-Kyles</u> violation; (b) prosecutorial misconduct involving (1) suppression with a bad intent; and (2) lying about the non-existence of the information so as to effectively intimidate defense counsel Patituce to sabotage Cody's CIA defense.

**Ground Twelve (1):** There was a violation of the due process clauses of the 14th and 6th Amendments because Mike DeWine, and his office of the Ohio attorney general, brought and maintained the prosecution for reasons proscribed by the Constitution, to wit, causes involving vindictive, and selective prosecution; and because prosecutorial misconduct occurred by reason of the prosecution's strategy of suppressing Cody's CIA defenses, and, more particularly, by affirmatively misrepresenting that Cody never had any

affiliation with the CIA or any office of any president of the United States, with a purposive view toward intimidating, and which misrepresentations did intimidate, defense counsel Patituce in refusing Cody's chosen strategy of the CIA defense.

Doc. 1-1, pp. 9-15 (brackets in original).

After being granted leave to amend his petition, on July 30, 2019, Cody raised five

additional grounds for relief:

**Ground Thirteen:** <u>Brady</u> violations occurred in the denials to Cody at trial of exculpatory evidence showing he had a covert classified intelligence affiliation with (a) the CIA; and/or (b) the Bush 43 office of the president; Cody is therefore entitled to a new trial, or a vacation … of the CR-12-565050A judgment;

**Ground Fourteen:** Denial of Cody's right to counsel, and to the effective assistance of trial counsel (Patituce) for his defense occurred in the denial to Cody at trial of exculpatory evidence showing or tending to show Cody had a covert, classified intelligence affiliation with (a) the CIA; and/or (b) the Bush 43 office of the president; Cody is therefore entitled to new trial, or a vacation of the CR-12-565050A trial judgment;

**Ground Fifteen:** Prosecutorial misconduct occurred in the suppression of exculpatory evidence showing, or tending to show, Cody had covert, classified intelligence affiliation with (a) the CIA; and/or (b) the Bush 43 office of the president; Cody is therefore entitled to a new trial, or a vacation of the CR-12-565050A trial judgment;

**Ground Sixteen:** Cody was denied at trial the effective assistance of counsel (Patituce) with his defense because Patituce failed to properly investigate and develop evidence showing, or tending to show, Cody has a covert, classified intelligence affiliation with (a) the CIA; and/or (b) the Bush 43 office of the president; Cody is therefore entitled to a new trial, or a vacation of the CR-12-565050A trial judgment;

**Ground Seventeen:** <u>McCoy v. Louisiana</u> violations of Cody's autonomous 6th Amendment right to counsel; and his 6th Amendment right to effective assistance of counsel, in denying Cody his desired defense strategy of CIA-affiliation, including denying Cody his desired right to self-testify at trial, occurred; Cody is therefore entitled to a new trial, or a vacation of the CR-12-565050A trial judgment.

Doc. 41, pp. 1-2.

On August 6, 2019, Respondent file a Return of Writ (Doc. 42) and Cody filed a Traverse

(Doc. 57).

## II. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

**Exhaustion.** A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts")). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present his

claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.**  Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."  *Id*.  In *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'"  *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted."  *Id*.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501

U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

**Merits Review.**  In order to obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause).  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*. at 413.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principles and standards flowing from Supreme Court precedent.  *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002);

26

*Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law.  *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.") (emphasis in original).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard.  *Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).  "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.

**Ineffective Assistance of Counsel.** The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims.  A petitioner must show that counsel was objectively unreasonable and a reasonable probability that, but for counsel's unreasonable failure, the result of the proceedings would have been different.  *Id.*, at 687-691, 694.  Upon federal habeas review, there is a double layer of deference applied: to counsel, under *Strickland*, and to the state court of appeal's decision on the merits of that claim, under AEDPA.  *Kelly v. Lazaroff*, 846 F.3d 819, 832 (6th Cir. 2017) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).  The *Strickland* standard

also applies to an ineffective assistance of appellate counsel claim. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

### III. Analysis

In his Traverse, Cody argues in support of Grounds 4, 6, and "16/17." Doc. 57. For convenience, the Court discusses these claims first, out of sequential order.

### A. Ground 4: the first part of this Ground is procedurally defaulted and the second part fails on the merits

Ground 4 has two parts. Cody first argues that he was denied his right to testify on his own behalf by the trial court and/or due to the ineffectiveness of trial counsel. Doc. 1-1, p. 11. He also alleges that appellate counsel was ineffective for failing to raise this claim on direct appeal. Doc. 1-1, p. 11.

**Summary of Analysis**:  The underlying claim that the trial court denied Cody his right to testify on his own behalf is procedurally defaulted. The Ohio Court of Appeals' denial of Cody's claim that appellate counsel was ineffective for failing to raise a claim on direct appeal that his right to testify was violated is not unreasonable. Therefore, Cody's ineffective assistance of appellate counsel claim fails on the merits, and ineffective assistance of appellate counsel does not constitute cause to excuse the procedurally defaulted underlying claim.

### The underlying claim is procedurally defaulted

The underlying claim in Ground 4—that Cody was denied the right to testify on his own behalf—is procedurally defaulted because it was based on the trial court record and Cody did not present this claim on direct appeal as he was required to do. *See Hill v. Mitchell*, 842 F.3d 910, 936 (6th Cir. 2016) (in Ohio, ineffective assistance of trial counsel claims based on evidence within the trial court record must be brought on direct appeal); *State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967) (defendant's claims that were raised at trial and disposed of by the trial court

are based on the record and must be raised on direct appeal). See Doc. 43-21, pp. 187-195 ((Tr. Vol. 21) trial transcript of the court's discussion with Cody and counsel as to whether Cody would testify). Because this claim was not raised on direct appeal, and state law no longer allows Cody to present it, it is procedurally defaulted. *See Hill*, 842 F.3d at 936 (explaining that, under Ohio law, a claim based on the trial court record not brought on direct appeal is barred upon collateral review).

Ineffective assistance of appellate counsel for failing to raise this issue on direct appeal may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-452 (2000) (a fairly presented and valid claim of ineffective assistance of counsel may serve as cause sufficient to excuse a procedural default in federal habeas corpus). Here, however, an ineffective assistance of appellate counsel claim for failing to raise this issue on direct appeal does not constitute cause to excuse the procedural default because, as described below, the Ohio Court of Appeals rejected such a claim when denying Cody's Rule 26(B) Application to Reopen. *See id.* at 541 ("Not just any deficiency in counsel's performance will do [to establish cause], however; the assistance must have been so ineffective as to violate the Federal Constitution."). Furthermore, for the reasons explained in the undersigned's discussion regarding "new evidence" in Ground 16, *infra*, Cody has not shown that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### The ineffective assistance of appellate counsel claim fails on the merits

In his App. R. 26(B) Application to Reopen, Cody raised an ineffective assistance of appellate counsel claim for failing to raise, on direct appeal, a claim that the trial court and/or trial counsel denied him the right to testify on his behalf. Doc. 42-3, p. 62 (Exhibit 75). After

setting forth the *Strickland* standard governing ineffective assistance of counsel claims, the Ohio

Court of Appeals considered this claim as follows:

> {¶13} Cody also argues that he was denied his right to testify on his own behalf. When the state rested its case, the judge asked Cody directly whether he wished to testify; the judge noted that throughout the proceedings Cody indicated he wanted to testify. However, Cody refused to answer the judge's question directly. Instead, he whispered into his counsel's ear, after which counsel said that Cody wished to answer the charges against him. Again, the judge directly asked Cody if he wanted to testify, and again he whispered into his attorney's ear and did not answer the judge directly. After taking a break to allow Cody to better his appearance[] and to further consult with his attorney, Cody's lawyer said that it was his understanding that Cody would not be taking the stand. Cody did not object to these proceedings. (Tr. 4314–4322.) This record does not support an argument that the trial court denied Cody's right to testify, and appellate counsel in the exercise of professional judgment could decline to raise it.

*Cody*, 2017 WL 1507211 at *3; 2017-Ohio-1543.

> *Claim that the trial court denied Cody his right to testify.*  As an initial matter, Cody

argues that this Court's review of this issue should be a "modified" deferential AEDPA standard

as announced in *Davie v. Mitchell*, 547 F.3d 297 (6th Cir. 2009), because the Ohio Court of

Appeals provided "little analysis on the substantive constitutional issue."  Doc. 57, p. 9.  In

*Davie*, the Sixth Circuit explained that, when a state court adjudicates a claim "but with little

analysis on the substantive constitutional issue," a modified AEDPA deference applies, under

which a court conducts "a careful and independent review of the record and applicable law" but

still cannot reverse "unless the state court's decision is contrary to or an unreasonable application

of federal law."  547 F.3d at 315 (internal citations and quotation marks omitted).  Even if a

modified deference applies, the undersigned finds that, after a careful and independent review of

the record and applicable law, Cody has not shown that the state court's decision is contrary to or

an unreasonable application of federal law.  *See id.*  The transcript of the proceedings cited by

the Ohio Court of Appeals supports its explanation and is as follows:

> THE COURT: …. And so I know there has been some conversations -- Mr. Patitute has indicated that you were wanting to testify. Certainly, I think you appreciate you have a

Constitutional right to not testify. And have you had an opportunity to reach a conclusion as to whether or not you wish to testify?

(Thereupon, the defendant conferred with counsel off the record.)

MR. PATITUCE: Can we approach, your Honor?

