## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

John Cody,
Also known as
Bobby Thompson,

Case No. 1:18cv1787

                **Petitioner,**

JUDGE PAMELA A. BARKER

       **-vs-**

Magistrate Judge Kathleen Burke

Ed Sheldon,
Warden,

MEMORANDUM OPINION AND
ORDER

              **Respondent**

This matter is before the Court upon the Report & Recommendation ("R&R") of Magistrate Judge Kathleen Burke (Doc. No. 65), which recommends that Petitioner John Cody's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be dismissed in part and denied in part. Petitioner has filed Objections to the R&R. (Doc. No. 74-1.) For the following reasons, Petitioner's Objections (Doc. No. 74-1) are OVERRULED, the Report & Recommendation (Doc. No. 65) is ADOPTED as set forth herein, and the Petition (Doc. No. 1) is DENIED.

## I.    Summary of Facts

The following is a brief summary of the facts describing Cody's state court conviction as summarized by the Ohio Court of Appeals:

> {¶ 2} This case arises from an investigation regarding the United States Naval Veteran's Association ("USNVA"), a charity organized and created by a person holding himself out to be Bobby Thompson. Through the investigation, it was discovered that the USNVA was a sham, fabricated by a person named John Donald Cody, who manipulated unsuspecting individuals across the United States to donate to this charity, unlawfully procuring millions of dollars.

> {¶ 3} In mid–2010, the state of Ohio began its investigation into the USNVA after a story was published in the St. Petersburg Times that the charity was fictitious. Through

its investigation, the state revealed that Ohio residents had been solicited by various professional fundraisers contracted by USNVA to donate money to the USNVA. It was discovered that approximately $2 million was solicited on behalf of the USNVA from resident-donors in the state of Ohio.

{¶ 4} As a result of the investigation, on October 13, 2010, Appellant was indicted in Cuyahoga C.P. No. CR–10–543025 on charges of engaging in a pattern of corrupt activity involving the USNVA, money laundering, and aggravated theft. In December 2010, another indictment was issued against Appellant in Cuyahoga C.P. No. CR–10–545577 on 22 additional charges, including engaging in a pattern of corrupt activity, aggravated theft, money laundering, tampering with records, and identity fraud.

{¶ 5} A warrant was subsequently issued for Appellant's arrest. In April 2012, Appellant was finally apprehended in the state of Oregon.

*State v. Cody*, 34 N.E.3d 189, 191 (Ohio App. 8th Dist. 2015).[1]

## II.  Relevant Procedural History[2]

### A.  Trial Court Proceedings

In May 2012, Cody was arraigned, assigned counsel, and pleaded not guilty in Cuyahoga County Court of Common Pleas Case Nos. CR-10-543025 and CR-10-545577.  (Doc. 42-1, Exhs. 5, 6.)  On July 12, 2012, in Case No. CR-10-545577, the state trial court referred Cody to the court's psychiatric clinic for an evaluation.  (Doc. 42-1, Exh. 7.)

On July 25, 2012, Cody was indicted by the Cuyahoga County Grand Jury in a superseding indictment on the following twenty-four (24) counts: (1) one count of engaging in a pattern of corrupt activity (Ohio Rev. Code § 2923.32(A)(1)) (Count 1); (2) one count of complicity to theft (Ohio Rev.

---

[1] In a subsequent opinion, the state appellate court further summarized the facts as follows: "Using professional fund-raisers, the USNVA collected millions of dollars, including approximately $2,000,000 from Ohioans. Cody deposited the money collected for the USNVA into various bank accounts. Then he and a codefendant withdrew money from the accounts, and the money could no longer be traced. During the relevant time, Cody moved around the country, including Florida and Oregon. When he was arrested in Oregon in April 2012, he had identification papers for multiple people and over $900,000 in cash."  *State v. Cody*, 2017 WL 1507211 at * 1 (Ohio App. 8th Dist. Apr. 21, 2017).

[2] The Court's recitation of the relevant procedural history is not intended to be exhaustive.  Rather, the Court will set forth only that procedural history necessary to a resolution of the pending Objections.

Code § 2913.02(A)(3)) (Count 2); (3) seven counts of complicity to money laundering (Ohio Rev. Code § 1315.55(A)(1)) (Counts 3-9); (4) one count of tampering with records (Ohio Rev. Code § 2913.42(A)(2)) (Count 10); (5) one count of complicity to tampering with evidence (Ohio Rev Code § 2913.42(A)(2)) (Count 11); (6) twelve counts of identity fraud (Ohio Rev. Code § 2913.49(B)) (Counts 12-23); and (7) one count of possession of criminal tools (Ohio Rev. Code § 2923.24) (Count 24). (Doc. 42-1, Exh. 9.) This case was assigned Cuyahoga County Court of Common Pleas Case No. 12-CR- 565050. (*Id.*) Cody, through counsel, entered a plea of not guilty. (Doc. 42-1, Exh. 10.)

The previous indictments issued in Case Nos. CR–10–543025 and CR–10–545577 were subsequently dismissed and the State proceeded on the charges in Case No. CR-12-565050. (Doc. 42-1, Exhs. 15, 16.) On August 21, 2012, the parties stipulated to the competency reports that had been prepared as part of Cody's psychiatric evaluation in Case No. CR-10-545577. (Doc. 42-1, Exh. 11.)

On January 30, 2013, Cody filed a waiver of attorney and sought to represent himself. (Doc. 42-1, Exh. 18.) After a hearing, the state trial court permitted Cody to proceed *pro se* and appointed his then-counsel, Joseph Patituce, as advisory counsel. *See* Doc. 42-1, Exh.19; Doc. 43-1 at Tr. 125-145 (Tr. Vol. 1).

On August 26, 2013, a month before trial, Cody, on the record, relinquished his position as *pro se* counsel and Mr. Patituce was assigned as counsel of record. *See* Doc. 42-1, Exh. 34; Doc. 43-2 at Tr. 493 (Tr. Vol. 2). Defense counsel then filed a motion to continue trial, which the State opposed. (Doc. 42-1, Exhs 35, 36.) The state trial court denied Cody's motion for a continuance. (Doc. 42-1, Exh. 37.)

3

On September 30, 2013, the matter proceeded to a jury trial.  (Doc. No. 43-1.)  After a three-week trial, Cody was found guilty of Counts 1-23 as charged in the superseding indictment.  (Doc. No. 42-1, Exh. 40.)  Count 24 (possession of criminal tools) was dismissed by the state trial court.  (*Id.*)

On December 10, 2013, Cody, through counsel, filed a motion for a new trial, arguing that the jury improperly considered the fact that he did not testify.  (Doc. 42-1, Exh. 41.)  On December 16, 2013, the state trial court denied Cody's motion.   (Doc. 43-22 at Tr. 4534-4535 (Tr. Vol. 22)).  The state trial court proceeded to sentencing and ordered Cody to serve ten years on Count 1; eight years on Count 2 to run consecutively with Count 1; 24 months on each of Counts 3-9, served concurrently to each other but consecutively to Counts 1 and 2; 24 months on Counts 10-11, served concurrently to each other but consecutively to Counts 1, 2 and 3-9; five years on Count 12, served consecutively with Counts 1, 2, 3-9 and 10-11; and 12 months on Counts 13-23, served concurrently to each other but consecutively to Counts 1, 2, 3-9, 10-11 and 12, for an aggregate sentence of 28 years in prison.  (Doc. No. 42-1, Exh. 43.)  In addition, the state trial court ordered Cody to spend every Veteran's Day in solitary confinement.  (*Id.*)

## B.     Direct Appeal

In December 2013, Cody, through new counsel, filed a timely appeal of his convictions and sentence in the state appellate court, in which he raised the following three grounds for relief:

> 1. The trial court erred, and violated due process, when it entered convictions for eleven counts of identity fraud for which it did not have jurisdiction. (Fifth and Fourteenth Amendments, United States Constitution; Sections 10 and 16, Article I, Ohio Constitution. R.C.2901.11. December 17, 2013 Journal Entry of Sentence).
>
> 2. The trial court violated the Appellant's rights to due process and a fair trial when it allowed the admission of irrelevant and overly prejudicial testimony and documentary evidence referencing a potential future charitable organization Appellant was

4

establishing. Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution; Evid.R. 402; 403 (Tr. at 1215-1217; 1965-1967; 2223-2243; 3841-3861; 3711-3716; 3832-3858; Exh. 26-1).

3. The trial court erred when it imposed a day of solitary confinement on each Veteran's Day (Tr. at 4550; Dec. 16, 2013 Journal Entry).

(Doc. 42-1, Exhs. 44, 45.)

On June 11, 2015, the state appellate court sustained Cody's first ground for relief, finding that the State of Ohio did not have jurisdiction over the 11 counts of identity fraud contained in Counts 13 through 23 of the indictment. *State v. Cody*, 34 N.E.3d at 191-196. The court vacated Cody's convictions on those counts and remanded for "a new judgment entry of conviction to reflect that Counts 13 through 23 are vacated, including [Cody's] 12- month total sentence imposed for these offenses." *Id*. at 196. In addition, the state appellate court agreed with Cody's third ground for relief and ordered the state trial court to vacate the imposition of solitary confinement on Veteran's Day. *Id*. In all other respects, Cody's convictions and sentence were affirmed. *Id.*

Proceeding *pro se*, Cody timely appealed to the Supreme Court of Ohio. In his Memorandum in Support of Jurisdiction, he raised the following propositions of law:

1. The Court of Appeals Lacked Jurisdiction to make any hypothetical ruling, or even to address the subject at all, on any Evid. R. 401-404(B) issues; and the fact evidence came in as relevant to dismissed Counts 13-24 [identity fraud (others) and Possession of Criminal Tools] required jurisdictional remand to the Common Pleas Court for retrial as to how that evidence was to come in, or if it should come in at all.

2. Where an Appellate Court creates a new Evid. R. 101, 105, 401-404(B) issue which stems from a preliminary holding or finding, a criminal defendant may retain a constitutional right to trial on such issue(s) by a common pleas court and jury, under the 6th and 14th Amendments to the United States Constitution, and Art. I, §§5 and 10 of the Ohio Constitution.

3. The Trial Court Lacked Subject Matter Jurisdiction to Proceed on CR-12-565050 A, At All, because the entire indictment was void at the moment of its presentment by the Grand Jury.

5

4. If the Appellate Court had jurisdiction to decide the hypothetical evidentiary issues it did in Section III of its Opinion, the Harmless Error Standard, not the Plain Error Standard, should have applied, and the case remanded for new trial.

4(A). Assuming the Appellate Court had authority to rule on the 403/404(B) issues raised, the introduction of that evidence amounted to character assassination of the Defendant unfairly prejudicing a trial against him, and therefore new trial was mandated.

(Doc. 42-1, Exh. 54) (as in original).  The Supreme Court of Ohio declined jurisdiction on October 28, 2015.  (Doc. No. 42-1, Exh. 56.)

### C.      Remand from Appellate Court

On remand from the state appellate court, the state trial court issued a journal entry on December 7, 2015, vacating Counts 13-23 and the concurrent 12-month aggregate sentence for those counts.  (Doc. 42-1, Exh. 59.)

### D.      Post-Conviction Filings

In June 2014, while his direct appeal was pending, Cody filed his first *pro se* petition for postconviction relief in the state trial court.  (Doc. No. 42-1, Exh. 60.)  Therein, he raised the following five claims:

1. Ineffective Assistance of Defense Counsel Mr. Patituce – Denial of 6th/14th Amendment Rights, U.S. Const.; Sec. 10, Art. I, Ohio Const. Rights.

2. Lack of territorial jurisdiction and venue on Counts 3-9 (Money Laundering) and Counts 13-23 (Identity Fraud), as required by the federal and Ohio constitutional fair trial and due process mandates, and the Ohio jurisdictional/venue statutes (2901.11/2901.12) (5th/14th/6th Amend, U.S. Const; Sec 16, Art I, Sec. 5, Art. I, Ohio Const. – Right of Due Process, Right to Fair Trial.

3. Lack of State provided required discovery (off the record, outside the record) relating to Petitioner's Notice of [CIA] Defense:[3] in violation of *Brady v. Maryland*

---

[3] Cody's reference to his "CIA Defense" is to his argument that, throughout the relevant time period, he was working for the Central Intelligence Agency ("CIA") and had been lawfully assigned various cover identities, including the ones

and the federal and Ohio Constitutions' Due Process clauses, (5th/14th Amends., U.S. Const.; Sec 16, Art I, Ohio Const.), and the Right to Effective Counsel, Compulsory Process (6th Amend. U.S., Const.; Sec. 10, Art. I, Ohio Const.) and Right to a Fair Trial (6th Amend., U.S. Const.; Sec. 5, Art. I, Ohio Const.)

4. Denial of Due Process Rights (5th/Fourteenth Amends, U.S. Const.; Sec. 16, Art. I), Denial of Right to U.S. Const; 5 Art. I Ohio Excessive Fines/Cruel and Unusual Const. Sec. 9, Art. I Ohio Const.) conditions imposed on Defendant pre-trial while in custody by agents of the State dehors record, and trial counsel's ineffectiveness in not raising these issues sufficiently with the Court. Also claim's constitutional basis includes violations of 14th Amend., U.S. Const. and Ohio Const. prescriptions for Equal Protection of the Law.