THE COURT: Well, let's just hold on a second. Mr. Thompson, I think it's a fairly straightforward question. We can address some of the other issues, such as your appearance in court here today. What's your desire, sir? Do you intend on taking the stand and testifying in your own behalf, or not?

MR. PATITUCE: Your Honor, my client indicates he wishes to answer to his Complaint.

THE COURT: Well, and certainly I appreciate that, Mr. Thompson, but in any regard, I'm going to hear it from you as to what your intentions are so it's on the record and there can't be no mistake, because if there is a need for a reviewing court, that there's a clear intention on your behalf as to either to exercise your Constitutional right to remain silent, or if you would like to testify. So what would you like to do?

(Thereupon, the Defendant conferred with counsel Mr. Patituce off the record.)

MR. PATITUCE: Your Honor, he is reiterating to me the same. He wishes to answer to all the charges.

THE COURT: Mr. Thompson, we can – it's a simple question, sir. I'm asking you, do you wish to testify, or not; yes or no? Mr. Thompson? Mr. Thompson? You don't need to whisper in Mr. Patituce's ear. You can look right at me and say the word yes or no. Would you like to testify on your own behalf, or not; yes or no.

(No response.)

THE COURT: Well, Mr. Thompson, I can perhaps infer from your silence that you do not wish to testify, as is your Constitutional right to remain silent and proceed accordingly, if that's what you'd like to do.

Now we can address a couple other issues, such as your appearance in court here today. And if you would like to testify on your own behalf, I'm happy to give you some time, if you so desire, to, for example, fix your hair, finish buttoning up your shirt, put a tie on, if that's what you choose to do.[7] If you choose not to do all those things and appear in front of the jury in such a manner, that's fine as well and I'll simply give the jury an instruction that they're not to make any determination as to your guilt or innocence based upon your appearance in court here today. So having said that, what would you like to do?

THE DEFENDANT: I would like to put myself in physical appearance state, I think is

---

[7] "The record indicates that Cody appeared disheveled that day in court."  *State v. Cody*, 2017 WL 1507211, at *3, n. 5 (Oh. Ct. App. April 21, 2017).

31

reasonable.

THE COURT: All right.

THE DEFENDANT: Have my hair combed, have it washed, with my spectacles returned to me. I feel that is a reasonable request --

THE COURT: All right.

THE DEFENDANT: -- under the circumstances.

THE COURT: I don't necessarily disagree with you. Having done those things, and I'll provide you with a reasonable period of time for which to accomplish those, what is your intention with respect to testifying on your own behalf?

THE DEFENDANT: I can't answer that question without consulting with my attorney.

THE COURT: Go ahead, Mr. Patituce, take a few moments if you would like to.

(Pause.)

MR. PATITUCE: Your Honor, can we step aside maybe two seconds?

[thereafter the trial court recessed for almost 40 minutes and returned on the record]

***

THE COURT: [discussing Cody banging his head against the wall of his holding cell seven days prior and seeing the jail psychiatric staff] …. Having said that, before we broke, before this most recent recess, I made an inquiry from Mr. Thompson as to whether or not he wished to take the stand in his own defense. And I believe the record would accurately reflect that there was some difficulty in getting an answer from him. So let me ask it this way, Mr. Patituce, have you had conversations with Mister -- with your client relative to his Constitutional right to either testify or not testify on his own behalf?

MR. PATITUCE: I have, your Honor.

THE COURT: And do you feel that he has an adequate understanding of the nature of the -- not the nature of the case, but the nature of whether or not he chooses to testify, or not?

MR. PATITUCE: Your Honor, I do, as we discussed his physical and mental capabilities to testify, I explained his rights and possibilities to testify, and I do believe he will not be taking the stand, your Honor.

THE COURT: All right. And you indicated his physical and mental abilities. You just referring to the prospect, if you will, being cross-examined by, I'll say perhaps a seasoned prosecutor?

MR. PATITUCE: Your Honor, I certainly believe that direct will be difficult, but I do believe that he would not be able to survive the prospects of a seasoned prosecutor such as Brad Tammaro, or seasoned Attorney General Brad Tammaro cross-examining him.

THE COURT: All right. And so is it your intention to rest at this point in time, subject to the admission of any evidence, items of evidence that you wish to present?

MR. PATITUCE: Along with renewal of the [Rule 29] motion.

(Doc. 43-21, pp. 187-195) (Tr. Vol. 21).

Cody alleges that the transcript shows that he stated his desire to testify "five times." Doc. 57, pp. 15-17.  The undersigned disagrees.  Cody's refusal to answer the trial court's direct question to him as to whether he wanted to testify certainly did not indicate a desire to testify. Twice whispering to his counsel and counsel's subsequent statement, "my client indicates he wishes to answer to his Complaint" (Doc. 57, p. 15) is not a statement by Cody that he wished to testify.  Cody's statement that he wanted to tidy his appearance (Doc. 57, p. 15) is not a statement that he wished to testify.  The fact that defense counsel told the jury during opening statement that Cody would testify and the fact that the trial court stated that Cody's counsel had previously indicated off the record that Cody wanted to testify (Doc. 57, p. 15; Doc. 43-5, p. 66 (Tr. Vol. 5); Doc. 43-21, p. 188-189) (Tr. Vol. 21) are not statements by Cody that he wished to testify.  Thus, to the extent Cody argues that the Ohio Court of Appeals' factual determination that Cody did not state he wished to testify was unreasonable (Doc. 57, p. 17), such an assertion is without merit.

Cody argues that he was justified in not answering the trial court's questions posed to him directly and not objecting to trial counsel's statement that Cody would not testify because of clearly established constitutional law that his attorney speaks for him in the courtroom.  Doc. 57, p. 15, 17.  He cites no legal authority indicating that a defendant directly addressed by a court must not speak because he is represented by an attorney.  Cody also cites examples during trial

33

wherein the trial court allegedly gave Cody mixed messages about whether he was permitted to speak in court.  Doc. 57, p. 16.  Cody's arguments fail because he cites instances where the trial court told Cody not to speak at the same time as the court for the reason that the court reporter could not transcribe two speakers at once (Doc. 43-1, p. 89) (Tr. Vol. 1), reminded him that he is represented by counsel (Doc. 43-1, p. 74), and cautioned him that he was on the record and to be careful when answering questions posed by the court (Doc. 43-1, p. 84).  None of these examples cited by Cody show that the trial court's statements had a "mental sandbagging effect" on him such that he was "justified" in not responding to the trial court's question to him asking whether he wanted to testify, as he alleges (Doc. 57, pp. 15-16).

Next, Cody argues that it was improper for the Ohio Court of Appeals to observe that he did not object when his counsel stated that he would not be testifying.  Doc. 57, pp. 16, 17.  He asserts that he had no legal obligation to "personally object to defense counsel waiving his right to testify[.]"  Doc. 57, p. 16.  In support, he relies on *Ward v. Sternes*, 334 F.3d 696 (7th Cir. 2003).  Doc. 57, p. 16.  In *Ward*, the Seventh Circuit agreed with the habeas petitioner that the state trial court erred when it accepted the petitioner's purported waiver of his right to testify despite "uncontroverted trial testimony [] that Ward's brain injuries severely disrupted his ability to think, reason, take in verbal information, and understand and use language to express his understanding."  *Id*. at 705-706.  Additionally, the Seventh Circuit stated that, when the trial court asked the petitioner whether he was "in agreement" with his counsel's advice not to testify, the petitioner had answered, "I guess, I don't know."  *Id*. at 705-706.  The court explained,

> …more than an equivocal, "I guess, I don't know," in response to the trial court's question of whether Ward was "in agreement" with his counsel's "best advice and professional judgment that [he] not be called to testify [himself]" was required to ensure an accused with severe brain damage was knowingly and intelligently waiving a fundamental right. In the abstract, the words themselves are inconclusive, equally capable of classification as words of assent or of reluctance. Yet, absent any evidence that the speaker had mental handicaps and a severe language-processing deficiency, we would

> accept a trial court's interpretation given that court's superior position to observe the speaker and infuse meaning into the statement. Here, however, where it was known that the defendant's ability to express himself through language was severely compromised, it was unreasonable to assign the statement meaning without the benefit of further inquiry. By quickly deciding "that's the best we'll ever do," the trial court concluded its inquiry prematurely and accepted what was an at-best ambiguous statement for a conclusive waiver.

*Id*. at 706 (brackets in original).  In this case, unlike *Ward*, there is no evidence that Cody had mental handicaps and a severe language processing deficiency; in fact, Cody is a Harvard Law School graduate with professional trial and appellate experience.  See Doc. 43-1, p. 85 (Tr. Vol. 1); Doc. 1-1, p. 20; Doc. 43-20, p. 44 (Tr. Vol. 20); *State v. Cody*, 2017 WL 1507211, at *3, and n. 3 (Oh. Ct. App. April 21, 2017).  Nor did Cody equivocally respond to the trial court's question whether he wanted to testify; rather, Cody refused to respond at all.  In *Hodge v. Haeberlin*, the Sixth Circuit explained,

> Although the right to testify is a fundamental right subject only to knowing and intelligent waiver, "waiver of certain fundamental rights can be presumed from a defendant's conduct alone, absent circumstances giving rise to a contrary inference." *United State v. Stover*, 474 F.3d 904, 908 (6th Cir. 2007). Notably, Hodge has not stated that he was unaware of his right to testify or that he was somehow prevented from seeking the court's assistance in overcoming counsel's allegedly unilateral decision. We have previously stated that, "[a]lthough the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed." *Webber*, 208 F.3d at 551. Indeed, "[b]arring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record." *Id*. To the contrary:
>
>> A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. At base, a defendant must alert the trial court that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so.
>
> *Id*. (internal citations and quotation marks omitted). As Hodge does not show that his right to testify was impaired, he cannot show deficient performance by counsel.