5. Violation of Due Process Clauses (5th/14th Amendments, U.S. Const. and Ohio Const. prescriptions for Equal Protection of Amendments, U.S. Const., Sec. 16 Art. I, Ohio Const.), because the Attorney General's Office brought and maintained the prosecution for reasons forbidden by the U.S. and Ohio Constitutions, to wit: prosecutorial misconduct involving (a) Vindictive Prosecution, (b) Selective Prosecution, *U.S. v. Armstrong*, 517 U.S. 456, 463 (1996), *U.S. v. Lupton*, 2008 U.S. Dist. LEXIS 87217 (Ea. Dist. Wis.); prosecutorial misconduct (suppression of exculpatory Brady material….

(*Id.*) (as in original).  In October 2014, the state trial court denied Cody's petition.  (Doc. 42-2, Exh. 65.)

Cody filed a timely appeal, in which he raised nine (9) assignments of error.[4]  (Doc. No. 42-2, Exhs. 66, 67.)  On July 9, 2015, the state appellate court overruled Cody's assignments of error

---

relating to the identity fraud charges.  *See, e.g, State v. Cody*, 2017 WL 1507211 at *2 (Ohio App. 8th Dist. April 21, 2017).

[4]  The state appellate court characterized Cody's nine assignments of error as follows:  "(1) trial counsel was ineffective because counsel refused to pursue certain witnesses that would have established that Cody was working for the CIA; and did not pursue a line of defense that Cody was medically incompetent to stand trial or assist in his defense due to beatings he received in jail; (2) the trial court abused its discretion by denying his petition based on his argument that Counts 3-9 and 13-23 of the indictment should have been dismissed; (3) exculpatory evidence was withheld from him; (4) the trial court should have held a hearing on his claim that his sentence was discriminatory, disproportionate, and excessive; (5) the trial court erred when it did not hold a hearing on his claims against the prosecutor; (6) the trial court erred in granting summary judgment in favor of the state; (7) the trial court erred in granting summary judgment to the state without holding an evidentiary hearing to determine Cody's credibility; and (8) and (9) the trial court erred in adopting the state's findings of fact and conclusions of law."  *State v. Cody*, 2019 WL 3046584 at * 1 (Ohio App. 8th Dist. July 11, 2019).

and affirmed the judgment of the trial court.  *See State v. Cody*, 2015 WL 4133281 (Ohio App. 8th Dist. July 9, 2015).  Cody appealed to the Supreme Court of Ohio, which declined his discretionary appeal.  *See State v. Cody*, 143 Ohio St.3d 1501 (2015).  He also filed a petition for a writ of certiorari in the Supreme Court of the United States, which was denied.  *Thompson v. Ohio*, 578 U.S. ——, 136 S.Ct. 2023, 195 L.Ed.2d 228 (2016).

Meanwhile, in June 2015, Cody filed a *pro se* Notice of Intent to File Application to Reopen Direct Appeal pursuant to Ohio App. R. 26(B).  (Doc. No. 42-3; Exh. 74.)  In his Application, he raised the following fourteen (14) grounds for relief:

1. Appellate Counsel failed to argue the State suppressed outcome determinative required *Brady* disclosures, related due process violations, and the forced ineffectiveness of trial counsel.

2. Appellate Counsel failed to argue it was error for the trial court to deny Defendant any witnesses at trial in violation of the 5th Amendment's right to equal protection, the 6th Amendment's right to compulsory process, and the 14th Amendment's right to due process of law.

3. Appellate Counsel failed to argue automatic reversal was required because the Defendant was forced to stand trial while incompetent, violating the standards of *Pate v. Robinson*, 383 U.S. 375 (1966) and *State v. Were*, 94 Ohio St. 3d 173 (2002).

4. Appellate Counsel failed to argue that the trial court's order (JE 3.19.2013) placing the Defendant, after he had been appointed counsel *pro se*, and through 12.16.2013, in solitary "no contact" confinement in the Cuyahoga County jail pre-trial, and other court and jail imposed conditions [sic] pertinent to that confinement, exacerbated the Defendant's mental state of dysfunctional incompetence to stand trial, in violation of the Constitution's prohibition against cruel and unusual punishment, because that placement and those conditions [sic] met that standard and the trial court had a penchant for punishing the defendant with solitary confinement [see, Sentencing order, JE 12.17.2013; this Court's holding that portion of the sentence outside the boundaries of Ohio permissible sentences, direct appeal, *State v. Thompson* (caption as retained by Ohio Supreme Court 2015-Ohio-4468), 2015-Ohio 2261]; *Bell v. Wolfish*, 441 U.S. 520 (1979). The trial court's solitary "no contact" order bore no stated rationale; it had no purpose and/or was overly punitive or was an exaggerated response to a fictional or perceived concern.

8

5. Appellate counsel failed to argue Defendant was denied his right to testify on his own behalf under the 6th and 14th Amendments U.S. Constitution, pursuant to his holdings of *Sheens v. Haskis*, 4 Fed. Appx. 236 (6th Cir., 2001), and/or to argue trial counsel's ineffectiveness related thereto.

6. Appellate Counsel failed to argue the requirements of *Faretta v. California*, 422 U.S. 806 (1975) and *State v. Smith*, 2012-Ohio-5420 (Cuyahoga Cty, 2012) were not met in the appointment of Defendant as counsel *pro se* or, in the alternative, if Defendant were effectively appointed, he was forced involuntarily and unintelligently to relinquish that appointment in violation of due process.

7. Appellate counsel failed to argue that the trial court's failure to rule on pre-trial motions in CR-12-565050A denied the Defendant his right to a fair trial and due process of law, pursuant to *U.S v. Ruiz*, 2536 U.S. 622 (2002) *et. al* because the defendant prosecution when they make legitimate requests by motion sufficiently in advance of trial requesting ruling on fundamental questions as to how the trial is to proceed, and its parameters, are entitled to court guidance in preparation where one side of the case alone, took 6 weeks of evidence presentation.

8. Appellate counsel failed to argue Count 12 should be dismissed for insufficiency of the evidence, judgment contrary to the weight of the evidence and lack of subject matter jurisdiction under *Stassheim v. Daily*, 331 U.S. 280 (1911).

9. Appellate counsel failed to argue that the tried indictment should have been dismissed for denial of Quick and Speedy Trial, a violation of the Defendant's due process rights pursuant to the 6th and 14th Amendments, Article I §10 of the Ohio Constitution; *State v. Sloane*, 2009-Ohio App. LEXIS 1022 (Mahoning Cty., 2009); and *State v. Johnson*, 2013-Ohio-856 (Butler Cty., 2013). The mental competency examination ordered for CR-10-545577A did not carry over, and could not have carried over, into CR-12-565050A because the subject matter of the examination as to the charges was fundamentally different for the two cases, and because the trial court could not have intended for such a carryover into a case which did not exist at the time of the order.

10. Appellate counsel failed to argue that, if the trial court's order for a mental competency examination did not carry over from 10-545577A to 12- 565050-A, then Defendant's due process rights to a competency exam and R.C. § 2945.371(G) finding in 12-565050A were not met.

11. Appellate counsel failed to argue evidence of Defendant's protected medical and dental information at trial should have been stricken.

12. Appellate counsel failed to argue it was contrary to Ohio law on allied offenses not to run the sentences on Count 2 with Counts 3-9 as concurrent.

13. Appellate counsel failed to argue that a superfine and costs imposed on the Defendant were contrary to law and void *per se*.

14. Appellate counsel failed to argue that the trial court's sentence was contrary to Ohio law, and to the equal protection and due process clauses of both Constitutions because it failed to make a singular review of consistency and proportionality with the Co-Defendant's sentence. Alternatively, if the underlying argument is rejected, or not heard on Re-Opening causing Blanca Contreras' cases are not part of the record herein, thus causing Appellant to lose this claim, Appellate counsel, by not moving for inclusion, caused Appellant to suffer the prejudice described in the supporting Affidavit.

(Doc. 42-3, Exh. 75.) (as in original). The state appellate court denied Cody's 26(B) Application on the merits on April 21, 2017. *See State v. Cody*, 2017 WL 1507211 (Ohio App. 8th Dist. April 21, 2017). Cody appealed, and the Supreme Court of Ohio thereafter declined jurisdiction on July 26, 2017. (Doc. No. 42-3, Exhs. 78, 81.)

Nearly a year later, on June 13, 2018, Cody filed, in the state trial court, a *pro se* motion for leave to file a delayed motion for new trial. (Doc. 42-3, Exh. 83.) Therein, he argued that he was unavoidably prevented from discovering evidence of prosecutorial misconduct and evidence of an official CIA document indicating that Cody had a classified affiliation with the CIA. (*Id*.) He simultaneously filed a pleading titled "*In Limine* Motion for New Trial/Request for R.C. 2953.21 et seq. Post-Conviction Relief." (Doc. 42-3, Exh. 84.)

On July 5, 2018, Cody filed a *pro se* "Petition to Vacate or Set Aside Judgment of Conviction or Sentence (hereinafter 'PCRP')" pursuant to Ohio Rev. Code § 2953.21, again arguing that he was unavoidably prevented from discovering evidence disclosing his alleged CIA classified affiliation because of prosecutorial misconduct in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. 42-3, Exh. 87.) He also asserted a violation of *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), arguing that his trial attorney interfered with his autonomous right to pursue his chosen "CIA defense"

10

strategy.  (*Id.*)  In orders issued on July 30, 2018, the trial court denied all three filings. (Doc. 42-3, Exh. 88.)

On August 6, 2018, Cody filed a "Petition to Vacate Judgment of Conviction and Sentence made 12.16.2013 ('PCRP3')," in which he argued that his sentence was void because the trial court did not follow mandatory sentencing requirements under Ohio law.  (Doc. 42-3, Exh. 89.)  On August 14, 2018, the trial court denied Cody's petition.  (Doc. 42-3, Exh. 90.)

Cody appealed the trial court's rulings.  (Doc. No. 42-3, Exh. 91.)  The state appellate court subsequently consolidated his three appeals.  (Doc. No. 42-3, Exh. 92.)  In his merits brief, Cody raised fourteen assignments of error, which are set forth in full in the Magistrate Judge's Report & Recommendation and will not be repeated herein.  (Doc. No. 42-3, Exh. 93.)

On July 11, 2019, the state appellate court issued a decision affirming the trial court's rulings. *See State v. Cody,* 2019 WL 3046584 (Ohio App. 8th Dist. July 11, 2019).    Finding Cody's assignments of error difficult to decipher, the state appellate court construed his arguments as raising the following two assignments of error:

> 1. Cody argues that he was not properly informed of his sentence on Count 1, engaging in a pattern of corrupt activity.
>
> 2. Cody argues that there is "new evidence" that is both "material" and "outcome determinative" and he should be granted a new trial and postconviction relief.

*Id.*  The state appellate court rejected the first assignment of error as barred by the doctrines of law of the case and *res judicata,* and rejected the second assignment of error because "[n]one of the documents attached to Cody's [petition] clearly and convincingly demonstrate that he was unavoidably prevented from discovering the evidence on which he relies."  *Id.* at * 6.  Cody appealed

11

to the Supreme Court of Ohio, which declined to accept jurisdiction pursuant to S. Ct. Prac. R. 7.08(B)(4).

Meanwhile, on April 10, 2019, Cody filed a *pro se* Petition to Vacate or Set Aside Judgment of Sentence in the state trial court on the basis of the United States Supreme Court's decision in *Timbs v. Indiana*, 139 S. Ct. 682 (2019). (Doc. No. 42-4, Exh. 97.) The state trial court denied the Petition on April 15, 2019. (Doc. No. 42-4, Exh. 98.) The state appellate court affirmed on September 24, 2020. *See State v. Cody*, 2020 WL 5667344 (Ohio App. 8th Dist. Sept. 24, 2020). It does not appear that Cody appealed this decision to the Supreme Court of Ohio.

### E.    Federal Court Proceedings

On July 24, 2018,[5] Cody filed a *pro se* Petition for Writ of Habeas Corpus in this Court. (Doc. No. 1.) Therein, he asserts the following grounds for relief:

> **Ground One**: Where subject matter jurisdiction of the trial court was found not to exist on 12 out of 24 counts of Cody's indictment, the due process clauses and fair trial concepts of the United States Constitution entitled the defendant to new trial on the remaining convicted-upon counts without the jury considering evidence upon the dismissed counts, if at all, with the taint of a criminal conviction attached to each, and such consideration having taken place, not in the context of res gestae, but only in the context of relevance to criminal guilt as charged on those dismissed counts, on the ground that, under the circumstances of Cody's case, and defense he forwent involuntarily, (but in part) because of that consideration, he was unduly prejudiced by the circumstances of the presentation of the evidence on Counts 13-24 at trial.

> **Ground Two**: Cody's prerogative pursuant to the 6th Amendment to decide upon the objective of his defense was violated by the activities of the prosecution, the trial court, and/or trial counsel Patituce, or one or more of them acting in complicity with another, or one or more than one other, requiring vacation of the 12.16.2013 judgment without the necessity of Cody showing prejudice.