579 F.3d 627, 639-640 (6th Cir. 2009) (brackets in original).

Here, the Ohio Court of Appeals' recitation of the facts was accurate and its conclusion that appellate counsel, exercising professional judgment, was not ineffective for not raising a claim on direct appeal alleging that the trial court denied Cody his right to testify is not unreasonable.  *Id*.; *Hand v. Houk*, 871 F.3d 390, 410 (6th Cir. 2017) ("Mere failure to raise a potentially viable claim is not enough" to show that counsel is constitutionally ineffective); *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004) ("Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal[,]" citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

Finally, Cody states that he had head injuries at the time the trial court asked him whether he wished to testify and that this prevented him from objecting to counsel's statement that Cody would not testify.  Doc. 57, pp. 14, 17.  The transcript page Cody references (Doc. 57, p. 14; Doc. 43-21, p. 145) (Tr. Vol. 21) indicates that the trial court discussed with counsel the fact that, seven days prior, counsel and others witnessed Cody banging his head against the wall in the holding cell adjacent to the courtroom and he told his attorney that he did not want to participate in the "sham" trial proceedings.  The trial court considered this fact when addressing the issue whether Cody wanted to testify and observed that it did not find cause to believe that Cody had mental heath issues that required attention at that time.  See Doc. 43-21, pp. 193-194. The fact that counsel referenced Cody's physical and mental capabilities to withstand rigorous cross examination (Doc. 43-21, p. 195), as Cody complains (Doc. 57, p. 16), further supports a finding that trial counsel made a tactical decision as to which Cody's assent is presumed.  *Hodge*, 579 F.3d at 641; *United States v. Webber*, 208 F.3d 545 (6th Cir. 2000).

Cody has not shown that the Ohio Court of Appeals' determination as to this claim is unreasonable.

*Claim that trial counsel denied Cody his right to testify.*  Cody asserts that the Ohio Court of Appeals "ignored" the portion of his claim that alleged ineffective assistance of trial counsel. Doc. 57, p. 10.  Therefore, Cody argues, this Court should conduct a de novo review of this claim.  Doc. 57, p. 10 (citing *Carter v. Mitchell*, 693 F.3d 555 (6th Cir. 2012); *Davie*, 547 F.3d 297; *Vance v. Scutt*, 573 Fed. App'x 415 (6th Cir. 2014)); Doc. 57, p. 18.  The cases Cody relies on do not support his assertion that the Court is required to conduct a de novo review of this claim.  *See, e.g., Carter*, 693 F.3d at 562 (stating that de novo review is applied when a state court does not address the merits of a claim at all, not when the state court's decision is unaccompanied by an explanation, citing *Harrington*); *Vance*, 573 Fed. App'x at 419-420 (relying on *Harrington*, applying AEDPA's deferential review despite the state court not directly addressing the petitioner's claim that counsel was ineffective).  There is no requirement that the state court explain its reasoning as to all elements of a multipart claim.  *See Harrington*, 562 U.S. at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.  This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated."); *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) (In *Harrington*[,]…, the Supreme Court recently clarified that even summary decisions by state courts are entitled to the AEDPA standard of review under § 2254(d).  'There is no merit to the assertion that compliance with § 2254(d) should be excused when state courts issue summary rulings.'  Summary rulings on the merits do not receive de novo review." (internal citations omitted)).

Moreover, when a state court considers some, but not all, of a defendant's claims on the merits, there is a rebuttable presumption that AEDPA deference applies to the undiscussed claims. *Johnson v. Williams*, 568 U.S. 289, 292-293, 298 (2013) ("[I]t is not the uniform practice of busy state courts to discuss separately every single claim to which a defendant makes even a passing reference."). "While it is preferable for an appellate court in a criminal case to list all of the arguments that the court recognizes as having been properly presented, federal courts have no authority to impose mandatory opinion-writing standards on state courts." *Id*. at 300 (citations omitted).

Here the Ohio Court of Appeals addressed the merits of Cody's claim that his right to testify on his own behalf was violated.  Although the Ohio Court of Appeals framed its summary of the discussion of this claim as whether the trial court denied Cody's right to testify, the court discussed trial counsel's role in the matter.  *See Cody*, 2017 WL 1507211, at *3; 2017-Ohio-1543, ¶13.  Simply put, the Ohio Court of Appeals found that Cody's right to testify was not violated, whether Cody alleged it was the trial court or counsel who violated it.  *See Brown v. Romanowski*, 845 F.3d 703, 712 (6th Cir. 2017) (the *Johnson* presumption applies when an undiscussed claim is too insubstantial or covered by another claim by implication).  Cody has not successfully rebutted the presumption that AEDPA deference applies to the state court of appeals' disposition of this claim; therefore, the undersigned finds that AEDPA deference applies to the Court's consideration of the Ohio Court of Appeals' decision on this claim.[8]

Cody argues that trial counsel was ineffective because he waived Cody's right to testify without evidence of Cody's direction or consent, instead basing his decision upon his personal belief that Cody did not have the mental or physical ability to assist counsel during such testimony.  Doc. 57, p. 18.  He asserts that, if he was temporarily incapacitated, counsel should

---

[8] Even under a de novo standard, Cody's claim fails.

have requested a continuance, not waived his right to testify.[9]  Doc. 57, p. 18.

First, Cody's assertion that counsel waived his right to testify without evidence of Cody's direction or assent is belied by the trial transcript reproduced, *supra*; namely, that Cody and counsel discussed the matter off the record and Cody did not object when counsel subsequently informed the Court of the outcome of that conversation.  Nor does the transcript show that he attempted to commit suicide or was temporarily incapacitated justifying counsel requesting a continuance.  See also Doc. 43-22, pp. 162-165 ((Tr. Vol. 22) Cody's allocution at sentencing referencing his purported suicide attempt on November 5, 2013, and the trial court's response). Moreover, the Ohio Court of Appeals separately considered Cody's claim that he was incompetent to stand trial as follows:

{¶11} Cody's next assignment of error is that he was forced to stand trial while he was incompetent. The record in this case does not support that argument. On July 12, 2012, the trial judge referred Cody to the court psychiatric clinic to determine competency to stand trial. After the evaluation took place, defense counsel and the state stipulated to the competency report on August 21, 2012. Throughout the proceedings, Cody raised the issue of representing himself.[3] Eventually, on January 30, 2013, after repeatedly and thoroughly reviewing the matter, the judge allowed Cody to represent himself with assigned counsel, Mr. Patituce, as advisory counsel. Cody then inundated the court with motions for discovery, dismissal, in limine, suppression, grand jury transcripts, and assistance, and with reply briefs to the state's opposition briefs.[4] Cody also filed a mandamus action and an affidavit of disqualification of the trial judge. Cody then on August 26, 2013, stopped representing himself and accepted appointed counsel for trial, which commenced on September 30, 2013. Reviewing the transcripts of the pretrial hearings while Cody represented himself shows that his comments were thoughtful, pertinent, intelligent, and articulate. At the end of the trial, the judge noted that Cody played an active role in his defense, paying close attention to the evidence, taking notes, conferring with counsel, and providing information and suggestions for cross-examination. (Tr. 4513.) These are not the actions of an incompetent person. Thus, appellate counsel in the exercise of professional judgment could decide not to raise this argument.

[FN3] Evidence was presented at trial that Cody had attended law school and had

---

[9] Cody states, "For the colloquy, Cody had just come off a suicide attempt in a Cuyahoga county justice center holding cell."  Doc. 57, p. 14.  This reference is to Cody banging his head against the wall of the holding cell on November 5, 2013, which was discussed on the record at the time of Cody's colloquy regarding his desire to testify seven days later, on November 12, 2013.  See Doc. 43-21, pp. 143-147, 193-194 (discussion on the day of and during the colloquy); Doc. 43-22, p. 162 (sentencing transcript).

practiced law for awhile.

[FN4] Cody filed over 120 pro se motions during the course of the proceedings. In some of these motions, he had the foresight to try to form the foundation of appellate arguments.

*Cody*, 2017 WL 1507211 at *3; 2017-Ohio-1543.  In short, the Ohio Court of Appeals rejected Cody's claim that he was incompetent to stand trial and Cody does not show that its determination was unreasonable.  Thus, it cannot be said that appellate counsel was ineffective for failing to raise a claim on direct appeal that trial counsel was ineffective for failing to ask for a continuance on the basis that Cody was incompetent.

Cody's other stated reasons why trial counsel was ineffective (Doc. 57, p. 19) are not relevant to his claim in Ground 4 that trial counsel violated his right to testify.

### B. Ground 6: the first part of this Ground is procedurally defaulted and the second part fails on the merits

In Ground 6, Cody argues that the trial court issued a no contact order placing him in solitary confinement from March 2013 until his sentencing on December 16, 2013, which violated his due process rights and was cruel and unusual punishment in violation of the Eighth Amendment.  Doc. 1-1, p. 12.  He alleges that this court-ordered confinement caused his mental state to deteriorate such that he became incompetent to stand trial and also blocked his right to access counsel and the courts and to obtain discovery.  Doc. 1-1, p. 12.  And he alleges that appellate counsel was ineffective for failing to raise this claim on direct appeal.  Doc. 1-1, p. 12.