---

[5] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988). While the Petition herein did not arrive at the Court for filing until August 2, 2018, Cody states that he placed it in the prison mailing system on July 24, 2018. (Doc. No. 1 at PageID# 7.) Thus, the Court will consider the Petition to be filed on July 24, 2018.

**Ground Three**: In violation of the 6th Amendment and the 14th Amendment's right to due process of law, of the 5th Amendment's right to compulsory process, the trial court denied the Defendant any of his 'CIA defense' witnesses at trial by failing to provide the Defendant with pro se requested defense witnesses to be served with subpoenas; by quashing all pro se defense expert witnesses; by forcing the Defendant, through the above, and by the pressures of solitary confinement, to accept appointed counsel who was refusing, as a matter of trial strategy contrary to the will of the Defendant, to pursue the CIA defenses, including demanding these witnesses; and Appellate Counsel failed to raise or argue the above in violation of his Strickland responsibilities.

**Ground Four**: The Defendant was denied his right under the 6th and 14th Amendment to the U.S. Constitution to testify on his own behalf at trial by the trial court and/or by the forced or unforced ineffectiveness of trial counsel related thereto, pursuant to [clearly established federal law as explained by] *Sheens v. Haskins*, 4 Fed. Appx. 236 6th Cir. 2001) et al., and Appellate Counsel failed to raise or argue the above in violation of his Strickland responsibilities.

**Ground Five**: Automatic reversal is required because Defendant's due process and equal protection rights pursuant to the U.S. Constitution were violated because a satisfactory colloquy and examination to be pro se counsel pursuant to the … requirements of *Faretta v. California*, 422 U.S. 806 (1975) was not held prior to the appointment by the trial court of the Defendant as counsel pro re; or, in the alternative, if Defendant were effectively appointed counsel, he relinquished involuntarily and unintelligently that appointment on 8.26.2013 in violation of those same rights to an appointed counsel who was refusing at trial to aggressively pursue Defendant's "CIA defense," because of prosecutorial statements that the facts of that defense lacked credibility, contrary to the will of the Defendant as to trial strategy; and Appellate Counsel failed to raise or argue the above in violation of his Strickland responsibilities.

**Ground Six**: In violation of the Defendant's rights of due process of law under the 14th and 6th Amendments pursuant to [clearly established federal law as explained by] *Gibson v. Washoe*, 290 F. 3d 1175, 1188 n. 9 (9th Cir. 2002) and *Alberti v. Klevenhagen*, 790 F. 2d 1220, 1224 (5th Cir. 1986) et al., and/or in violation of his rights against cruel and unusual punishment under the 8th Amendment pursuant to *Bell v. Wolfish*, 441, U.S. 520 (1979) et al., the trial court's "no contact" order [JE 3.19.2013] placing the Defendant, after he had been appointed counsel pro se, in solitary confinement in the Cuyahoga County Jail pretrial through 12.16.2013, and other court and jail imposed conditions pretrial to that confinement, contributed to the causation of the Defendant's mental state of dysfunctional incompetence to stand trial; to plea bargain; and to his relinquishment of his right to self-representation on 8.26.2013; contributorily caused his attempted suicide; blocked his fundamental right to access counsel of choice pursuant to *Sullivan v. Louisiana, et al*., and to access his

courts pursuant to *Bounds v. Smith*, 430 U.S. 817 (1977), et al., and to obtain discovery on his own behalf pursuant to [clearly established federal law as explained by] *D'Ambrosio v. Bagley*, 527 F. 3d 489, (6th Cir. 2008), et al.,. the 'no contact' order bore no stated rationale; it had no purpose and/or was overly punitive or was an exaggerated response to a fictional or perceived concern; and Appellate Counsel failed to raise or argue the above in violation of his Strickland responsibilities.

**Ground Seven**: Automatic reversal and new trial were required because the Defendant was denied an incompetency continuance as ordered by the trial court, violating the due process and equal protection standards of *Pate v. Robinson*, 383 U.S. 375 (1966), et al. Appellate Counsel failed to raise or argue the above in violation of his *Strickland* responsibilities.

**Ground Eight**: Defendant was never given a constitutionally mandated (pursuant to the due process and equal clauses of the U.S. Constitution) mental health and insanity examination, in Defendant's case No. CR-12-565040A, because he was never given such an examination tailored, on the insanity issue, to the times, facts and specific charges of 12-565050A, and no required finding was ever made; and Appellate Counsel failed to raise or argue the above in violation of his *Strickland* responsibilities.

**Ground Nine**: There was a lack of subject matter (territorial) jurisdiction and insufficiency of the evidence in violation of the due process of law clauses of the U.S. Constitution, on Count 12, Identity Fraud on Bobby Thompson of Washington State, because the Defendant never met any of the elements of the crime in Ohio other than the use of the generic name "Bobby Thompson" and that was insufficient to tie that use with an actual victim identified by the State as required; and Appellate Counsel failed to raise or argue the above in violation of his *Strickland* responsibilities.

**Ground Ten**: Trial Counsel Patituce provided numerous instances of I.A.C., pre-trial and at trial, and violation of the autonomous decision making required by Faretta and McCoy as to trial strategy, which can only be evidenced by the dehors record evidence provided by Cody's two PCRP trial court affidavits; and those instances require new trial under *Strickland*; or new trial under McCoy.

**Ground Eleven**: This claim is a lack of subject matter (territorial) jurisdiction for the Indictment Counts 3-9 (Money Laundering) of which Cody was convicted. Cody requests dismissal with prejudice of those counts. Subject matter jurisdiction is a fundamental 14th Amendment due process right. *Clendenning v. Newpage*, 2010 U.S. Dist. LEXIS 11289, HN 17 (S.D. Ohio, 2010). Lack of territorial jurisdiction is a structural error requiring dismissal with prejudice. *Strasshein v. Daily*, 221 U.S. 280 (1911) (requiring a sufficient territorial nexus with the actus reus of the crim[e]s for subject matter jurisdiction to apply); *U.S. v. Gatewood*, 173 F. 3d 983 (6th Cir. 1999). Ohio's long-arm territorial jurisdictional statutes must be strictly construed against the

state of Ohio. *Clendenning, supra*, at HN 17; *State v. Human*, 381 N.E. 2d 969 (Oh. S. Ct. 1978), citing §18, Art. IV. Ohio Constitution.

**Ground Twelve**: The State failed to disclose exculpatory material and information relating to Cody's CIA defense, and classified intelligence affiliation with the CIA and the Bush 43 office of the President, known personally to Mike DeWine, constituting (a) a Brady-Kyles violation; (b) prosecutorial misconduct involving (1) suppression with a bad intent; and (2) lying about the non-existence of the information so as to effectively intimidate defense counsel Patituce to sabotage Cody's CIA defense.

**Ground Twelve (1):** There was a violation of the due process clauses of the 14th and 6th Amendments because Mike DeWine, and his office of the Ohio attorney general, brought and maintained the prosecution for reasons proscribed by the Constitution, to wit, causes involving vindictive, and selective prosecution; and because prosecutorial misconduct occurred by reason of the prosecution's strategy of suppressing Cody's CIA defenses, and, more particularly, by affirmatively misrepresenting that Cody never had any affiliation with the CIA or any office of any president of the United States, with a purposive view toward intimidating, and which misrepresentations did intimidate, defense counsel Patituce in refusing Cody's chosen strategy of the CIA defense.

(Doc. 1-1, pp. 9-15) (as in original).  After being granted leave to amend his petition, Cody raised the following five additional grounds for relief:

**Ground Thirteen**: *Brady* violations occurred in the denials to Cody at trial of exculpatory evidence showing he had a covert classified intelligence affiliation with (a) the CIA; and/or (b) the Bush 43 office of the president; Cody is therefore entitled to a new trial, or a vacation … of the CR-12-565050A judgment.

**Ground Fourteen**: Denial of Cody's right to counsel, and to the effective assistance of trial counsel (Patituce) for his defense occurred in the denial to Cody at trial of exculpatory evidence showing or tending to show Cody had a covert, classified intelligence affiliation with (a) the CIA; and/or (b) the Bush 43 office of the president; Cody is therefore entitled to new trial, or a vacation of the CR-12-565050A trial judgment.

**Ground Fifteen**: Prosecutorial misconduct occurred in the suppression of exculpatory evidence showing, or tending to show, Cody had covert, classified intelligence affiliation with (a) the CIA; and/or (b) the Bush 43 office of the president; Cody is therefore entitled to a new trial, or a vacation of the CR-12-565050A trial judgment.

**Ground Sixteen**: Cody was denied at trial the effective assistance of counsel (Patituce) with his defense because Patituce failed to properly investigate and develop evidence showing, or tending to show, Cody has a covert, classified intelligence affiliation with (a) the CIA; and/or (b) the Bush 43 office of the president; Cody is therefore entitled to a new trial, or a vacation of the CR-12-565050A trial judgment.

**Ground Seventeen**: *McCoy v. Louisiana* violations of Cody's autonomous 6th Amendment right to counsel; and his 6th Amendment right to effective assistance of counsel, in denying Cody his desired defense strategy of CIA-affiliation, including denying Cody his desired right to self-testify at trial, occurred; Cody is therefore entitled to a new trial, or a vacation of the CR-12-565050A trial judgment.

(Doc. 41 at pp. 1-2) (as in original).

The record reflects that, over the course of these federal proceedings, Cody filed numerous motions, including motions for stay and abeyance, a motion to amend complaint, two motions for amended order, a motion for provision of copies of court records, a motion for service of pleadings, a motion for relief from order, a motion to withdraw motion to amend petition, and a motion for appointment of counsel.  (Doc. Nos. 19, 20, 21, 22, 23, 24, 25, 26, 28, 29, 30.)  In July 2019, Magistrate Judge Burke issued a series of Orders addressing Cody's many motions.  She denied his motion for appointment of counsel and denied several of his other motions as premature.  (Doc. No. 36, 37.)  In addition, the Magistrate Judge found that Cody was a vexatious litigant and enjoined him from filing any new motions in this case with the exceptions of motions for leave to file, as directed in that Order.  (Doc. No. 38.)

In August 2019, Respondent filed a Return of Writ along with the voluminous state court record.  (Doc. Nos. 42, 43.)  Cody filed his Traverse on December 9, 2019.[6]  (Doc. No. 57.)

---

[6] Throughout the latter half of 2019, Cody filed numerous motions for leave to file certain motions, including motions for leave to file motions for stay and abeyance, an expanded record, to correct the record, and to make "intra-traverse incorporations." (Doc. Nos. 44, 45, 47, 49, 50, 51, 52, 53.)  On September 12, 2019, the Magistrate Judge denied Cody's motions in a series of non-document orders. The Magistrate Judge did, however, allow Cody additional time to file his Traverse and stated that it "shall be no more than 55 pages long."  *See* Non-Document Order dated September 12, 2019.

On March 24, 2020, the Magistrate Judge issued a lengthy Report & Recommendation in which she recommended that Cody's Petition be dismissed in part and denied in part.  (Doc. No. 65.) After receiving several extensions of time, Cody filed his Objections on August 26, 2020.  (Doc. No. 74-1.)  Respondent did not file a Response.

### III.    Standard of Review

When a petitioner objects to a magistrate judge's resolution of a dispositive matter, the district court reviews those objections *de novo*.  Fed. R. Civ. P. 72(b)(3).  Specifically, a district judge:

> must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id*.  "A party who files objections to a magistrate [judge]'s report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court 'with the opportunity to consider the specific contentions of the parties and to correct any errors immediately.'" *Jones v. Moore*, 2006 WL 903199 at * 7 (N.D. Ohio April 7, 2006) (citing *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981)).

### IV.    Legal Standards regarding AEDPA Petitions

### A.    Standard of Review for Claims Reviewed on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

---

In addition, the Magistrate Judge issued a Report & Recommendation that Cody's Supplemental Motion for Stay and Abeyance (Doc. 19) and Motion to Amend Complaint (Doc. 20) be denied.  (Doc. No. 60.) Cody filed a series of Objections.  (Doc. Nos. 54, 61.)  On March 5, 2020, this Court issued a Memorandum Opinion & Order in which overruled Cody's various Objections.  (Doc. No. 64.)

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court. *See Parker v. Matthews*, 567 U.S. 37 (2012); *Renico v Lett*, 559 U.S. 766 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Shimel v. Warren*, 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). Moreover, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 567 U.S. at 48-49. *See also Lopez v. Smith*, 574 U.S. 1, 4 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'") (quoting *Marshall v. Rodgers*, 569 U.S. 58 (2013)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. *See also Carter v. Bogan*, 900 F.3d 754, 767 (6th Cir. 2018). By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the

18

Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.  See also Shimel,* 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id*. at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *Id*. at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

19

### B.      Procedural Default

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).  A claim may become procedurally defaulted in two ways.  *Id*.  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. [7]  *Id*.

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted.[8]  *See Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991); *Lundgren*, 440 F.3d at 763; *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is

---

[7] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. *Maupin,* 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39*; Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002).  "To inform this inquiry, we look to the last explained state court judgment." *Stojetz v. Ishee*, 892 F.3d 175, 191 (6th Cir. 2018) (internal quotation marks and citations omitted).