**<u>Summary of Analysis</u>**:  The underlying claim, that the trial court's alleged solitary confinement order violated Cody's constitutional rights, is procedurally defaulted.  The Ohio Court of Appeals' denial of Cody's claim that appellate counsel was ineffective for failing to raise a claim on direct appeal that the trial court's no contact order violated his constitutional rights is not unreasonable.  Therefore, Cody's ineffective assistance of appellate counsel claim

40

fails on the merits, and ineffective assistance of appellate counsel does not constitute cause to excuse the procedurally defaulted underlying claim that the trial court's no contact order violated Cody's constitutional rights.

### The underlying claim is procedurally defaulted

The underlying claim in Ground 6—that the trial court's alleged solitary confinement order violated Cody's rights, caused him to become incompetent, and violated additional rights—is procedurally defaulted because, to the extent it was based on the trial court record, Cody did not present this claim on direct appeal as he was required to do. *Hill*, 842 F.3d at 936; *Perry*, 226 N.E.2d at 108.  Because this claim was not raised on direct appeal, and state law no longer allows Cody to present it, it is procedurally defaulted.  *See Hill*, 842 F.3d at 936.

Ineffective assistance of appellate counsel for failing to raise this issue on direct appeal may constitute cause to excuse a procedural default.  *Edwards*, 529 U.S. at 451-452.  Here, however, an ineffective assistance of appellate counsel claim for failing to raise the issue on direct appeal does not constitute cause to excuse the procedural default of this claim because, as described below, the Ohio Court of Appeals rejected this claim when denying Cody's Rule 26(B) Application to Reopen.  *See id*. at 541.  And, as discussed in Ground 16, *infra*, Cody does not show actual innocence.

To the extent this claim is based on evidence outside the record, it is also procedurally defaulted because Cody never presented such a claim to the Ohio courts.  Although Cody alleged ineffective assistance of trial counsel for failing to pursue an incompetency defense in his first postconviction petition,[10] that claim is legally and factually distinct from the claim alleged in Ground 6.  *See McMeans*, 228 F.3d at 681 (to satisfy the fair presentation requirement, a habeas

---

[10] The Ohio Court of Appeals rejected Cody's claim that counsel was ineffective for pursuing a line of defense that he was incompetent to stand trial because (1) it was based on the trial court record and barred by res judicata and (2) Cody did not describe evidence outside the record that would support such a claim.  *Cody*, 2015 WL 4133281, at *4; 2015-Ohio-2764.

petitioner must present both the factual and legal underpinnings of his claims to the state courts).

**The ineffective assistance of appellate counsel claim fails on the merits**

In his App. R. 26(B) Application to Reopen, Cody raised an ineffective assistance of appellate counsel claim for failing to raise, on direct appeal, a claim that the trial court's no contact and solitary confinement orders violated his constitutional rights (his Eighth Amendment right to be free from cruel and unusual punishment, his due process rights, and his Sixth Amendment right to counsel of his choice, access to the courts, and ability to obtain discovery on his own behalf) and caused him to become incompetent to stand trial.  Doc. 42-3, pp. 62-63 (Exhibit 75).  The Ohio Court of Appeals considered this claim:

> {¶12} Cody further argues that the trial court placed him in solitary confinement, which further drove him insane and undercut his ability to represent himself. The docket shows that on March 19, 2013, the trial judge issued an order that "[d]efendant is restricted to have no contact by phone, mail or social visits." Cody describes the horrible effect this had on him in his supporting affidavit. Nevertheless, it is understandable why appellate counsel would not raise this as an assignment of error. As explained above, the record does not support the proposition that Cody was going insane before trial, much less that his solitary confinement was causing it. Cody referred to his solitary confinement in his motions and at pretrials, but did not dwell at length on the deleterious effect it was having on his mind. Thus, this proposition was better suited to the postconviction relief petition he filed; indeed, he raised this argument there, too. Finally, it is difficult to discern how the solitary confinement prejudiced the outcome of the trial or the appeal.

*Cody*, 2017 WL 1507211, at *3; 2017-Ohio-1543.

As an initial matter, the trial court issued an order stating that Cody was to have no contact by phone, mail or social visits, Doc. 42-4, p. 126 (Exhibit 101); as the Ohio Court of Appeals observed, the trial court did not order Cody into solitary confinement.[11]  Moreover, Cody admits that the trial court's order was a response to Cody "smuggling" a note he wrote to another inmate in the restrictive housing unit by slipping the note under the inmate's cell door in an attempt to contact another attorney (Doc. 57, p. 20).  Thus, it cannot be said that the trial

---

[11]  Cody agrees that it was the Cuyahoga County Sheriff Regulations that caused him to be placed in solitary confinement as a result of the trial court's no contact order.  Doc. 42-3, p. 82 (Exhibit 75).

court's order "had no purpose and/or was overly punitive or was an exaggerated response to a fictional or perceived concern," as Cody asserts (Doc. 1-1, p. 12).

Regardless, Cody criticizes the Ohio Court of Appeals for focusing "entirely on a separate 'solitary confinement' issue … as to whether Cody 'was going insane' by reason of the solitary confinement."  Doc. 57, p. 23.  The undersigned notes that, in his brief in support of his Rule 26(B) Application, Cody alleged just that: he was going insane due to the trial court's no contact order that rendered him incompetent to stand trial.  See Doc. 42-3, pp. 62, 83 (Exhibit 75).  In his Traverse, Cody focuses on the portion of Ground 6 that alleges he was denied the right to access counsel of his choice.  See Doc. 57, pp. 20-23.  He states that he is "voluntarily limiting his argument" to this issue.  Doc. 57, p. 20.  Therefore, based on Cody's own assertions, the undersigned considers the claim in Ground 6 that Cody now challenges: that he was denied the right to access counsel of his choice by virtue of the trial court's no contact order.

*The appropriate standard*.  Cody argues that the Ohio Court of Appeals ignored his claim that the trial court's no contact order denied him his right to access counsel of his choice.  Doc. 57, p. 10.  In his brief in support of his Rule 26(B) Application, Cody argued that the trial court's no contact order in March 2013 occurred when he "attempted to smuggle a request to an inmate's counsel to see him about potential representation."  Doc. 42-3, p. 82 (Exhibit 75).  At that time, Cody was representing himself.  Doc. 42-3, p. 82.  He represented himself until August 2013, when he stated, in court on the record, that he wished to turn over his representation to Attorney Patituce.  Doc. 43-2, p. 225 (Tr. Vol. 2).  In its opinion denying Cody's Rule 26(B) Application, the Ohio Court of Appeals reasoned:

> {¶14} Cody's next assignment of error is difficult to discern. He argues that pursuant to *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and *State v. Smith*, 8th Dist. Cuyahoga No. 98093, 2012–Ohio–5420, the trial court erred in allowing him to represent himself or in the alternative deprived him of his right to self-representation by driving him insane through the solitary confinement order. To the

extent that Cody argues that the trial court erred by allowing Cody to represent himself, the argument is ill-founded. The judge and Cody reviewed the risks of self-representation, and the judge finally granted Cody's motion. The record indicates that Cody received legal training at Harvard Law School and practiced criminal law outside of Ohio. The record also shows that while he represented himself, he resorted to multiple legal remedies, endeavored to reach a plea agreement, and conducted himself well during pretrials. To the extent that he argues that the trial court deprived him of his right to self-representation, the argument is not supported by the record. As discussed previously, the record does not show that Cody was going insane during the summer of 2013. Throughout the proceedings, Cody and the trial judge discussed self-representation, and on August 26, 2013, when the trial judge asked Cody if it was his intention to proceed pro se or to have Mr. Patituce resume primary representation, Cody replied: "Thank you, your honor. I wish to turn the case over to Mr. Patituce." (Tr. 493.) Accordingly, this assignment of error is ill-founded.

*Cody*, 2017 WL 1507211, at *3; 2017-Ohio-1543.  The Ohio Court of Appeals' discussion above

is adequate consideration of Cody's claim alleged in Ground 6.  *See Brown*, 845 F.3d at 712 (the

*Johnson* presumption applies when an undiscussed claim is too insubstantial or covered by

another claim by implication).  Thus, AEDPA deference applies to the Ohio Court of Appeals'

decision in this case.[12]

　　*The Ohio Court of Appeals' decision was not unreasonable*.  The Sixth Amendment to

the United States Constitution guarantees an indigent criminal defendant the right to assistance

of appointed counsel at trial.  *Powell v. Alabama*, 287 U.S. 45, 53 (1932); *Gideon v. Wainwright*,

372 U.S. 335, 343 (1963).  However, the right of an accused to assistance of counsel does not

include the right to appointment of counsel of choice.  *United States v. Gonzalez-Lopez*, 548 U.S.

140, 151 (2006) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988); *Caplin & Drysdale,

Chartered v. United States*, 491 U.S. 617, 624, 626 (1989)).  "Nor may a defendant … demand

that a court honor his waiver of conflict-free representation."  *Id*. at 152 (citing *Wheat*, 486 U.S.

at 159–160).