[8] This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle,* 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.*

procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")

Where a petitioner has procedurally defaulted claims, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750.  Demonstrating cause requires showing that an "objective factor external to the defense impeded counsel's efforts to comply" with the state procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  *See also Gerth v. Warden, Allen Oakwood Corr. Inst.,* 938 F.3d 821, 830 (6th Cir. 2019).  "Prejudice, for purposes of procedural default analysis, requires a showing that the default of the claim not merely created a possibility of prejudice to the defendant, but that it worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002) (citing *United States v. Frady,* 456 U.S. 152, 170–71(1982)).  *See also Beuke v.  Houk*, 537 F.3d 618, 634 (6th Cir. 2008).  The miscarriage of justice exception requires a prisoner to present new reliable evidence showing that he is actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 321, 324 (1995).

## V.     Analysis

### A.      Grounds 1 - 3, 5, and 7 - 12

As an initial matter, the Court notes that Cody raises no objection to the Magistrate Judge's recommendation that Grounds 1 - 3, 5, and 7 - 15 be dismissed as procedurally defaulted and/or denied on the merits.  *See* Doc. No. 65 at pp. 54-63; Doc. No. 74-1.  As stated in the Advisory Committee Notes to Fed. R. Civ. P. 72, "[w]hen no timely objection is filed, the court need only

satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Moreover, in *Thomas v. Arn*, 474 U.S. 140, 150 (1985), the Court held, "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."

The Court has carefully reviewed the Report and Recommendation's discussion and analysis of Grounds 1 - 3, 5, and 7 - 15 and finds no clear error.  (Doc. No. 65 at pp. 54-63.)  Accordingly, and in the absence of any specific Objection as to these Grounds, the Court accepts the Magistrate Judge's recommendation that Grounds 1 - 3, 5, and 7 - 15 be denied.

**B.    Ground 4**

In Ground 4, Cody asserts that he was "denied his right under the 6th and 14th Amendments to the U.S. Constitution to testify on his own behalf at trial by the trial court and/or by the forced or unforced ineffectiveness of trial counsel related thereto, pursuant to [clearly established federal law as explained by] *Skeens v. Haskins*, 4 Fed. Appx. 236 6th Cir. 2001) et al., and Appellate Counsel failed to raise or argue the above in violation of his *Strickland* responsibilities."  (Doc. No. 1-1 at PageID# 18) (as in original).

In the Report & Recommendation, the Magistrate Judge finds that this Ground includes the following four claims: (1) denial of the right to testify due to trial court error; (2) denial of the right to testify due to the ineffectiveness of trial counsel; (3) ineffective assistance of appellate counsel for failure to raise trial court error based on the denial of the right to testify; and (4) ineffective assistance of appellate counsel for failure to raise ineffectiveness of trial counsel on this basis.  (Doc. No. 65 at p. 28.)  The Magistrate Judge concludes that the first two claims are procedurally defaulted because they are based on the trial court record and Cody did not present them on direct appeal.  (*Id.*)  The

Magistrate Judge further finds that ineffective assistance of appellate counsel cannot be used as cause to excuse the default of these claims because the state appellate court considered and denied Cody's ineffective assistance of appellate counsel claims on the merits in the context of denying his 26(B) Application.  (*Id.*)  With regard to the merits of Cody's ineffective assistance of appellate counsel claims, the Magistrate Judge finds that the state appellate court's rejection of these claims is not contrary to or an unreasonable application of clearly established federal law.  (*Id.* at pp. 29-40.)

As discussed in more detail below, Cody raises numerous Objections to the Magistrate Judge's analysis and conclusions.  (Doc. No. 74-1 at pp. 1-10.)

The Court will first address Cody's ineffective assistance of appellate counsel claims, and then proceed to consider Cody's underlying claims that the trial court denied him his right to testify and that trial counsel was ineffective for failing to call him to testify on his own behalf.

### 1.    Ineffective Assistance of Appellate Counsel

In order to establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id*.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly

23

ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Id.* at 689.  *See also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

The Supreme Court has held a defendant is entitled to effective assistance of counsel in his first appeal as a matter of right.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Thus, the two-part test enunciated in *Strickland* is applicable to claims of ineffective assistance of appellate counsel.  *Smith v. Robbins,* 528 U.S. 259, 285 (2000).  An appellant has no constitutional right, however, to have every non-frivolous issue raised on appeal*, Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel, *Perry*, 908 F.2d at 59.  "[O]nly when issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (internal quotation marks and citations omitted).

### a.   Failure to Argue on Direct Appeal that the Trial Court Denied Cody his Right to Testify

Cody first argues that both the Magistrate Judge and the state appellate court unreasonably rejected his ineffective assistance of appellate counsel claim based on counsel's failure to argue on direct appeal that the trial court denied him his right to testify.  (Doc. No. 74-1.)  For the following reasons, the Court disagrees.

After reciting the standard for evaluating ineffective assistance of counsel claims under *Strickland v. Washington*, 466 U.S. 668 (1984), the state appellate court considered and rejected this claim, as follows:

> Cody also argues that he was denied his right to testify on his own behalf. When the state rested its case, the judge asked Cody directly whether he wished to testify; the judge noted that throughout the proceedings Cody indicated he wanted to testify. However, Cody refused to answer the judge's question directly. Instead, he whispered into his counsel's ear, after which counsel said that Cody wished to answer the charges against him.  Again, the judge directly asked Cody if he wanted to testify, and again he whispered into his attorney's ear and did not answer the judge directly. After taking a break to allow Cody to better his appearance [fn 5] and to further consult with his attorney, Cody's lawyer said that it was his understanding that Cody would not be taking the stand. Cody did not object to these proceedings. (Tr. 4314–4322.) This record does not support an argument that the trial court denied Cody's right to testify, and appellate counsel in the exercise of professional judgment could decline to raise it.
>
> FN 5 -- The record indicates that Cody appeared disheveled that day in court.

*State v. Cody*, 2017 WL 1507211 at * 3.

Before reviewing the substance of the state appellate court's decision, the Court must first determine the proper standard of review.  If the state appellate court adjudicated Cody's claim "on the merits," the Court applies deference under the AEDPA and may grant relief only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable application of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1) & (2).  *See Smith v. Cook*, 956 F.3d 377, 385-386 (6th Cir. 2020).  If the state court did not evaluate the merits of Cody's claim, the Court reviews that claim *de novo*.  *Id.  See also Rice v. White*, 660 F.3d 242, 252 (6th Cir. 2011) (citing *Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir. 2005)).

For the following reasons, the Court finds that the state appellate court adjudicated this claim on the merits and, therefore, its decision is entitled to deference under the AEDPA.  The state

appellate court properly recited the governing standard of review for ineffective assistance of counsel claims set forth in *Strickland, supra*, and expressly acknowledged Cody's claim that his appellate counsel was ineffective for failing to argue, on direct appeal, that the trial court denied Cody his right to testify on his own behalf. *See Cody*, 2017 WL 1507211 at * 1, 3. The state appellate court then evaluated the record evidence and rejected Cody's claim, finding that "[t]his record does not support an argument that the trial court denied Cody's right to testify, and appellate counsel in the exercise of professional judgment could decline to raise it." *Id*. at * 3. Although the state appellate court's analysis is somewhat brief, the Court finds it is sufficient to constitute an "adjudication on the merits" for purposes of review under § 2254(d)(1).

Citing *Davie v. Mitchell*, 547 F.3d 297, 315 (6th Cir. 2008), Cody argues that this Court should apply "modified AEDPA deference" because the state appellate court's adjudication of the claim contained little analysis. In *Davie*, the Sixth Circuit found that, where a state court "'adjudicated the claim but with little analysis on the substantive constitutional issue,' . . . we apply modified AEDPA deference." *Davie*, 547 F.3d at 315 (quoting *Vasquez v. Jones*, 496 F.3d 564, 569 (6th Cir. 2007)). "Under that standard, we conduct a 'careful' and 'independent' review of the record and applicable law but cannot reverse 'unless the state court's decision is contrary to or an unreasonable application of federal law.'" *Id.*

The Court rejects Cody's argument for several reasons. First, it is not entirely clear that *Davie* remains good law after the United States Supreme Court's decision in *Harrington v. Richter*, 562 U.S. 86 (2011). Indeed, the Sixth Circuit recognized this in an unpublished decision, when it rejected a habeas petitioner's argument that "modified AEDPA deference" applied:

> In *Harrington*, however, the Court made it clear that AEDPA's highly deferential review applies to the result of the state court decision, irrespective of whether the state

court decision includes citation to Supreme Court cases or any reasoning at all. *Harrington*, 131 S.Ct. at 784.  **Consequently, since *Harrington*, the notion of "modified AEDPA deference" lacks continuing vitality**. *See Jackson v. Smith*, 745 F.3d 206, 209–10 (6th Cir. 2014); *Piscopo v. Michigan*, 479 Fed. Appx. 698, 703–04 (6th Cir. 2012); *Smith v. Coleman*, 453 Fed. Appx. 625, 627 (6th Cir. 2011).  *See also Treesh v. Bagley,* 612 F.3d 424, 429 (6th Cir.2010) (consistent with *Harrington*).

*Williams v. Curtin*, 613 Fed. Appx. 461, fn 1 (6th Cir. 2015) (emphasis added).[9]

Second, even if the "modified AEDPA deference" standard is still viable after *Harrington*, the Court is not convinced that the state appellate court's analysis herein was so minimal as to warrant application of that standard.  As discussed above, although the state appellate court's analysis was brief, that court properly recited the governing legal standard, carefully discussed the evidence, and concluded that appellate counsel was not deficient for failing to argue on direct appeal that the trial court denied Cody his right to testify.  Under these circumstances, the Court finds that the state appellate court's analysis was not so lacking as to warrant application of the "modified AEDPA deference" standard.[10]

---

[9] The Court notes that one of the judges on the panel in *Williams* wrote a concurring opinion in which she noted the Sixth Circuit's "conflicting case law" on this issue.  Specifically, Justice Stranch explained:  "I acknowledge that our court has held, since the Supreme Court decided *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L.Ed.2d 624 (2011), that modified AEDPA deference should no longer be applied. *Jackson v. Smith*, 745 F.3d 206, 209–10 (6th Cir.2014); *Piscopo v. Mich.,* 479 Fed. Appx. 698, 703–04 (6th Cir.2012); *Smith v. Coleman*, 453 Fed. Appx. 625, 627 (6th Cir.2011). Since *Harrington,* our court has also applied modified AEDPA deference in two published cases. *Peoples v. Lafler,* 734 F.3d 503, 516–17 (6th Cir.2013); *Moore v. Mitchell,* 708 F.3d 760, 795 (6th Cir.2013). Our conflicting case law leaves me unable to agree with the conclusion" that the modified AEDA deference standard lacks continuing vitality. *Williams*, 613 Fed. Appx. 461, concurring opinion.

[10] The Court finds that the state appellate court's recitation of the proper legal standard and subsequent analysis of the record evidence renders the instant case distinguishable from those in which the Sixth Circuit has applied the "modified AEDPA deference" standard.  *See, e.g., Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005) (applying modified AEDPA deference where the petitioner argued that the erroneous admission of a witness's prejudicial comment violated "both Ohio evidence law and the Due Process Clause," but the state appellate court "appeared to decide the issue solely on the basis of state evidence law."); *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir.2005) (applying modified AEDPA deference where the state court of appeals, in response to a due process challenge and with no analysis, held that there was "no error" in the admission of identification testimony, and even if there were, it was "harmless beyond a reasonable doubt"); *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000) (applying modified AEDPA deference where the state courts disposed of the constitutional issues without analysis, by summary order and denial of leave to appeal).

Accordingly, the Court rejects Cody's argument that "modified AEDPA deference" applies. The Court will apply full AEDPA deference to the state appellate courts' resolution of this particular claim.  Thus, the proper inquiry is whether the state appellate court's disposition of Cody's ineffective assistance of appellate counsel claim was an unreasonable application of clearly established federal law (28 U.S.C. § 2254(d)(1)); or based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding (28 U.S.C. § 2254(d)(2)).  For the following reasons, the Court finds that it was not.

The record reflects that, at the conclusion of the State's case, the trial court engaged in the following colloquy with defense counsel and Cody:

> THE COURT: …. And so I know there has been some conversations -- Mr. Patituce has indicated that you were wanting to testify. Certainly, I think you appreciate you have a Constitutional right to not testify. And have you had an opportunity to reach a conclusion as to whether or not you wish to testify?
>
> (Thereupon, the defendant conferred with counsel off the record.)
>
> MR. PATITUCE: Can we approach, your Honor?
>
> THE COURT: Well, let's just hold on a second. Mr. [Cody], I think it's a fairly straightforward question. We can address some of the other issues, such as your appearance in court here today. What's your desire, sir? Do you intend on taking the stand and testifying in your own behalf, or not?
>
> MR. PATITUCE: Your Honor, my client indicates he wishes to answer to his Complaint.
>
> THE COURT: Well, and certainly I appreciate that, Mr. [Cody], but in any regard, I'm going to hear it from you as to what your intentions are so it's on the record and there can't be no mistake, because if there is a need for a reviewing court, that there's a clear intention on your behalf as to either to exercise your Constitutional right to remain silent, or if you would like to testify. So what would you like to do?
>
> (Thereupon, the Defendant conferred with counsel Mr. Patituce off the record.)