　　Cody alleges, "No motion for determination of [his] indigency was ever filed by the State

or by the defendant"; he never asked the trial court to find him indigent; and he was never

---

[12] Even if a de novo standard were applied, Cody's claim fails on the merits.

affirmatively declared to be indigent by the trial court. Doc. 57, p. 21. In other words, he appears to argue that he was not, in fact, indigent throughout his trial. This assertion is baseless. He was declared indigent by the trial court in May 2012. Doc. 42-1, p. 39 (Exhibit 5). He repeatedly stated in his Rule 26(B) Application that he *was* indigent. See Doc. 42-3, p. 83 ((Exhibit 75) complaining of his solitary confinement and noting "his indigency is of record."); *Cody*, 2017 WL 1507211, at *6 (Ohio Court of Appeals decision: "Cody also claims that appellate counsel should have argued that it was improper to impose a superfine of $6,345,114.57 and the costs of prosecution of $330,778.70 against an indigent defendant."); see also Doc. 1-14, pp. 4, 9 (Cody's writ of mandamus filed in December 2012 stating that he is indigent); Doc. 42-1, p. 551 ((Exhibit 60) Affidavit of Indigency signed by Cody in June 2014). To the extent that Cody now challenges his indigency, he does not show that he was not in fact indigent. *See Burt v. Titlow*, 571 U.S. 12, 18 (2013) ("when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" (citing 28 U.S.C. § 2254(d)(2)). Nor did he raise the issue of his indigency on direct appeal or in his Rule 26(B) Application. Accordingly, he is procedurally defaulted from arguing that he was not indigent and could have retained counsel of choice and/or that appellate counsel was ineffective for failing to raise this issue on direct appeal. *Williams*, 460 F.3d at 806 (a petitioner procedurally defaults a claim by failing to raise it in state court and pursue that claim through the state's ordinary appellate review procedures).

Finally, Cody's assertion that his solitary confinement prevented him from asking family members for money to hire an attorney or to raise a defense fund online (Doc. 57, p. 23) is not well taken. Cody was declared indigent in May 2012 and had numerous, robust discussions with

45

the trial court, including three times on the record in January 2013, about his options for representation prior to the trial court's no contact order in March 2013 and he did not mention or pursue these alleged avenues of funding at those times.  See, e.g., Doc. 43-1, pp. 93-98 ((Tr. Vol. 1) January 14, 2013, trial court discussions regarding Cody's request to represent himself, wherein Cody stated that he wished to represent himself, that he understood he does not have a right to name appointed counsel, and requested to proceed pro se with up to ten advisory counsel appointed for him); Doc. 43-1, pp. 106-120 (January 23, 2013, trial court discussions regarding Cody's request to proceed pro se with Patituce as standby counsel); Doc. 43-1, pp. 125-134 (January 30, 2013, hearing in which Cody waived his right to counsel and elected to proceed pro se); Doc. 42-1, p. 151 ((Exhibit 18) signed waiver).

Because Cody was indigent, he was not entitled to appointment of counsel of his choice, as he conceded on the record when discussing representation with the trial court.  See Doc. 43-1, pp. 95-96).  Thus, the Ohio Court of Appeals' decision that appellate counsel was not ineffective is not unreasonable.  Appellate counsel was not ineffective for failing to raise a claim on direct appeal that the trial court's no contact order prevented Cody from retaining counsel of his choice.

### C. Grounds "16/17" are procedurally defaulted

In his Traverse, Cody refers to these two grounds collectively as Grounds "16/17."  *E.g.*, Doc. 57, pp. 4-5, 10.  In Ground 16, Cody argues that trial counsel was ineffective for failing to properly investigate and develop evidence showing or tending to show that Cody had a covert, classified intelligence affiliation with the CIA and/or President George W. Bush.  Doc. 41, p. 2. Relatedly, in Ground 17, Cody argues that trial counsel was ineffective because counsel denied Cody his right to pursue his desired CIA affiliation defense strategy per *McCoy v. Louisiana*. Doc. 41, p. 2.  Grounds 16 and 17 are procedurally defaulted.

### 1. Ground 16 is procedurally defaulted

Cody raised the issue in Ground 16—that trial counsel was ineffective for failing to pursue certain witnesses identified by Cody as being able to establish that he had a CIA affiliation—in his first postconviction petition in June 2014.  Doc. 42-1, pp. 528, 534 (Exhibit 60).

### The Ohio Court of Appeals applied a procedural bar and Cody does not show cause to excuse the default

As an initial matter, Cody alleges that Ground 16 "arises out of" his motion for new trial/postconviction petition proceedings in 2018.  Doc. 57, pp. 11, 8.  In June and July 2018, Cody filed a Motion for Leave to File (Delayed) Motion for New Trial and a second postconviction petition, respectively.  Doc. 42-3, p. 278, 386 (Exhibits 83, 87).  However, in these filings, Cody did not assert a claim that trial counsel was ineffective, which is his claim in Ground 16.  Rather, Cody argued that he *and trial counsel* were unavoidably prevented from discovering new evidence and placed blame on the prosecution.  Doc. 42-3, pp. 285-289, 402-404.  Thus, although Cody claims that Ground 16 "arises" out of his motion for new trial/postconviction petition in 2018, it does not because Cody did not allege ineffective assistance of trial counsel in his 2018 motion for new trial or postconviction petition.[13]

Therefore, the operative state court opinion for this Court to review is the Ohio Court of Appeals' 2015 decision denying Cody relief on appeal from his 2014 postconviction petition, in which he alleged ineffective assistance of trial counsel for failing to pursue certain witnesses who could have shown that he had an affiliation with the CIA and/or former President Bush.

---

[13] Cody discussed an ineffective assistance of counsel claim in his consolidated brief on appeal to the Ohio Court of Appeals of the trial court's denial of his Motion for Leave to File (Delayed) Motion for New Trial and second postconviction petition.  Doc. 42-3, p. 574 (Exhibit 93).  However, the Ohio Court of Appeals did not construe his brief as asserting an ineffective assistance of counsel claim, remarking that Cody's "numerous assignments of error, which are difficult to decipher," could be boiled down into two assignments of error and considered those two assignments.  *Cody*, 2019 WL 3046584, at *2.  The Ohio Court of Appeals also discussed the fact that Cody had filed an earlier, 2014 postconviction petition alleging ineffective assistance of appellate counsel for failing to pursue certain witnesses that would have established that Cody was working for the CIA and that it had previously found this claim barred by res judicata.  *Id*. at *1-2 (referencing *Cody*, 2015 WL 4133281, at *4; 2015-Ohio-2764).

The Ohio Court of Appeals considered this claim as follows:

> {¶ 17} In his first assignment of error, Cody argues that his trial counsel was ineffective because counsel (1) refused to pursue certain witnesses that would have established that Cody was working for the CIA; and (2) did not pursue a line of defense that Cody was medically incompetent to stand trial or assist in his defense due to beatings he received in jail.
>
> {¶ 18} In its findings of fact and conclusions of law, the trial court found that the sole support for Cody's claims was contained in his own self-serving affidavits and he was unable to demonstrate that any facts existed from outside the record.
>
> {¶ 19} Cody's claims that he received ineffective assistance of counsel because his trial attorney failed to pursue specific witnesses and present a certain line of defense are both claims that could have been brought on direct appeal. Although Cody argues that both of these claims would be proved by evidence outside the record, he does not show what the evidence would be. Because Cody did not raise these issues on direct appeal, he has waived those claims and they are barred by res judicata.

*Cody*, 2015 WL 4133281, at *4; 2015-Ohio-2764.

Because Cody failed to comply with a state procedural rule, the Ohio Court of Appeals enforced the rule, and the procedural rule is an adequate and independent state ground for denying review of Cody's claim, Ground 16 is procedurally defaulted unless Cody can show cause and prejudice to excuse the default. *See Williams*, 460 F.3d at 806; *Maupin*, 785 F.2d at 138; *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) ("Ohio courts have consistently held that claims that can be adjudicated based on facts in the record can only be presented on direct appeal," citing *State v. Lentz*, 639 N.E.2d 784, 785 (1994)).

Cody maintains (without relevant explanation) that a procedural bar does not apply to this claim but that, if a procedural bar does apply, it is excused by trial counsel's ineffectiveness. Doc. 57, p. 11.  But ineffectiveness of trial counsel cannot serve as cause to excuse Cody's failure to raise this claim on direct appeal through new appellate counsel.  And any claim that appellate counsel was ineffective for failing to raise this claim on direct appeal is itself procedurally defaulted because Cody didn't present it to the state courts in his Rule 26(B)

Application.  *Edwards*, 529 U.S. at 450-451 (when a petitioner procedurally defaults an ineffective assistance of counsel claim, ineffective assistance of counsel cannot serve as cause to excuse the procedural default of the underlying claim unless the petitioner can show cause and prejudice to excuse the ineffective assistance of counsel procedural default).  Finally, Cody does not allege cause to excuse the procedural default of an ineffective assistance of appellate counsel claim that could then serve as cause to excuse the default of the underlying claim.  In short, Ground 16 is procedurally defaulted.

**Cody has not shown that he is actually innocent**

Cody contends that he can overcome the procedural bar by showing actual innocence.  Doc. 57, pp. 11, 28.  To do so, Cody must show that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  A claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995).

Cody asserts that his newly discovered evidence supports a CIA defense he could have raised at trial.  Doc. 57, p. 11.  Even if evidence of an affirmative defense could constitute "actual innocence" rather than mere legal innocence, Cody's argument fails because his evidence does not show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  *Schlup*, 513 U.S. at 327.  As an initial matter, Cody does not provide the Court with his newly discovered evidence.  Therefore, the undersigned looks to the state court record to determine what "newly discovered evidence" Cody submitted to the state

courts.[14]  The Ohio Court of Appeals cited the "newly discovered evidence" Cody submitted in

support of his 2018 motion for new trial and second postconviction petition:

> {¶ 33} Cody submitted the following in support of his motions: (1) various statements purportedly made by the prosecutor that Cody claims show the state knew he was involved with the CIA; (2) Cody's 19-page affidavit; (3) Cody's curriculum vitae; (4) the CIA's response to Cody's Freedom of Information Act request dated January 29, 2018; (5) a 1973 redacted letter from a law firm based in Hawaii that purports to list the name "John Cody" as one of the firm's associates; (6) various transcripts and court filings; and (7) a letter from the Office of Government Information Services dated April 19, 2018, explaining the CIA's response to Cody's Freedom of Information Act request.