MR. PATITUCE: Your Honor, he is reiterating to me the same. He wishes to answer to all the charges.

THE COURT: Mr. [Cody], we can – it's a simple question, sir. I'm asking you, do you wish to testify, or not; yes or no? Mr. [Cody]? Mr. [Cody]? You don't need to whisper in Mr. Patituce's ear. You can look right at me and say the word yes or no. Would you like to testify on your own behalf, or not; yes or no?

(No response.)

THE COURT: Well, Mr. [Cody], I can perhaps infer from your silence that you do not wish to testify, as is your Constitutional right to remain silent and proceed accordingly, if that's what you'd like to do.

Now we can address a couple other issues, such as your appearance in court here today. [11] And if you would like to testify on your own behalf, I'm happy to give you some time, if you so desire, to, for example, fix your hair, finish buttoning up your shirt, put a tie on, if that's what you choose to do. If you choose not to do all those things and appear in front of the jury in such a manner, that's fine as well and I'll simply give the jury an instruction that they're not to make any determination as to your guilt or innocence based upon your appearance in court here today. So having said that, what would you like to do?

THE DEFENDANT: I would like to put myself in physical appearance state, I think is reasonable.

THE COURT: All right.

THE DEFENDANT: Have my hair combed, have it washed, with my spectacles returned to me. I feel that is a reasonable request –

THE COURT: All right.

THE DEFENDANT: -- under the circumstances.

THE COURT: I don't necessarily disagree with you. Having done those things, and I'll provide you with a reasonable period of time for which to accomplish those, **what is your intention with respect to testifying on your own behalf?**

**THE DEFENDANT: I can't answer that question without consulting with my attorney.**

---

[11] The record indicates that Cody appeared disheveled that day in court.  *State v. Cody*, 2017 WL 1507211 at *3, n. 5 (Ohio App. 8th Dist. April 21, 2017).

THE COURT: Go ahead, Mr. Patituce, take a few moments if you would like to.

(Pause.)

MR. PATITUCE: Your Honor, can we step aside maybe two seconds?

[Thereafter the trial court recessed for almost 40 minutes and returned on the record]

***

THE COURT: All right.  We're back on the record. . .  And a couple of things I wanted to make a record of.  It was brought to my attention just by way of history, it was brought to my attention at the end of Tuesday's session, there was an incident that occurred in the holding facility where Mr. [Cody] as I understand it, was banging his head against the wall.  The deputies took him down.  It is further my understanding that he was looked at, if you will, by the jail medical staff, and I was advised he refused medical attention.  Additionally, he was spoken to by the jail, what I'll characterize as I understand the jail psychiatric staff, and there wasn't [sic] any issues that they determined.  *** Additionally, we have been advised that Mr. [Cody] is not taking any type of medication.  And from my own experience, having sat through the last six or so weeks of this trial, as well as my dealings with Mr. [Cody] when he was representing himself in court, I certainly didn't make any observations that would give me any cause to believe that there was any mental health issues that needed to be dealt with at this time.

Having said that, before we broke, before this most recent recess, I made an inquiry from Mr. [Cody] as to whether or not he wished to take the stand in his own defense. **And I believe the record would accurately reflect that there was some difficulty in getting an answer from him.  So let me ask it this way, Mr. Patituce, have you had conversations with Mister -- with your client relative to his Constitutional right to either testify or not testify on his own behalf?**

**MR. PATITUCE: I have, your Honor.**

**THE COURT: And do you feel that he has an adequate understanding of the nature of the -- not the nature of the case, but the nature of whether or not he chooses to testify, or not?**

**MR. PATITUCE: Your Honor, I do, as we discussed his physical and mental capabilities to testify, I explained his rights and possibilities to testify, and I do believe he will not be taking the stand, your Honor.**

30

**THE COURT: All right. And you indicated his physical and mental abilities. You [are] just referring to the prospect, if you will, being cross-examined by, I'll say perhaps a seasoned prosecutor?**

**MR. PATITUCE: Your Honor, I certainly believe that direct will be difficult, but I do believe that he would not be able to survive the prospects of a seasoned prosecutor such as Brad Tammaro, or seasoned Attorney General Brad Tammaro cross-examining him.**

**THE COURT: All right. And so is it your intention to rest at this point in time, subject to the admission of any evidence, items of evidence that you wish to present?**

**MR. PATITUCE: Along with renewal of the [Rule 29] motion.**

(Doc. 43-21 at PageID#s 8037-8045) (Tr. Vol. 21) (emphasis added).

The Court agrees with the Magistrate Judge that the state appellate court's decision was neither an unreasonable determination of the facts nor contrary to, or an unreasonable application of, clearly established federal law. As the state appellate court noted, although defense counsel stated that Cody "wish[ed] to answer" the charges against him, Cody repeatedly refused to answer the trial court's direct questions as to whether he wanted to testify and indicated that "I can't answer that question without talking to my attorney." (Doc. 43-21, at PageID# 8041) (Tr. Vol. 21). The trial court then took a forty-minute recess to allow Cody to improve his appearance and consult with his attorney. (*Id*. at PageID#s 8041-8045.) During this recess, defense counsel had the opportunity to discuss (and did discuss) with Cody the issue of whether or not he would testify. After these discussions, defense counsel assured the trial court that Cody had an adequate understanding of the issue and, further, that Cody had declined to testify due to counsel's concerns regarding Cody's physical and mental capability to withstand cross-examination. (*Id*.) Notably, the record reflects that, when defense counsel explained this to the trial court, Cody did not raise any objection or otherwise inform that trial court that he did, in fact, want to testify. (*Id*.)

31

Under these circumstances, the Court finds that it was not unreasonable for the state appellate court to conclude that appellate counsel was not ineffective for declining to argue, on direct appeal, that the trial court improperly denied Cody his right to testify. *See Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) ("[A] defendant must alert the trial court that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct.")

In addition, the Court rejects Cody's argument that it was ineffective for appellate counsel not to raise this issue in light of the fact that the trial court was aware that Cody had head injuries at the time. As set forth *supra*, the trial court acknowledged that, several days prior, Cody had been found banging his head against the wall in his holding cell. (Doc. 43-21, at PageID#s 8043-8045.) The trial court considered this fact when addressing the issue of whether Cody wanted to testify. Specifically, the trial court explained that the jail medical and psychiatric staff had not noted any concerns regarding Cody's physical and/or mental health after this incident and, further, that the trial court's own observations of Cody during pre-trial and trial proceedings did not cause the court to believe that were "any mental health issues that needed to be dealt with at this time."[12] (*Id*. at PageID# 8044.) Moreover, the trial court specifically asked defense counsel whether Cody had "an adequate understanding of the nature of whether or not he chooses to testify." (*Id*. at PageID# 8044-8045.) Defense counsel replied that Cody did, in fact, understand this issue and that he would not be

---

[12] The Court also notes the state trial court had previously referred Cody to the court's psychiatric clinic for an evaluation and, in August 2012, the parties stipulated to the competency reports that had been prepared as a result of that evaluation. (Doc. 42-1, Exhs. 7, 11.)

testifying.  (*Id.*)  Cody did not object.  (*Id.*)  In light of the above, the Court rejects Cody's argument that the state appellate court unreasonably concluded that appellate counsel was ineffective for failing to raise this issue on appeal.[13]

As the Sixth Circuit has explained, the "'[a]ppellate counsel need not raise every non-frivolous claim on direct appeal.'"  *Sanders v. Curtin*, 529 Fed. Appx. 506, 521 (6th Cir. 2013).  Indeed, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).  *See also Hand v. Houk*, 871 F.3d 390, 410 (6th Cir. 2017).  Here, appellate counsel raised three issues on direct appeal, two of which were successful and resulted in the vacation of Cody's conviction on eleven counts of identity fraud and his sentence to solitary confinement on Veteran's Day.  Given the number and strength of the other claims Cody raised on direct appeal, it was not unreasonable for the state

---

[13] Cody's reliance on *Ward v. Sternes*, 334 F.3d 696 (7th Cir. 2003) is misplaced.  In *Ward*, the petitioner suffered from aphasia as a result of previous blunt head trauma.  Testimony was introduced at trial that this condition "severely disrupted [Ward's] ability to think, reason, take in verbal information, and understand and use language to express his understanding."  *Id.* at 705-706.  In that case, the trial court asked Ward whether he wanted to testify, and Ward responded "I guess. I don't know."  *Id.* at 700.  The trial court accepted this, stating "that's the best we will ever do."  *Id.*  Ward did not testify and was found guilty of murder but mentally ill.  *Id.*  In his federal habeas petition, Ward asserted that he did not make a valid waiver of his fundamental constitutional right to testify.  *Id.* at 701. The district court agreed and granted the petition.  On appeal, the Seventh Circuit affirmed, finding that "there was an indication that Ward was prevented by his own mental deficiencies from exercising his fundamental right to testify, which then necessitated further inquiry from the court . . . And more than an equivocal, 'I guess, I don't know,' . . . was required to ensure an accused with severe brain damage was knowingly and intelligently waiving a fundamental right."  *Id.* at 706.  In the instant case, there is no evidence that Cody suffered from any mental or physical condition that severely disrupted his ability to think, reason or communicate.  Nor did Cody equivocally respond to the trial court's questions as to whether he wanted to testify.  Rather, Cody indicated that he wanted to discuss the issue with his counsel and, after a forty-minute recess, defense counsel stated that Cody would not testify.  Cody did not object.  Accordingly, *Ward* is clearly distinguishable.

appellate court to conclude that appellate counsel was not ineffective for deciding that this particular claim was not strong enough to raise on direct appeal.[14]

Accordingly, Cody's Objections are overruled and this claim is denied.

> **b.** **Failure to Argue on Direct Appeal that Trial Counsel was Ineffective for Failing to Call Cody to Testify**

Cody also raises an ineffective assistance of counsel claim based on appellate counsel's failure to argue, on direct appeal, that trial counsel was ineffective for failing to call him to testify. Cody argues that the state appellate court ignored this portion of his claim and, therefore, it should be reviewed *de novo*. Relying on *Harrington v. Richter*, 562 U.S. 86 (2011) and *Johnson v. Williams*, 568 U.S. 289 (2013), the Magistrate Judge concluded that AEDPA deference applies because the state appellate court "found that Cody's right to testify was not violated, whether Cody alleged it was the trial court or counsel who violated it." (Doc. No. 65 at p. 38.) The Magistrate Judge then determined that it was not unreasonable for the state appellate court to conclude that appellate counsel was not ineffective for failing to raise this claim on direct appeal. (*Id.* at pp. 38-40.)

In his Objections, Cody insists that the state appellate court ignored this claim and argues that the Magistrate Judge erred in failing to review it *de novo*. (Doc. No. 74-1.) The Court agrees with Cody that, while the state appellate court clearly addressed Cody's claim that appellate counsel was ineffective for failing to argue that the *trial court* erred in denying him his right to testify, it did not specifically address Cody's separate claim that appellate counsel was ineffective for failing to argue that *defense counsel* was ineffective for failing to call Cody to testify at trial. The Court must, then, determine the appropriate standard of review under these circumstances.

---

[14] The Court further finds that, even if it were to apply "modified AEDPA deference," it would reach the same conclusion for all the reasons set forth above.

Both the Supreme Court and the Sixth Circuit have provided guidance regarding whether federal habeas courts should consider a claim to be "adjudicated on the merits" when the state courts have not directly addressed it. The Sixth Circuit recently summarized the law on this issue, as follows:

> Under AEDPA, this Court must give significant deference to a state court's decision when it rejects a petitioner's claim "on the merits." 28 U.S.C. § 2254(d); *accord, e.g., Jordan,* 675 F.3d at 592–93. But how do we know if a decision is "on the merits"? While this would be easy if the state habeas court provided a detailed, reasoned opinion, rarely are federal courts so lucky.
>
> To address this dilemma, the Supreme Court created a presumption that § 2254(d) applies, even when there is no reasoned state court opinion. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter,* 562 U.S. at 99, 131 S.Ct. 770; *see also id.* at 98, 131 S.Ct. 770 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."). Thus, unless there is good reason for a federal court to think a state court's decision was not on the merits, the federal court must assume that it was on the merits and apply § 2254(d).
>
> That said, "[t]he presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 99–100, 131 S.Ct. 770; *see also Johnson v. Williams*, 568 U.S. 289, 302, 133 S.Ct. 1088, 185 L.Ed.2d 105 (2013) ("Thus, while the *Richter* presumption is a strong one that may be rebutted only in unusual circumstances, it is not irrebuttable."). For example, short denials without opinion are most commonly seen in state appellate courts. *See, e.g., Wilson v. Sellers*, —— U.S. ——, 138 S. Ct. 1188, 1192, 200 L.Ed.2d 530 (2018) ("For instance, the decision may consist of a one-word order, such as 'affirmed' or 'denied.' "). In such a case, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Id.; accord Ylst v. Nunnemaker,* 501 U.S. 797, 805–06, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).
>
> Even when there is no earlier decision that the Court can "look through" to, it is still possible for the *Richter* presumption to fall. In assessing such a challenge to the presumption, this Court considers, among other things, "the language used by the state court in its discussion of the claim at issue and the context of that discussion when the state court's opinion is 'read as a whole.'" *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 460 (6th Cir. 2015) (per curiam) (quoting *McCarley v. Kelly,* 759 F.3d

535, 543–44 (6th Cir. 2014), vacated on other grounds, —— U.S. ——, 135 S. Ct. 2887, 192 L.Ed.2d 924 (2015) (mem.)).