Cody, 2019 WL 3046584, at *5; 2019-Ohio-2824; see also Doc. 42-3, pp. 283-284 ((Exhibit 83)

Cody's motion for new trial listing newly discovered evidence); pp. 395-396 ((Exhibit 87)

Cody's second postconviction petition).

First, item (1) various statements made by the prosecutor and item (6) various transcripts

and court filings purporting to show that the state knew Cody had an involvement with the CIA

are not new and do not, in fact, show that the state knew Cody had an affiliation with the CIA.

See Doc. 42-3, pp. 324-333 (Exhibit 83).  Cody's self-serving affidavit (item (2), Doc. 42-3, pp.

293-311) is not new evidence because Cody was fully aware of all the information he stated in

his affidavit at the time of trial: he states he was an undercover CIA agent since 1974, the CIA

was aware of USNVA's expenditures, and, therefore, he is innocent of the theft, money

laundering, and tampering with state records charges.  Doc. 42-3, p. 298, 300.  It cannot be said

that it is more likely than not that no reasonable juror would have convicted him had it heard this

information because it is not reliable evidence that Cody's actions operating the USNVA were

excused by virtue of his alleged CIA affiliation.  Next, item (3), Cody's curriculum vitae (Doc.

42-3, p. 318), is also not new evidence as this information was known to him at trial and it does

not show that his actions operating the USNVA were excused by virtue of his alleged CIA

---

[14] See also Doc. 57, p. 26 (Cody referencing the new evidence that he presented to the state court "contained, exclusively, in Cody's 19 page trial court affidavit with incorporated exhibits[.]").

affiliation.

As for item (4), the CIA's response to Cody's Freedom of Information Act request dated January 29, 2018, the letter states that there are no records showing an openly acknowledged affiliation between Cody and the CIA and the CIA cannot confirm or deny whether there are records showing a classified association existed because such records are classified. Doc. 42-3, pp. 321-323. This letter does not show that Cody was an undercover CIA agent, or, more relevantly, that his actions running the USNVA were excused by virtue of his alleged CIA affiliation such that it is more likely than not that no reasonable juror would have convicted him of the charges had it known this information. So, too, item (7), a letter from the Office of Government Information Services dated April 19, 2018, explaining the CIA's response to Cody's Freedom of Information Act request. Finally, item (5), a redacted letter from a law firm based in Honolulu, Hawaii dated 1973 that lists the name "John Cody" as one of the firm's associates (Doc. 42-3, p. 337), does not show that Cody was an undercover CIA agent or that his actions running the USNVA were excused by virtue of his alleged CIA affiliation.

Indeed, Cody does not persuasively explain how the evidence he cites shows that it would be more likely than not that no reasonable juror would have convicted him. See Doc. 57, pp. 38-61 (Cody's explanation of what he would have testified to and why it would have mattered). He states,

> The detailed evidence of and related to Cody's CIA affiliation, and its implications from which a reasonable juror could infer no theft, lack of specific intent, and national security operational intelligence related lawful purpose in Cody receiving and using assigned cover identities by the CIA, in Cody's MNT/PCRP, are overwhelming, and meet any standard for showing prejudice related to ineffectiveness by their omission from any second trial, which can be applied, absent a finding from a federal court that they are falsehoods, or that they are not capable of belief…

Doc. 57, p. 28. Cody's reliance upon a decade's-old alleged "affiliation" with the CIA that could lead to "implications" from which one "could infer" that he did not commit the crimes charged is

51

not new reliable evidence such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial. *Schlup*, 513 U.S. at 324. Moreover, nowhere in his filings does Cody explain how an "affiliation" with the CIA demonstrates actual innocence of the charges he was convicted of.

Ground 16 is procedurally defaulted.

### 2. Ground 17 is procedurally defaulted

Cody asserts that the issue in Ground 17—that trial counsel was ineffective for violating his rights pursuant to *McCoy v. Louisiana*, --U.S.--, 138 S.Ct. 1500 (2018)—arises out of his motion for new trial and second postconviction petition filed in 2018. Doc. 57, p. 11. The Ohio Court of Appeals affirmed the trial court's denial of his motion and second postconviction petition as untimely. *Cody*, 2019 WL 3046584, at *6; 2019-Ohio-2824. Untimeliness is a proper basis upon which the state court may deny relief. *See Smith v. Warden, Toledo Corr. Inst.*, 780 Fed. App'x 208, 219-220 (6th Cir. June 16, 2019) (an Ohio postconviction petition deemed untimely is an independent and adequate state ground for denying relief; petitioner's claim was therefore procedurally defaulted); *Hill v. Mitchell*, 2006 WL 2807017, at *45-48 (S.D.Ohio Sept. 27, 2006) (collecting cases). Thus, Cody procedurally defaulted this claim.

Cody argues that this claim is not procedurally defaulted because the Ohio Court of Appeals "failed to 'explicitly' 'explain [ ] its reasons for its conclusions." Doc. 57, p. 11 (bracket in original). This assertion is not well-taken; Cody does not cite legal authority requiring the state courts to explicitly explain its reasons for finding that an untimely filing is untimely. Moreover, the Ohio Court of Appeals explicitly explained its reasons why Cody could not overcome the procedural bar of untimeliness. *Cody*, 2019 WL 3046584, at *6; 2019-Ohio-2824 (stating that Cody did not demonstrate that he was unavoidably prevented from discovering the evidence upon which he relied). Cody also argues that the controlling Ohio statute, R.C. §

2945.79(F), does not define "with reasonable diligence" or "unavoidably prevented" in the context of a defendant's ability to obtain newly discovered evidence to overcome the 120-day filing deadline, and that, therefore, the state rule is discretionary and is not a "clearly applicable state procedural rule."  Doc. 57, p. 33.  This argument has been rejected by the United States Supreme Court and the Sixth Circuit.  *See Stone v. Moore*, 644 F.3d 342, 346-349 (6th Cir. 2011) (explaining that *Beard v. Kindler*, 558 U.S. 53 (2009), and *Walker v. Martin*, 562 U.S. 307 (2011), established that a state procedural rule permitting a state court broad discretion in applying it, including rejecting it on timeliness grounds, can serve as an adequate ground to bar federal habeas relief and holding that the Ohio procedural rule permitting broad discretion that was relied on by the Ohio courts when rejecting the petitioner's untimely motion was, therefore, an adequate state procedural rule).

For cause to excuse his procedural default, Cody again asserts ineffectiveness of trial counsel (Doc. 57, p. 32), but that is his underlying claim; it does not explain why he filed his motion and postconviction petition years after his conviction became final.  Moreover, his motion and postconviction petition were premised upon newly discovered evidence, but that is not what Ground 17 is based on.  Rather, Ground 17 alleges that trial counsel denied him his right to assert an affirmative defense at trial based on *McCoy v. Louisiana*.  Although it appears that Cody relies on his newly discovered evidence to bolster his claim that trial counsel was ineffective in not asserting a CIA defense, the fact that counsel did not assert his CIA defense is not something that Cody has newly discovered.

Moreover, to the extent that Cody might have (but did not) allege as cause the fact that *McCoy v. Louisiana* was decided in 2018 (and thus he could not have raised it earlier), his ineffective assistance of counsel claim would fail because a court considers counsel's actions at

the time of the conduct, not years later.[15]  *See Strickland*, 466 U.S. at 690 (a federal habeas court considers the reasonableness of counsel's actions "as of the time of counsel's conduct").  Additionally, the rule in *McCoy v. Louisiana* was not held to be retroactive and the reasoning in that case does not indicate that the Court intended the rule to apply retroactively.  *See, e.g., Smith v. Hooks*, 2018 WL 9815045, at *6-8 (E.D.N.C. Sept. 19, 2018) (explaining why *McCoy* is not retroactive).  Finally, it is not apparent that the rule in *McCoy* would apply in Cody's case.  In *McCoy*, the Supreme Court held that the trial court erred in permitting trial counsel to concede his client's guilt in a capital case despite the defendant's vociferous objections during trial that he was innocent.  138 S.Ct. at 1505.  Here, Cody's case was not a capital case, his counsel did not concede guilt, and Cody did not object on the record at trial to counsel not pursuing his affirmative defense.  Indeed, it appears that counsel did pursue evidence linked to this defense at trial.[16]

Finally, as above, Cody does not show actual innocence.  Ground 17 is procedurally defaulted.

### D. Cody is not entitled to relief on his remaining grounds

Cody is not entitled to relief on his remaining grounds (Grounds 1-3, 5, and 7-15), which the undersigned discusses below and groups according to the state remedies Cody used to pursue these claims.

#### 1. Ground 1 is procedurally defaulted

In Ground 1, Cody argues that because the Ohio Court of Appeals found, on direct

---

[15] But see Doc. 57, p. 57 (Cody expressly disclaiming that he seeks to apply the holding in *McCoy* to his case).