*Stermer v. Warren*, 959 F.3d 704, 722-723 (6th Cir. 2020). For example, a court in a state that interprets a parallel state and federal constitutional provision identically may decide that a discussion of the state claim adequately disposes of the duplicative federal claim. *Johnson*, 568 U.S. at 298-299. Similarly, state courts have discretion to decide that a "fleeting reference to a provision of the Federal Constitution" does not merit its attention, or that a claim may simply be "too insubstantial to merit discussion." *Id.* at 299. *See also Brown v. Romanowski*, 845 F.3d 703, 711 (6th Cir. 2017).

While the *Richter/Johnson* presumption is not irrebuttable, it is a "strong one that may be rebutted only in unusual circumstances," *Johnson,* 568 U.S. at 302, such as "when there is reason to think some other explanation for the state court's decision is more likely." *Richter,* 562 U.S. at 99. One example of when the presumption may be rebutted occurs when a state court rejects a federal claim "as a result of sheer inadvertence." *Johnson,* 568 U.S. at 303. *See also Brown*, 845 F.3d at 711.

Here, the state appellate court was the first court to consider Cody's 26(B) Application and, therefore, there is no earlier state court decision to which this Court can "look through" for a reasoned rationale. In the R&R, the Magistrate Judge examined the wording and context of the state appellate court's decision to conclude that it necessarily encompassed a decision on the merits with respect to Cody's claim that appellate counsel should have argued ineffective assistance of trial counsel based on trial counsel's failure to call Cody to testify. Cody disagrees, asserting that the determination of whether appellate counsel should have raised claims based on trial court error versus ineffectiveness of trial counsel are distinct and involve different analyses. Cody suggests that the state appellate court simply overlooked his ineffective assistance of appellate counsel claim based on the failure to

36

raise ineffective assistance of trial counsel and, therefore, the *Johnson* presumption is rebutted and *de novo* review applies.

The Court need not decide this issue.  Even under a *de novo* review, the Court finds that appellate counsel was not ineffective for failing to argue that trial counsel was ineffective based on the failure to call Cody to testify.  Based on the trial transcript, it appears that defense counsel advised Cody not to testify because of concerns that Cody would not hold up well under cross-examination by the prosecution.  When a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed. *Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000).  A federal court sitting in habeas review of a state court conviction should have "a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." *Hodge*, 579 F. 3d at 639 (internal citation omitted).  To overcome this presumption, a habeas petitioner must present record evidence that he somehow alerted the trial court to his or her desire to testify. *Id.*

As discussed above, the trial transcript reflects that (1) Cody expressed a wish to consult with his counsel about whether he wanted to testify; (2) the state court recessed to allow Cody and defense counsel the opportunity to speak about this issue; (3) defense counsel subsequently advised the trial court that Cody would not testify; and (4) Cody did not object or otherwise engage in any behavior that would alert the trial court that he disagreed.  (Doc. No. 43-21 at PageID#s 8037-8045.)  Because the record is void of any indication that, after the recess, Cody alerted the trial court that he wanted to testify, the Court finds that Cody has not overcome the presumption that he willingly agreed to counsel's advice not to testify or that his counsel rendered ineffective assistance of counsel. *Gonzales*,

233 F. 3d at 357.  Thus, the Court finds that appellate counsel was not ineffective for deciding not to assert ineffective assistance of trial counsel on this basis.

Accordingly, even under *de novo* review, Cody's ineffective assistance of appellate counsel claim is without merit and denied.[15]

### 2. Underlying Claims-- Denial of Right to Testify at Trial and Ineffective Assistance of Trial Counsel based on the decision not to call Cody to Testify at Trial

In addition to raising claims of ineffective assistance of appellate counsel, Ground 4 also asserts the underlying claims that Cody was denied his constitutional right to testify on his own behalf at trial by the state trial court and/or by the "forced or unforced ineffectiveness of trial counsel." (Doc. No. 1-1 at PageID# 18.)  The Magistrate Judge found that both of these underlying claims are procedurally defaulted because they are based on the trial court record, Cody did not present them on direct appeal, and the state appellate court denied Cody's request to reopen his direct appeal under App. R. 26(B).  (Doc. No. 65 at pp. 28-29.)  The Magistrate Judge found that Cody could not establish either cause or prejudice to excuse the default and, further, that he was not able to show that he is actually innocent.  (*Id*. at pp. 28-29, 49-51.)  Cody raises numerous Objections to each of these findings.  (Doc. No. 74-1.)

The Court agrees with the Magistrate Judge that Cody's underlying claims are procedurally defaulted.  With regard to Cody's claim that the state trial court improperly denied him his right to

---

[15] In his Objections, Cody also argues that appellate counsel was ineffective based on the failure to assign as error trial counsel's failure to call Cody to testify after promising the jury in opening arguments that Cody would testify on his own behalf.  This Objection is overruled.  As an initial matter, it does not appear that Cody asserted this particular claim in Ground Four of the instant habeas petition.  Moreover, even if he had properly asserted this claim herein, Cody has not demonstrated that he raised this particular ineffective assistance of appellate counsel claim in his 26(B) Application and, thus, this claim would be procedurally defaulted.

testify, this claim is based on the trial court record and, therefore, could have been raised on direct appeal. Cody, however, failed to raise this claim on direct appeal and the state appellate court refused to reopen his direct appeal to assert it, thereby imposing a procedural bar. *See Davie*, 547 F.3d at 312. Thus, the Court finds that this claim is procedurally defaulted. Likewise, to the extent Cody's ineffective assistance of trial counsel claim is based on the trial court record, it is procedurally defaulted for the same reason, i.e., Cody failed to raise it on direct appeal and the state appellate court refused to reopen his direct appeal to allow him to assert it.

In his Objections, Cody suggests that his ineffective assistance of trial counsel claim is not procedurally defaulted because it is based on evidence outside the trial record, "such as an off-record defendant-counsel communication as to, e.g., the client's express desire to testify." (Doc. No. 74-1 at PageID# 8676.) This argument is without merit. First, aside from this vague reference in his Objection, Cody does not identify any specific evidence outside the record that is relevant to this claim. Second, even if Cody properly raised this claim in his first post-conviction petition based on any such alleged evidence, the claim would nonetheless be procedurally defaulted because the state trial court denied the petition on the basis of *res judicata* and the state appellate court affirmed on that basis. *See State v. Cody*, 2015 WL 4133281 at * 3-4. Thus, this claim is also procedurally defaulted.[16]

---

[16] In his Objections, Cody argues that the filing of his 26(B) Application preserved these underlying claims for habeas review. This Objection is without merit and overruled. It is well established that "bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because the two claims are analytically distinct." *Davie,* 547 F.3d at 312. *See also Stojetz*, 389 F.Supp.2d at 898–99; *Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012); *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005); *Enyart v. Coleman*, 29 F. Supp.3d 1059, 1098 (N.D. Ohio 2014); *White v. Shewalter*, 2012 WL 2711463 at *10 (N.D. Ohio March 14, 2012) report and recommendation adopted by 2012 WL 2741551 (July 9, 2012).

As noted *supra*, where a petitioner has procedurally defaulted claims, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman,* 501 U.S. at 750. It is well established that ineffective assistance of appellate counsel may serve as "cause" for procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). However, in order for ineffective assistance of appellate counsel to serve as cause and prejudice to excuse a procedural default, a petitioner must also show that his claim of ineffective assistance of appellate counsel itself has merit. *See Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir.2004) (citing *Edwards*, 529 U.S. at 450–51); *Sulek v. Brunsman,* 2009 WL 1935878 at * 7 (S.D. Ohio June 23, 2009).

Here, for all the reasons discussed above, the Court finds upon *de novo* review that Cody has not established that either of his ineffective assistance of appellate counsel claims have merit; i.e., that appellate counsel was ineffective for failing to raise the two underlying issues on direct appeal. Accordingly, the Court finds that ineffective assistance of appellate counsel may not serve as cause to excuse the default of his claims.[17] Finally, for the reasons set forth *infra* in Section V.E of this Opinion, the Court finds that Cody cannot demonstrate that the default of his claims should be excused on the grounds that "failure to consider the[m] . . . will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Accordingly, Ground Four of Cody's Petition is denied.

**C.     Ground Six**

---

[17] In his Objections, Cody does not argue any other basis for finding either cause or prejudice to excuse the default of these claims.

In Ground Six, Cody argues that the trial court violated his constitutional rights in numerous ways when it issued a "no contact" order in March 2013 that resulted in Cody's placement in solitary confinement through December 16, 2013. (Doc. No. 1-1 at PageID# 19.) Cody asserts that this order "contributed to the causation of [his] mental state of dysfunctional competence to stand trial; to plea bargain; and to his relinquishment of his right to self-representation on 8.26.2013; contributorily caused his attempted suicide; blocked his fundamental right to access counsel of his choice . . . and to access his courts . . .; and to obtain discovery on his own behalf." (*Id.*) (as in original). He further asserts that appellate counsel was ineffective for failing to raise these issues on direct appeal. (*Id.*)

In his Traverse, Cody limits his argument solely to that portion of Ground Six that alleges that the trial court's "no contact" order denied him his right to access counsel of his choice. (Doc. No. 57 at PageID# 8391-8395.) Thus, the Magistrate Judge confined her review solely to this aspect of this claim. (Doc. No. 65 at p. 43.) The Magistrate Judge concluded that Cody's underlying claim that he was denied the right of access to counsel of his choice was procedurally defaulted and, further, that Cody had failed to demonstrate either cause or prejudice to excuse the default. (*Id.* at p. 41-42.) Applying AEDPA deference, the Magistrate Judge then found that the state appellate court was reasonable in determining that Cody's appellate counsel was not ineffective for failing to raise this issue on direct appeal. (*Id.* at pp. 42-46.) Cody objects on numerous grounds, as discussed below. (Doc. No. 74-1.)

### 1. Ineffective Assistance of Appellate Counsel Claim Based on Failure to Argue on Direct Appeal that Cody had been Denied his Right to Access Counsel of his Choice

The Court first addresses Cody's ineffective assistance of appellate counsel claim. Cody raised a claim of ineffective assistance of appellate counsel based on the trial court's "no contact"

order in his 26(B) Application.  (Doc. No. 42-3, Exh. 75 at PageID#s 2806-2807, 2827-2829.)

Therein, Cody argued, in relevant part, as follows:

> 1.    On 3.19.2013., the trial court, *sua sponte*, issued the following JE: "Defendant is restricted to have no contact by phone, mail or social visits."

> 2.    Defendant was thrown into solitary confinement in the Cuyahoga County Jail, into what is called 'administrative confinement' to distinguish it from 'disciplinary confinement.' ***

> 3.    When he attempted to smuggle a request to an inmate's counsel to see him about potential representation, he was apprehended and placed in solitary confinement.  He remained in solitary confinement through sentencing and transport to the Lorain Correctional Institute on 12.19.2013, a status he retained until 8.26.2013.  This period included most of the pre-trial motion practice, and the plea-bargaining phase, of CR-12-565050A.

> 4.    Appellant need not go beyond the face of the order in explaining it.  He was permitted no contact with any other human being (except for the jail guards) . . . ., and other than advisory counsel Patituce through 8.26.2013 only during courtroom appearances. ***  He had no access to any legal research material; no outgoing or incoming mail was permitted him other than correspondence with advisory counsel; no telephone calls were permitted him other than a series of non-accepted calls to advisory counsel; his indigency is of record; he had no access even to writing material, other than paper and pens . . .

> > ****

> 7.    As a result of this confinement, and during the period he was so confined, Defendant, at a minimum, suffered from extreme sensory paralysis, frequent bouts of vertigo, lack of desire to eat, uncommunicative depression, thoughts of brutality, and engaged himself in a daily battle to maintain psychological equilibrium for which he was, after trial began, prescribed the psychiatric control drug cylexa by jail mental health officials.  These conditions exacerbated the incompetence defense counsel Patituce referred to in the latter's 8.24.2012 motion and contributed to his attempted suicide.

(Doc. No. 42-3, Exh. 75 at PageID#s 2827-2828) (internal citations omitted; spelling, grammar and punctuation as in original).  Noticeably absent from the above is any argument that the trial court's "no contact" order denied Cody his right of access to counsel of his choice.