[16] Prior to trial, while Cody was proceeding pro se, the trial court ruled that he was permitted to assert his CIA defense over the state's objections.  See Doc. 43-2, pp. 102-106 (Tr. Vol. 2).  At trial, Cody's trial counsel referred to Cody's classified work for the U.S. Government during opening statement and explored his work history as an intelligence officer with the U.S. Military.  See Doc. 43-5, pp. 59-62 (Tr. Vol. 5) (opening statement); Doc. 43-20, pp. 44-69 (Tr. Vol. 20) (counsel reviewing Cody's work history with state's witness Al Bansky).

appeal, that the trial court lacked jurisdiction on 12 of 24 counts in the indictment, he was prejudiced by the presentation of evidence at trial on those later-dismissed counts. Doc. 1-1, p. 9. But Cody did not raise this claim on direct appeal to the Ohio Court of Appeals, which he was required to do because this claim is based on the trial court record. *See Perry*, 226 N.E.2d at 108; *Hill*, 842 F.3d at 936. Rather, Cody only argued to the Ohio Court of Appeals that the trial court lacked jurisdiction over counts 13-23, not that evidence related to those counts and count 24 (dismissed by the trial court at the close of evidence at trial) prejudiced him at trial. See Doc. 42-1, pp. 340-344 (Exhibit 45). Although Cody raised this argument in his discretionary appeal to the Ohio Supreme Court, doing so did not "fairly present" this claim. *Castille v. Peoples*, 489 U.S. 346, 349-351 (1989) (raising a claim for the first time to the highest state court on discretionary review is not "fair presentation" for exhausting a federal habeas claim); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."); *Casey v. Moore*, 286 F.3d 896, 916-918 (9th Cir. 2004) (same, collecting cases); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Thus, Cody failed to fairly present this claim and it is unexhausted; because he may no longer present this claim, it is procedurally defaulted. *See Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review.").

Cody does not demonstrate cause for his failure to exhaust this claim. Ineffective assistance of appellate counsel cannot constitute cause because Cody did not cite this as a reason appellate counsel was ineffective in his Rule 26(B) Application; as such, he procedurally

defaulted any such ineffective assistance of appellate counsel claim and does not show cause and prejudice to excuse that procedural default. *Edwards*, 529 U.S. at 451-452.  As explained above, he does not demonstrate actual innocence.  Ground 1 is procedurally defaulted.

### 2. Ground 2 is procedurally defaulted

In Ground 2, Cody alleges a "McCoy v. Louisiana Megaground."  Doc. 1-1, p. 10.  He asserts that the trial court, the prosecution, and/or trial counsel violated his right to decide his defense.  Doc. 1-1, p. 10.  For the reasons explained in the section discussing the related Ground 17, supra, this claim is procedurally defaulted.

### 3. Grounds 3, 5, 7, 8, and 9, ineffective assistance of appellate counsel claims, fail on the merits and are procedurally defaulted

In Grounds 3, 5, 7, 8, and 9 Cody alleges ineffective assistance of appellate counsel claims.  He contends that his appellate counsel was ineffective for failing to raise certain issues on direct appeal: Ground 3, the trial court's denial of Cody's right to present CIA defense witnesses at trial; Ground 5, the trial court's failure to follow the requirements in *Faretta v. California* when it allowed Cody to proceed pro se, or he was properly appointed pro se but he involuntarily and unintelligently relinquished that right in August 2013; Ground 7, the trial court's denial of a continuance based on Cody's incompetency, requiring automatic reversal and a new trial; Ground 8, the failure to give Cody a constitutionally mandated mental health and insanity exam specific to the third-indicted case[17]; and Ground 9, the trial court's lack of subject matter jurisdiction of count 12, identity fraud on Bobby Thompson of Washington State, and the insufficiency of the evidence on this count.  Doc. 1-1, pp. 10-13.

The Ohio Court of Appeals, after setting forth the proper *Strickland* standard governing

---

[17]  The trial court ordered a mental health exam on July 12, 2012, while proceeding in the first two cases Cody was indicted in and prior to the third superseding indictment issued on July 25, 2012.  Cody submits that he was entitled to another mental health exam in the third-indicted case.  But see Doc. 42-1, p. 68 (August 21, 2012 journal entry in the third-indicted case stating that the state and defense stipulated to the competency reports submitted by the psychiatric clinic in the first two cases) (Exhibit 11).

ineffective assistance of counsel claims, denied Cody's claims as follows:

> **[Ground 3:]** {¶8} Cody's first claim is that his appellate counsel failed to argue that the state suppressed exculpatory material. Cody maintains that throughout the relevant period of time he was working for the CIA and, thus, he had lawfully been assigned cover identities, including the ones for the identity fraud charges. Cody also maintains that if the state had not suppressed the CIA information, the jury would have been convinced that he lacked the criminal intent for the theft charges. Cody further claims that the trial court improperly quashed subpoenas of witnesses on this CIA defense, that the subpoenaed witnesses would have testified as to his and the USNVA's work for the CIA and would have eliminated criminal intent. A court is not required to accept as true that which is incredible. *Black v. Berea*, 137 Ohio St.611, 32 N.E.2d 1 (1941); *State v. Mattison*, 23 Ohio App.3d 10, 490 N.E.2d 926 (8th Dist.1985); and *Schaefer v. Cincinnati S.R. Co*., 75 Ohio App. 288, 62 N.E.2d 102 (1st Dist.1945). So too, counsel in the exercise of professional judgment need not raise arguments that are incredible.

> {¶9} Cody's claim that the state suppressed the USNVA's website is countered by the state's affirmation that it provided a complete copy of the website's printout version in the course of discovery. (Pg. 5–6 state's brief in opposition to application to reopen.) Moreover, Cody's assertion that the website would have established his CIA defense is countered by the principle that a court and counsel need not accept as true the incredible.

> {¶10} As a variant on this argument, Cody maintains that the lack of resources and lack of attorneys resulted in the suppression of exculpatory evidence and in the involuntary ineffectiveness of trial counsel, because he and his counsel could not get the necessary evidence to properly defend the charges. He refers to the hearing made on the record by his first appointed counsel who moved to withdraw from the case. That counsel declared that he could not represent Cody in good faith because the defense would require thousands of hours of preparation, and he could not fulfill that role while also representing other clients, even if additional funds were paid. This argument is not persuasive, because it requires too much speculation on what could have been found, what could have been done, what could have been argued, and how that would necessarily have affected the trial. Speculation does not establish prejudice. *State v. Abdul*, 8th Dist. Cuyahoga No. 90789, 2009–Ohio–225, *reopening disallowed*, 2009–Ohio–6300; *State v. Thompson*, 8th Dist. Cuyahoga No. 79334, 2002–Ohio–5957, *reopening disallowed*, 2003–Ohio–4336; and *State v. Piggee*, 8th Dist. Cuyahoga No. 101331, 2015–Ohio–546.

*Cody*, 2017 WL 1507211, at *2; 2017-Ohio-1543.

> **[Ground 5:]** {¶14} Cody's next assignment of error is difficult to discern. He argues that pursuant to *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and *State v. Smith*, 8th Dist. Cuyahoga No. 98093, 2012–Ohio–5420, the trial court erred in allowing him to represent himself or in the alternative deprived him of his right to self-representation by driving him insane through the solitary confinement order. To the extent that Cody argues that the trial court erred by allowing Cody to represent himself, the argument is ill-founded. The judge and Cody reviewed the risks of self-

representation, and the judge finally granted Cody's motion. The record indicates that Cody received legal training at Harvard Law School and practiced criminal law outside of Ohio. The record also shows that while he represented himself, he resorted to multiple legal remedies, endeavored to reach a plea agreement, and conducted himself well during pretrials. To the extent that he argues that the trial court deprived him of his right to self-representation, the argument is not supported by the record. As discussed previously, the record does not show that Cody was going insane during the summer of 2013. Throughout the proceedings, Cody and the trial judge discussed self-representation, and on August 26, 2013, when the trial judge asked Cody if it was his intention to proceed pro se or to have Mr. Patituce resume primary representation, Cody replied: "Thank you, your honor. I wish to turn the case over to Mr. Patituce." (Tr. 493.) Accordingly, this assignment of error is ill-founded.

*Id*. at *3.

**[Ground 7:]** {¶11} Cody's next assignment of error is that he was forced to stand trial while he was incompetent. The record in this case does not support that argument. On July 12, 2012, the trial judge referred Cody to the court psychiatric clinic to determine competency to stand trial. After the evaluation took place, defense counsel and the state stipulated to the competency report on August 21, 2012. Throughout the proceedings, Cody raised the issue of representing himself.[3] Eventually, on January 30, 2013, after repeatedly and thoroughly reviewing the matter, the judge allowed Cody to represent himself with assigned counsel, Mr. Patituce, as advisory counsel. Cody then inundated the court with motions for discovery, dismissal, in limine, suppression, grand jury transcripts, and assistance, and with reply briefs to the state's opposition briefs.[4] Cody also filed a mandamus action and an affidavit of disqualification of the trial judge. Cody then on August 26, 2013, stopped representing himself and accepted appointed counsel for trial, which commenced on September 30, 2013. Reviewing the transcripts of the pretrial hearings while Cody represented himself shows that his comments were thoughtful, pertinent, intelligent, and articulate. At the end of the trial, the judge noted that Cody played an active role in his defense, paying close attention to the evidence, taking notes, conferring with counsel, and providing information and suggestions for cross-examination. (Tr. 4513.) These are not the actions of an incompetent person. Thus, appellate counsel in the exercise of professional judgment could decide not to raise this argument.