In addition to the above claim, Cody raised several assignments of error relating to his competency.   The state appellate court evaluated and rejected Cody's competency-related assignments of error, including the claim set forth above, as follows:

{¶11} Cody's next assignment of error is that he was forced to stand trial while he was incompetent.  The record in this case does not support that argument. On July 12, 2012, the trial judge referred Cody to the court psychiatric clinic to determine competency to stand trial.  After the evaluation took place, defense counsel and the state stipulated to the competency report on August 21, 2012.  Throughout the proceedings, Cody raised the issue of representing himself.  Eventually, on January 30, 2013, after repeatedly and thoroughly reviewing the matter, the judge allowed Cody to represent himself with assigned counsel, Mr. Patituce, as advisory counsel. Cody then inundated the court with motions for discovery, dismissal, in limine, suppression, grand jury transcripts, and assistance, and with reply briefs to the state's opposition briefs. Cody also filed a mandamus action and an affidavit of disqualification of the trial judge.   Cody then on August 26, 2013, stopped representing himself and accepted appointed counsel for trial, which commenced on September 30, 2013. Reviewing the transcripts of the pretrial hearings while Cody represented himself shows that his comments were thoughtful, pertinent, intelligent, and articulate. At the end of the trial, the judge noted that Cody played an active role in his defense, paying close attention to the evidence, taking notes, conferring with counsel, and providing information and suggestions for cross-examination. (Tr. 4513.) These are not the actions of an incompetent person. Thus, appellate counsel in the exercise of professional judgment could decide not to raise this argument.

{¶12} Cody further argues that the trial court placed him in solitary confinement, which further drove him insane and undercut his ability to represent himself. The docket shows that on March 19, 2013, the trial judge issued an order that "[d]efendant is restricted to have no contact by phone, mail or social visits." Cody describes the horrible effect this had on him in his supporting affidavit. Nevertheless, it is understandable why appellate counsel would not raise this as an assignment of error. As explained above, the record does not support the proposition that Cody was going insane before trial, much less that his solitary confinement was causing it. Cody referred to his solitary confinement in his motions and at pretrials but did not dwell at length on the deleterious effect it was having on his mind. Thus, this proposition was better suited to the postconviction relief petition he filed; indeed, he raised this argument there, too. Finally, it is difficult to discern how the solitary confinement prejudiced the outcome of the trial or the appeal.

***

43

{¶14} Cody's next assignment of error is difficult to discern. He argues that pursuant to *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and *State v. Smith*, 8th Dist. Cuyahoga No. 98093, 2012–Ohio–5420, the trial court erred in allowing him to represent himself or in the alternative deprived him of his right to self-representation by driving him insane through the solitary confinement order. To the extent that Cody argues that the trial court erred by allowing Cody to represent himself, the argument is ill-founded. The judge and Cody reviewed the risks of self-representation, and the judge finally granted Cody's motion. The record indicates that Cody received legal training at Harvard Law School and practiced criminal law outside of Ohio.  The record also shows that while he represented himself, he resorted to multiple legal remedies, endeavored to reach a plea agreement, and conducted himself well during pretrials.  To the extent that he argues that the trial court deprived him of his right to self-representation, the argument is not supported by the record.  As discussed previously, the record does not show that Cody was going insane during the summer of 2013.  Throughout the proceedings, Cody and the trial judge discussed self-representation, and on August 26, 2013, when the trial judge asked Cody if it was his intention to proceed *pro se* or to have Mr. Patituce resume primary representation, Cody replied: "Thank you, your honor. I wish to turn the case over to Mr. Patituce." (Tr. 493.)  Accordingly, this assignment of error is ill-founded.

*Cody*, 2017 WL 1507211 at *3.

The Magistrate Judge concluded that, taken as a whole, the state appellate court's above analysis is adequate consideration of the specific claim at issue in Ground Six; i.e., the claim that the trial court's "no contact" order denied him his right of access to counsel of his choice.  (Doc. No. 65 at p. 44.)  Thus, the Magistrate Judge accorded AEDPA deference and determined that the state appellate court's implicit rejection of Cody's claim was not unreasonable.  (*Id*. at pp. 44-46.)  Cody objects, arguing that the state appellate court ignored the particular claim at issue herein and, therefore, this Court should conduct a *de novo* review.  (Doc. No. 74-1 at PageIDs 8684-8697.)

For the following reasons, the Court finds that the state appellate court's decision is entitled to AEDPA deference.  While the Court agrees with Cody that the state appellate court did not directly address his specific claim as it relates to the alleged denial of right of access to counsel of his choice, the Court finds that AEDPA deference nonetheless applies because Cody made only a passing

44

reference to that particular claim in his 26(B) Application.  As set forth above, in his Application, Cody's argument regarding the trial court's "no contact" order was focused almost exclusively on the effect of that order on his mental health.  The only mention of the effect of the trial court's order on his denial of right to access to counsel is a single phrase in Cody's recitation of this assignment of error, in which he states (summarily) that "the trial court's 3.19.2013 order caused violations of the Defendant's fundamental rights (involving structural error) to access [to] counsel of choice."  (Doc. No. 42-3, Exh. 75 at PageID# 2807.)  In the argument section of his 26(B) Application, Cody did not mention or present any legal argument regarding this particular issue.

Under these circumstances, this Court presumes that the state appellate court adjudicated the claim on the merits.  As discussed *supra*, the Supreme Court has held that, when a state court addresses some of the claims raised by a defendant but not a claim that is later raised in a federal habeas proceeding, a federal court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits.  *See Johnson*, 568 U.S. at 298-299.  Explaining the reasoning behind this presumption, the Supreme Court noted in *Johnson, supra*, that "it is not the uniform practice of busy state courts to discuss separately every single claim to which a defendant makes even a passing reference."  *Id*.  Rather, "a state court may not regard a fleeting reference to a provision of the Federal Constitution or federal precedent as sufficient to raise a separate federal claim."  *Id*.  In sum, just as "[f]ederal courts of appeals refuse to take cognizance of arguments that are made in passing without proper development," the Supreme Court found, "[s]tate appellate courts are entitled to follow the same practice."  *Id.*

Applying these principles here, the Court finds that Cody made only a "fleeting reference" to this particular claim in his 26(B) Application.  Consistent with *Johnson,* this Court, therefore,

presumes that the state appellate court was aware of Cody's claim and rejected it on the merits, despite the fact that it did not separately discuss and analyze it.  The Court further finds that Cody has not set forth any basis to rebut this presumption.  Accordingly, the Court applies AEDPA deference and will only grant habeas relief if the state appellate court's rejection of this claim is contrary to, or an unreasonable application, of clearly established federal law.

For the following reasons, the Court finds that it is not.  The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  The right to counsel encompasses the right to counsel of choice, but that right is not absolute and "is circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159 (1988).  As the Supreme Court has explained, the right to counsel of choice is generally cognizable only to the extent defendant can retain counsel with private funds.  *See United States v. Gonzalez–Lopez*, 548 U.S. 140, 151 (2006).  "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them."  *Id*. *See also Daniels v. Lafler,* 501 F.3d 735, 739 (6th Cir. 2007).

Here, the record reflects the following. The state trial court declared Cody indigent in May 2012 and appointed Mark Stanton as counsel.  (Doc. No. 42-1, Exh. 5.)  In July 2012, the state trial court granted Mr. Stanton's Motion to Withdraw and appointed Joseph Patituce as defense counsel. (Doc. No. 42-1, Exhs. 7, 10.) In November 2012, Cody filed a series of *pro se* motions for appointment of counsel.  (Doc. No. 42-4, Exh. 101 at PageID# 3570.)  In December 2012, Cody filed a writ of mandamus in the state appellate court, in which he sought to represent himself at trial.  (Doc. No. 1-14 at PageID# 719.)  In that filing, Cody again indicated that he was indigent.  (*Id*. at PageID# 719) (stating "I have been found indigent in this case" and attaching an affidavit of indigency).

46

In January 2013, Cody filed a waiver of attorney in the state trial court, in which he sought to represent himself.  (Doc. No. 42-1, Exh. 18.)  That same month, the state trial court had numerous discussions with Cody on the record regarding his request to represent himself.  *See* Doc. No. 43-1 at Tr. 93-98 (Jan. 14, 2013 proceeding); Doc. No. 43-1 at Tr. 106-120 (Jan. 23, 2013 proceeding); Doc. No. 43-1 at pp. 125-134 (Jan. 30, 2013 proceeding).  At no time during these many proceedings did Cody ever indicate that he was not indigent and/or that he wished to attempt to retain counsel.  (*Id.*)  After careful consideration, the state trial court permitted Cody to proceed *pro se* and appointed Mr. Patituce as advisory counsel.  (Doc. No. 42-1, Exh. 19; Doc. No. 43-1 at Tr. 125-145.)

On March 19, 2013, the trial court issued its "no contact" order, in which it stated that Cody was to have no contact by phone, mail, or social visits.  (Doc. No. 42-4, Exh. 101 at PageID# 3559.)  On April 11, 2013, Cody advised the trial court that he no longer wished to represent himself and asked that counsel be appointed.  (Doc. No. 43-1 at Tr. 160.)  The trial court denied Cody's request.  (*Id*. at Tr. 164.)  The trial court revisited this issue during a conference on April 22, 2013.  At that time, however, Cody stated that "[t]here's no motion to withdraw at this point as *pro se* counsel before the Court."  (Doc. No. 43-2 at Tr. 266.)  Once again, Cody did not indicate, at any point during either of these April 2013 conferences, that he was not indigent or that he wished to attempt to retain counsel.  Cody continued to represent himself until August 26, 2013, when he relinquished his position as *pro se* counsel and Mr. Patitutce was assigned as counsel of record.  (Doc. No. 42-1, Exh. 34; Doc. No. 43-2 at Tr. 493.)  Trial commenced on September 30, 2013.  (Doc. No. 43-1.)

On direct appeal, Cody did not argue that the trial court improperly found him to be indigent nor did he argue that the trial court's "no contact" order denied him his right to access of counsel of

choice.  In his 26(B) Application, Cody maintained that he was, in fact, indigent.   (Doc. No. 42-3, Exh. 75 at PageID# 2828) (noting that his "indigency is of record").

Based on the above, the Court finds that it was not unreasonable for the state appellate court to reject Cody's claim that his appellate counsel was ineffective for failing to argue on direct appeal that the trial court's "no contact" order denied him his right to access to counsel of his choice.  The record clearly reflects that the state trial court determined that Cody was indigent and, on that basis, appointed counsel.  Cody does not direct this Court's attention to any evidence that he was not, in fact, indigent.  Nor does he direct this Court's attention to any evidence that he ever (1) objected to the determination of indigency; or (2) advised the trial court that he wanted to attempt to retain counsel.  As noted above, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them."  *Gonzalez–Lopez*, 548 U.S. at 151. *See also Daniels,* 501 F.3d at 739.  In light of the above, the state appellate court's determination that appellate counsel was not ineffective for failing to raise this issue, is not contrary to, or an unreasonable application, of clearly established federal law.

In his Objections, Cody argues, at length, that "the primary dispositive error the R&R makes . . . is premising its analysis, without authority, on the assumption that a defendant, *sua sponte* 'declared' by a trial court financially qualified for appointed counsel, does not retain a right (while, in Cody's case, after *pro se* appointment) to obtain, or even to attempt to obtain, private counsel." (Doc. No. 74-1 at PageID# 8697.)  Essentially, Cody argues that, even though he was determined to be "indigent," he still retained the constitutional right to attempt to obtain private counsel.  He asserts that the trial court's "no contact" order unlawfully prevented him from doing so and that this

48

constitutes "structural error," necessitating the granting of habeas relief.  (*Id*. at PageID#s 8688-8697.)

The Court disagrees.  Even assuming *arguendo* that there is such a right, it was not unreasonable for the state appellate court to find that appellate counsel was not ineffective for failing to raise this argument on direct appeal under the circumstances presented.  As discussed at length above, despite the many pre-trial proceedings in which he appeared before the state trial court, Cody never indicated that he wanted to attempt to retain private counsel or that he was prevented from doing so by virtue of the "no contact" order.  It was not unreasonable for the state appellate court to find that appellate counsel's failure to raise this issue on direct appeal did not constitute deficient performance resulting in prejudice.

Accordingly, Cody's ineffective assistance of counsel claim in Ground Six is without merit and denied.

### 2.  Underlying Claim—Denial of Right to Access to Counsel of Choice

In addition to raising claims of ineffective assistance of appellate counsel, Ground 6 also asserts the underlying claim that the trial court's "no contact" order denied Cody his right to access to counsel of his choice.  (Doc. No. 1-1 at PageID# 19.)  The Magistrate Judge found that this underlying claim is procedurally defaulted.  (Doc. No. 65 at pp. 41-42.)  The Magistrate Judge found that Cody could not establish either cause or prejudice to excuse the default and, further, that he was not able to show that he is actually innocent.  (*Id*.)  Cody raises numerous Objections to each of these findings.  (Doc. No. 74-1.)

The Court agrees with the Magistrate Judge that Cody's underlying claim is procedurally defaulted.  To the extent this claim is based on the trial court record, Cody was required to raise it on

direct appeal.  Cody, however, failed to raise this claim on direct appeal and the state appellate court refused to reopen his direct appeal to assert it, thereby imposing a procedural bar.  *See Davie*, 547 F.3d at 312.  Thus, this claim is procedurally defaulted.  To the extent Cody argues that this claim is based on evidence outside the record, it is unexhausted and procedurally defaulted because Cody failed to raise this specific claim in either of his post-conviction petitions and has not demonstrated that there is any vehicle under Ohio law for him to do so now.  Accordingly, even if this claim could not have been raised on direct appeal because it is allegedly based on evidence outside the record, it is nonetheless barred because it is both unexhausted and procedurally defaulted.