[FN3] Evidence was presented at trial that Cody had attended law school and had practiced law for awhile.

[FN4] Cody filed over 120 pro se motions during the course of the proceedings. In some of these motions, he had the foresight to try to form the foundation of appellate arguments.

*Id*.

**[Ground 8:]** {¶22} Cody further complains that the mental competency examination initially ordered for Case II should not have been and could not have been also used for

CR–565050, because the dates and charges differed from the two cases. This is unpersuasive because the order of competency was to determine competency to stand trial, not whether Cody was competent during the commission of the offenses. Additionally, the nature and times of the charged offenses were not that different. Furthermore, as mentioned above, Cody's actions throughout the proceedings were not those of an incompetent.

*Id*. at *5.

**[Ground 9:]** {¶16} Cody then argues that there was insufficient evidence and lack of jurisdiction to convict him of Count 12, identity fraud, in Ohio using the name Bobby Thompson. His reliance *Strassheim v. Daily*, 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed.735 (1911), is misplaced.[] In *Daily*, the United States Supreme Court stated that obtaining money under false pretenses warrants punishment by the aggrieved state even if the offender did not come into the state until after the fraud was complete. Furthermore, the state of Ohio showed that Bobby Thompson was not Cody's name and that he used Bobby Thompson in submitting multiple registrations and records to Ohio to allow the USNVA to collect money in Ohio. (Tr. 2951–3000.) This argument is meritless.

*Id*. at *4.

The Ohio Court of Appeals' decision is not unreasonable, and Cody's claims that appellate counsel was ineffective for failing to raise the issues in Grounds 3, 5, 7, 8, and 9 fail on the merits.  To the extent that Cody raises the underlying claims as stand-alone claims, such claims are procedurally defaulted because they are based on the trial court record, Cody did not raise them on direct appeal and he does not demonstrate cause, prejudice, or manifest injustice to overcome the procedural default of these claims.

### 4. Grounds 10, 11, 12, and 12(1) are procedurally defaulted

In Ground 10, Cody alleges that trial counsel was ineffective and violated his decision-making as to trial strategy in violation of autonomous decision making set forth in *Faretta v. California* and *McCoy v. Louisiana*.  Doc. 1-1, p. 14.  The *McCoy* aspect of this claim is procedurally defaulted for the reasons discussed in Grounds 17 and 2, *supra*.  To the extent Ground 10 alleges that trial counsel was ineffective for not pursuing witnesses establishing an affirmative defense that Cody was affiliated with the CIA, this is the same claim Cody alleged in

Ground 16, and, for the same reason, it is procedurally defaulted.  To the extent that Ground 10 alleges that trial counsel violated Cody's rights pursuant to *Faretta*, this is the same underlying claim Cody alleged in Ground 5.  And, for the same reason, it is procedurally defaulted.

In Ground 11, Cody alleges that the trial court lacked subject matter jurisdiction over counts 3-9.  Doc. 1-1, p. 14.  He raised this issue in his first postconviction petition, which the Ohio Court of Appeals found barred by res judicata, explaining,

> {¶ 21} Counts 3–9 charged Cody with money laundering. In its findings of fact and conclusions of law, the trial court found, in part, that Cody identified no set of facts from outside the record that identified why jurisdiction and venue were not capable of being raised in his direct appeal. We agree.

> {¶ 22} In his direct appeal, Cody raised a jurisdictional challenge as to the identity fraud counts, Counts 13 to 23. He certainly could have raised any argument with respect to jurisdiction on the money laundering convictions, Counts 3–9, in that appeal as well if he wanted to challenge the trial court's jurisdiction and venue. Because he did not, his claim is barred by res judicata.

*Cody*, 2015 WL 4133281, at *4; 2015-Ohio-2764.  Thus, this claim is procedurally defaulted, *see Williams*, 460 F.3d at 806; *Maupin*, 785 F.2d at 138; *Buell*, 274 F.3d at 349, and Cody does not allege cause to excuse the procedural default or demonstrate actual innocence.

In Ground 12, Cody alleges that the state failed to disclose exculpatory material and information relating to his CIA defense, amounting to a *Brady* violation and prosecutorial misconduct.  Doc. 1-1, p. 15.  He raised this issue in his first postconviction petition, which the Ohio Court of Appeals found barred by res judicata, explaining,

> {¶ 23} In the third assignment of error, Cody challenges the alleged withholding of exculpatory evidence. He claims that the state withheld military and intelligence community files on him and such actions "occurred de hors the record." He argues that because the state's actions occurred outside the record he was only able to bring the current claim in a petition for postconviction relief as opposed to direct appeal.

> {¶ 24} The trial court disagreed and again found that the sole support for Cody's argument was contained in his own self-serving affidavit. The court determined that Cody failed to show that the state withheld any military files, files concerning Cody's relationship to any other federal agency, or other exculpatory material, and identified no

set of facts from outside the record. We agree; Cody fails to support his claim that the state acted outside the record or that he was prevented from making this claim on direct appeal with more than unsupported assertions.

{¶ 25} During pretrial discovery, Cody made multiple discovery requests, which the state responded to. Although many of the state's responses were that the discovery Cody requested did not exist, Cody is unable to provide any evidence that the state acted improperly.

{¶ 26} The issue Cody complains of could have been fairly determined without resorting to evidence outside the record; therefore, he is barred by res judicata from raising these issues in a postconviction petition.

*Cody*, 2015 WL 4133281, at *4-5; 2015-Ohio-2764.  This claim is procedurally defaulted and Cody has not alleged cause to excuse the procedural default.  Although he did allege that appellate counsel was ineffective for not raising this claim in his Rule 26(B) Application (Doc. 42-3, p. 56, Exhibit 75), the Ohio Court of Appeals rejected his claim on the merits (Doc. 42-3, pp. 204-205, Exhibit 77); thus, any alleged ineffective assistance of appellate counsel does not constitute cause to excuse the procedural default.  Finally, Cody does not demonstrate actual innocence.

In Ground 12(1), Cody alleges a claim for vindictive prosecution and prosecutorial misconduct for the state suppressing evidence of his CIA defense and "misrepresenting" that Cody had any affiliation with the CIA.  Doc. 1-1, p. 15.  The portion of this claim describing suppression of evidence related to Cody's CIA affiliation is duplicative of Ground 12, and, for the same reason, is procedurally defaulted.  The portion of this claim containing allegations not encompassed in Ground 12 (vindictive and selective prosecution) is also procedurally defaulted because Cody did not raise this issue on appeal to the Ohio Court of Appeals.  Rather, Cody argued, on appeal of the trial court's denial of his first postconviction petition, that the trial court abused its discretion when it failed to hold a hearing on his claim of vindictive and selective prosecution.  See Doc. 42-2, p. 251 (Exhibit 67).  Thus, Cody failed to present this claim to the

state courts; therefore, it is unexhausted, and because state law no longer allows him to raise this claim, it is procedurally defaulted. *Williams*, 460 F.3d at 806; *McMeans*, 228 F.3d at 681 (to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts). He does not demonstrate cause to excuse his procedural default or actual innocence.

In sum, Grounds 10, 11, 12, and 12(1) are procedurally defaulted.

### 5. Grounds 13, 14, and 15 are procedurally defaulted

In Ground 13, Cody alleges the state committed *Brady* violations with respect to evidence that he had an affiliation with the CIA and/or the Office of President George W. Bush. Doc. 41, p. 1. In Ground 14, Cody alleges ineffective assistance of trial counsel for "the denial to Cody at trial of exculpatory evidence" showing he had an affiliation with the CIA and/or the Office of President George W. Bush. Doc. 41, p. 2. And in Ground 15, Cody alleges prosecutorial misconduct in suppressing evidence showing that he had an affiliation with the CIA and/or the Office of President George W. Bush. Doc. 41, p. 2.

These three grounds are procedurally defaulted. Cody asserts that he presented these claims in his second postconviction petition based on new evidence that he filed in 2018. Doc. 41, p. 1; Doc. 42-3, pp. 569-623 (Exhibit 93). The Ohio Court of Appeals affirmed the trial court's denial of his claims, explaining,

> {¶ 34} We have reviewed Cody's motions and evidence in support of his motions. None of the documents attached to Cody's request for leave clearly and convincingly demonstrate that he was unavoidably prevented from discovering the evidence on which he relies; therefore, he was required to file his request for leave either within 120 days of the verdict (for a motion based on newly discovered evidence) or within 14 days of the verdict (for any of the other permissible reasons enumerated in Crim.R. 33(A)). Cody's request for leave to file his motion for new trial is untimely under Crim.R. 33.

> {¶ 35} Cody's postconviction petition is likewise untimely. Cody has not shown that he was unavoidably prevented from discovering any purported new evidence.

{¶ 36} Therefore, the trial court's decision to deny the untimely Crim.R. 33 motion and postconviction petition are affirmed and the second assignment of error is overruled.

*Cody*, 2019 WL 3046584, at *6; 2019-Ohio-2824.  Untimeliness is a proper basis upon which the state court may deny relief.  *Smith*, 780 Fed. App'x 208, 219-220; *Hill*, 2006 WL 2807017, at *45-48.  Thus, Cody procedurally defaulted this claim, and he does not demonstrate cause to excuse his procedural default or actual innocence.

### IV. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Cody's habeas Petition be **DISMISSED in part and DENIED in part**.

Dated: March 24, 2020

*/s/ Kathleen B. Burke*
_____
Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).