Nor can Cody demonstrate cause or prejudice to excuse the default.  As noted *supra*, in order for ineffective assistance of appellate counsel to serve as cause and prejudice to excuse a procedural default, a petitioner must also show that his claim of ineffective assistance of appellate counsel itself has merit.  *See Lordi*, 384 F.3d at 194 (citing *Edwards*, 529 U.S. at 450–51); *Sulek,* 2009 WL 1935878 at * 7.  However, for all the reasons discussed above and even under *de novo* review, the Court finds that Cody has not established that his ineffective assistance of appellate counsel claim has merit, i.e., that his appellate counsel was ineffective for failing to argue on direct appeal that the trial court's "no contact" order denied him his right to access to counsel of his choice.  Accordingly, the Court finds that ineffective assistance of appellate counsel may not serve as cause to excuse the default of this claim. Finally, for the reasons set forth *infra* in Section V.E of this Opinion, Cody cannot demonstrate that the default of this claim should be excused on the grounds that "failure to consider the[m] . . . will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

Accordingly, Ground Six of Cody's Petition is denied.

**D.**  **Grounds Sixteen and Seventeen**

In Ground 16, Cody argues that his trial counsel was ineffective for failing to properly investigate and develop evidence showing or tending to show that Cody had a covert, classified intelligence affiliation with the CIA and/or President George W. Bush.  (Doc. 41 at p. 2.)  Relatedly, in Ground 17, Cody argues that trial counsel was ineffective because counsel denied Cody his right to pursue his desired CIA affiliation defense strategy under *McCoy v. Louisiana*, 138 S.Ct. 1500, 200 L.Ed.2d 821 (2018).  (*Id*.)

The Magistrate Judge determined that these grounds are procedurally defaulted because they were raised in Cody's post-conviction petitions, which were denied by the state courts on the basis of either *res judicata* and/or untimeliness.  (Doc. No. 65 at p. 48, 52-54.)  The Magistrate Judge found that Cody could not establish either cause or prejudice to excuse the default and, further, that he was not able to show that he is actually innocent.  (*Id*.)  Cody raises numerous Objections to each of these findings.  (Doc. No. 74-1.)

 For the following reasons, the Court agrees with the Magistrate Judge that Grounds 16 and 17 are procedurally defaulted.  Cody first argued that his trial counsel was ineffective for failing to investigate and pursue evidence relating to his CIA defense in his June 2014 Petition for Post-Conviction Relief.  (Doc. No. 42-1, Exh. 60 at PageID# 2228.)  The state trial court denied this claim, noting that the only basis for Cody's Petition was his own self-serving, speculative affidavit.  (Doc. No. 42-2, Exh. 65 at PageID# 2485-2486.)  The trial court found that "Defendant-Petitioner provides no documentation from outside the record of this case to demonstrate any claim of ineffective assistance of counsel or to demonstrate why such claim is not capable of being presented in the direct appeal of his conviction."  (*Id*.)  Cody appealed, and the state appellate court affirmed as follows:

{¶ 17} In his first assignment of error, Cody argues that his trial counsel was ineffective because counsel (1) refused to pursue certain witnesses that would have

51

established that Cody was working for the CIA; and (2) did not pursue a line of defense that Cody was medically incompetent to stand trial or assist in his defense due to beatings he received in jail.

{¶ 18} In its findings of fact and conclusions of law, the trial court found that the sole support for Cody's claims was contained in his own self-serving affidavits and he was unable to demonstrate that any facts existed from outside the record.

{¶ 19} Cody's claims that he received ineffective assistance of counsel because his trial attorney failed to pursue specific witnesses and present a certain line of defense are both claims that could have been brought on direct appeal. Although Cody argues that both of these claims would be proved by evidence outside the record, he does not show what the evidence would be. **Because Cody did not raise these issues on direct appeal, he has waived those claims and they are barred by *res judicata*.**

*Cody*, 2015 WL 4133281 at * 4 (emphasis added).  Cody appealed to the Supreme Court of Ohio, which declined to accept jurisdiction.  (Doc. No. 42-3, Exh. 73.)

Cody next argued ineffective assistance of trial counsel relating to his CIA Defense in his second Petition for Post-Conviction Relief, which was filed in the state trial court along with a Motion for New Trial in July 2018.  (Doc. No. 42-3, Exh. 87 at PageID# 3159, 3163-3164.)  The state trial court summarily denied Cody's Post-Conviction Petition and Motion for New Trial.  (Doc. No. 42-3, Exh. 88.)  Cody appealed, and the state appellate court affirmed as follows:

{¶ 33} Cody submitted the following in support of his motions: (1) various statements purportedly made by the prosecutor that Cody claims show the state knew he was involved with the CIA; (2) Cody's 19-page affidavit; (3) Cody's curriculum vitae; (4) the CIA's response to Cody's Freedom of Information Act request dated January 29, 2018; (5) a 1973 redacted letter from a law firm based in Hawaii that purports to list the name "John Cody" as one of the firm's associates; (6) various transcripts and court filings; and (7) a letter from the Office of Government Information Services dated April 19, 2018, explaining the CIA's response to Cody's Freedom of Information Act request.

{¶ 34} We have reviewed Cody's motions and evidence in support of his motions. None of the documents attached to Cody's request for leave clearly and convincingly demonstrate that he was unavoidably prevented from discovering the evidence on which he relies; therefore, he was required to file his request for leave either within 120 days of the verdict (for a motion based on newly discovered evidence) or within

14 days of the verdict (for any of the other permissible reasons enumerated in Crim.R. 33(A)). **Cody's request for leave to file his motion for new trial is untimely under Crim.R. 33.**

**{¶ 35} Cody's postconviction petition is likewise untimely. Cody has not shown that he was unavoidably prevented from discovering any purported new evidence.**

**{¶ 36} Therefore, the trial court's decision to deny the untimely Crim. R. 33 motion and postconviction petition are affirmed and the second assignment of error is overruled.**

*Cody,* 2019 WL 3046584 at * 5-6 (emphasis added). Cody appealed to the Supreme Court of Ohio, which again declined to accept jurisdiction. *See State v. Cody*, 157 Ohio St.3d 1443 (2019).

Cody devotes much of his Objection to arguing that Grounds 16 and 17 "arise out of" or "stem from" his 2018 post-conviction petition rather than his 2014 post-conviction petition. This is immaterial, however, as either way, Grounds 16 and 17 are procedurally defaulted. In affirming the denial of Cody's 2014 post-conviction petition, the state appellate court expressly denied Cody's ineffective assistance of trial counsel claims based on the failure to pursue his CIA defense on the basis of *res judicata*. As such, the Court finds that Cody failed to comply with an applicable state procedural rule and the state court actually enforced the procedural bar, thus satisfying the first and second prongs of *Maupin, supra*. Further, as to the third prong of *Maupin*, "the Sixth Circuit has stated that *res judicata* 'is an actually enforced, adequate and independent state ground upon which the Ohio state courts consistently refuse to review the merits of a defendant's claims.'" *Collins v. Warden, Ross Correctional Inst.*, 2014 WL 575727 at * 11 (N.D. Ohio Feb.11, 2014) (quoting *Powers v. Bobby*, 2008 WL 4823134 (N.D. Ohio Nov. 3, 2008)). *See also Coleman v. Mitchell*, 268 F.3d 417, 427 (6th Cir. 2001); *Williams v. Bagley*, 380 F.3d 932, 966–67 (6th Cir.2004); *Jacobs v. Mohr*,

265 F.3d 407, 417 (6th Cir. 2001). Thus, to the extent Grounds 16 and/or 17 are raised in Cody's 2014 post-conviction petition, they are procedurally defaulted.

With regard to Cody's 2018 post-conviction petition and motion for new trial, the state appellate court expressly denied these filings on the grounds that they were untimely. Thus, the Court finds that Cody failed to comply with an applicable state procedural rule and the state court actually enforced the procedural bar, thus satisfying the first and second prongs of *Maupin, supra*. Further, as to the third prong of *Maupin*, the Sixth Circuit has found that the time bar in Ohio Rev. Code § 2953.21(A)(1) is considered an adequate and independent state-law ground that forecloses federal habeas review. *See Smith v. Warden, Toledo Corr. Inst.*, 780 Fed. Appx 208, 219 (6th Cir. 2019) (stating that "denying a postconviction motion or appeal based on untimeliness is an independent and adequate state procedural ground" under *Maupin*) (citing *Walker v. Martin*, 562 U.S. 307, 310–11 (2011); *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007); *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004)). *See also Stojetz v. Ishee*, 892 F.3d 175, 204-05 (6th Cir. 2018). Thus, to the extent Grounds 16 and/or 17 are raised in Cody's 2018 post-conviction petition and/or motion for new trial, they are also procedurally defaulted.

Moreover, the Court agrees with the Magistrate Judge that Cody has failed to demonstrate either cause or prejudice to excuse the default.[18] Finally, for the reasons set forth *infra* in Section

---

[18] Cody argues that the ineffective assistance of his trial counsel constitutes cause to excuse the default of ineffective assistance of trial counsel claims. Cody does not sufficiently explain this theory nor does he cite any relevant authority in support thereof. The Court, therefore, rejects this argument. In addition, the Court notes that Cody specifically states in his Objections that he "does not allege [ineffective assistance of appellate counsel] as an excuse for a procedural bar to 'Claim 16." (Doc. No. 74-1 at PageID# 8699.) To the extent Cody is arguing that ineffective assistance of appellate counsel constitutes cause to excuse the default of Ground 17, this argument is rejected. Cody did not present this claim in his 26(B) Application and, therefore, any such ineffective assistance of appellate counsel claim is procedurally defaulted. While ineffective assistance of appellate counsel may serve as "cause" to excuse a procedural default, it may only do so if the ineffective assistance of appellate counsel claim is not itself defaulted. *See Edwards*, 529 U.S. at 450-

V.E of this Opinion, Cody cannot demonstrate that the default of this claim should be excused on the grounds that "failure to consider the[m] . . . will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Accordingly, Grounds Sixteen and Seventeen of Cody's Petition are denied.

### E.    Actual Innocence

With regard to Cody's claims that are procedurally defaulted, the Magistrate Judge concluded that Cody could not demonstrate that the default should be excused on the basis of "actual innocence." (Doc. No. 65 at pp. 49-52.)  Cody raises numerous Objections to this conclusion.  (Doc. No. 74-1 at PageID#s 8702 -8703.)

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense.  *Dretke v. Haley*, 541 U.S. 386 (2004).  *See also Schlup v. Delo,* 513 U.S. 298, 327 (1995).  This type of actual innocence claim, sometimes called gateway innocence, "does not by itself provide a basis for relief."  *Schlup*, 513 U.S. at 315.  In other words, the innocence showing is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  *Id*. (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).  Thus, a petitioner's showing of a credible claim of innocence allows him to skirt a procedural defect in his claim so that a federal

---

451; *Wogenstahl*, 668 F.3d at 321.  Accordingly, Cody has failed to demonstrate cause to excuse the default of these claims.

court may address his allegation of constitutional error.  *Davis v. Bradshaw*, 900 F.3d 315, 326 (6th Cir. 2018).

"But this innocence gateway is a narrow one."  *Davis*, 900 F.3d at 326.  The Supreme Court has cautioned that it "should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error."  *McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013) (citation and internal quotation marks omitted). Thus, the exception "applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]."  *Id.* at 395 (alteration in original) (citation and internal quotation marks omitted); *see Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005).

For a petitioner to establish entitlement to the actual innocence exception, he must support his allegations of constitutional error with new, reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial.  *Id.  See also Davis,* 900 F.3d at 326; *Gulertekin v. Tinnelman–Cooper*, 340 F.3d 415, 427 (6th Cir. 2003).  Absent new evidence of innocence, "even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Schlup*, 513 U.S. at 316.

The Magistrate Judge carefully considered each piece of Cody's allegedly "new" evidence and explained why such evidence either is not "new" or does not support Cody's claim of actual innocence.  (Doc. No. 65 at pp. 50-52.)  The Court has carefully reviewed both the R&R and the specific evidence cited therein and, upon *de novo* review, agrees with the Magistrate Judge's analysis

and conclusion that "Cody does not persuasively explain how the evidence he cites shows that it would be more likely than not that no reasonable juror would have convicted him." (*Id*. at p. 51.)

Accordingly, the Court finds that Cody cannot demonstrate that the "actual innocence" exception applies to any of his procedurally defaulted Grounds for Relief.

## VI.  Conclusion

For the foregoing reasons, Petitioner's Objections (Doc. No. 74-1) are overruled, the Report & Recommendation (Doc. No. 65) is adopted as set forth herein, and the Petition (Doc. No. 1) is denied.  In addition, Petitioner has not sufficiently demonstrated the need for an evidentiary hearing and his request for the same is denied.  Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**


 *s/Pamela A. Barker*
PAMELA A. BARKER
Date:  April 16, 2021                    U. S. DISTRICT JUDGE